No. 25-1349

# United States Court of Appeals
# for the First Circuit

DENHAM CAPITAL MANAGEMENT LP; DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER,

*Petitioners-Appellants*,

v.

WILLIAM HOLLIS LONG, II,
COMMISSIONER, INTERNAL REVENUE SERVICE,

*Respondent-Appellee*.

On Appeal from the United States Tax Court
Case No. 9973-23
Hon. Kathleen Kerrigan

**OPENING BRIEF OF PETITIONERS-APPELLANTS DENHAM CAPITAL MANAGEMENT LP; DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER**

Brian C. McManus
Shannon C. Fiedler
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Eric J. Konopka
Elizabeth A. Kanyer
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Petitioners-Appellants Denham Capital Management LP; Denham Capital Management GP LLC, Tax Matters Partner*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioners-Appellants state that:

- Denham Capital Management LP is a Delaware limited partnership. There is no parent corporation or publicly traded corporation that owns 10% or more of the partnership interests in Denham Capital Management LP.
- Denham Capital Management GP LLC, the tax matters partner for Denham Capital Management LP, is a Delaware limited liability company. There is no parent corporation or publicly traded corporation that owns 10% or more of the membership interests in Denham Capital Management GP LLC.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................i

TABLE OF AUTHORITIES ....................iv

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD....................xi

INTRODUCTION ....................1

JURISDICTIONAL STATEMENT ....................4

STATEMENT OF THE ISSUES....................4

STATEMENT OF THE CASE....................5

A. Legal Background ....................5

1. The Limited-Partner Exception....................5

2. TEFRA ....................9

B. Factual Background And Procedural History ....................11

1. Denham's Operations And Payments To Limited Partners....................11

2. The IRS Audit ....................13

3. The Tax Court's Intervening *Soroban* Decision....................14

4. Tax Court Proceedings Below ....................16

SUMMARY OF ARGUMENT ....................18

STANDARD OF REVIEW ....................21

ARGUMENT ....................22

I. THE LIMITED PARTNERS' DISTRIBUTIVE SHARES OF DENHAM'S INCOME ARE EXCLUDED FROM NET EARNINGS FROM SELF-EMPLOYMENT UNDER THE LIMITED-PARTNER EXCEPTION ....................22

**Page**

A. Denham's Limited Partners Qualified For The Limited-Partner Exception Because They Had Limited Liability For Denham's Obligations ....................22

1. A "Limited Partner" Is A Partner Of A Limited Partnership With Limited Liability ....................22

2. Denham's Limited Partners Undisputedly Had Limited Liability For Partnership Obligations ....................30

B. The Tax Court Erred In Reading Its Functional-Analysis Test Into The Limited-Partner Exception ....................32

1. The Tax Court Misconstrued The Limited-Partner Exception To Impose A Functional Analysis ....................32

2. The "Passive Investor" Test Is Incompatible With The Statutory Scheme, Unsound, And Unjustified ....................37

II. NET EARNINGS FROM SELF-EMPLOYMENT CANNOT BE DETERMINED IN A TEFRA PARTNERSHIP-LEVEL PROCEEDING ....................47

A. Net Earnings From Self-Employment Are Not A Partnership Item ....................48

B. The Tax Court Inappropriately Treated A Partner-Level Determination As A Partnership Item ....................52

CONCLUSION ....................57

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008)....................41

*Bassing v. United States*,
563 F.3d 1280 (Fed. Cir. 2009)....................9, 11

*Bittner v. United States*,
598 U.S. 85 (2023)....................28

*Boyer v. Commissioner*,
732 F.2d 191 (D.C. Cir. 1984)....................36

*Bush v. United States*,
655 F.3d 1323 (Fed. Cir. 2011)....................10, 50

*Cabintaxi Corp. v. Commissioner*,
63 F.3d 614 (7th Cir. 1995)....................36, 37

*Castigliola v. Commissioner*,
T.C. Memo. 2017-62, 2017 WL 1372505 (2017)....................44

*Cavallaro v. Commissioner*,
842 F.3d 16 (1st Cir. 2016)....................21

*Commissioner v. Soliman*,
506 U.S. 168 (1993)....................42

*Desmet v. Commissioner*,
581 F.3d 297 (6th Cir. 2009)....................10, 11

*Dewees v. Commissioner*,
870 F.2d 21 (1st Cir. 1989)....................54

*Duffy v. Commissioner*,
T.C. Memo. 2020-108, 2020 WL 3960116 (2020)....................45

*Epic Systems Corp. v. Lewis*,
584 U.S. 497 (2018)....................47

**Page(s)**

*Garnett v. Commissioner*,
132 T.C. 368 (2009)....................................................................................44

*Green Rock LLC v. IRS*,
104 F.4th 220 (11th Cir. 2024)....................................................................56

*Grigoraci v. Commissioner*,
T.C. Memo. 2002-202, 84 T.C.M. (CCH) 186 (2002).....................................51

*Hardy v. Commissioner*,
T.C. Memo. 2017-16, 2017 WL 168471 (2017)..............................................44

*Johnson v. Commissioner*,
T.C. Memo. 1990-461, 60 T.C.M. (CCH) 603 (1990).....................................45

*Joseph v. Commissioner*,
T.C. Memo. 2020-65, 2020 WL 2538971 (2020)............................................45

*Estate of Keeter v. Commissioner*,
75 F.4th 1268 (11th Cir. 2023).....................................................................11

*Lackey v. Stinnie*,
145 S. Ct. 659 (2025)...................................................................................25

*Monti v. United States*,
223 F.3d 76 (2d Cir. 2000)......................................................................49, 56

*Morgan v. Commissioner*,
309 U.S. 78 (1940)........................................................................................36

*Morissette v. United States*,
342 U.S. 246 (1952)......................................................................................23

*Napoliello v. Commissioner*,
655 F.3d 1060 (9th Cir. 2011)...............................................................48, 50

*Olsen-Smith, Ltd. v. Commissioner*,
T.C. Memo. 2005-174, 90 T.C.M. (CCH) 64 (2005)............................52, 56, 57

*Pahl v. Commissioner*,
150 F.3d 1124 (9th Cir. 1998).......................................................................36

**Page(s)**

*Perry v. Commissioner*,
T.C. Memo. 1994-215, 67 T.C.M. (CCH) 2966 (1994) ....................................45

*Estate of Quick v. Commissioner*,
110 T.C. 172 (1998).........................................................................................50

*Redwing Carriers, Inc. v. Saraland Apartments*,
94 F.3d 1489 (11th Cir. 1996) ..........................................................................24

*Renkemeyer, Campbell & Weaver, LLP v. Commissioner*,
136 T.C. 137 (2011)...................................................................................43, 44

*Russian Recovery Fund Ltd. v. United States*,
81 Fed. Cl. 793 (2008)......................................................................................50

*Sebelius v. Cloer*,
569 U.S. 369 (2013)..........................................................................................33

*Soroban Capital Partners LP v. Commissioner*,
161 T.C. 310 (2023).....................................................................................*passim*

*Soroban Capital Partners LP v. Commissioner*,
T.C. Memo. 2025-52, 2025 WL 1517432 (2025) ............................................42

*United States v. Nason*,
269 F.3d 10 (1st Cir. 2001)...............................................................................25

*United States v. National Bank of Commerce*,
472 U.S. 713 (1985)..........................................................................................36

*United States v. Woods*,
571 U.S. 31 (2013).................................................................................9, 49, 51, 57

*United Technologies Corp. v. Browning-Ferris Industries, Inc.*,
33 F.3d 96 (1st Cir. 1994).................................................................................23

**FEDERAL STATUTES**

26 U.S.C. § 11(a) ....................................................................................................5

26 U.S.C. § 701 .......................................................................................5, 10, 34

26 U.S.C. § 702(a) ................................................................................................54

**Page(s)**

26 U.S.C. § 702(a)(1) ....................54

26 U.S.C. § 702(a)(2) ....................54

26 U.S.C. § 702(a)(7) ....................54

26 U.S.C. § 702(a)(8) ....................7, 54

26 U.S.C. § 703(a)(1) ....................54

26 U.S.C. § 707(c) ....................9, 38

26 U.S.C. § 761(a) ....................5

26 U.S.C. § 761(b) ....................5

26 U.S.C. § 1362(a)(2) ....................36

26 U.S.C. § 1401(a) ....................6

26 U.S.C. § 1401(b) ....................6

26 U.S.C. § 1402(a) .................... 6, 7, 49, 50, 51, 53, 54

26 U.S.C. § 1402(a)(10) ....................40

26 U.S.C. § 1402(a)(13) ....................*passim*

26 U.S.C. § 1402(b) ....................6

26 U.S.C. § 3101(a) ....................6

26 U.S.C. § 3101(b) ....................6

26 U.S.C. § 3111(a) ....................6

26 U.S.C. § 3111(b) ....................6

26 U.S.C. § 6017 ....................49

26 U.S.C. § 6031(a) ....................10, 56

26 U.S.C. § 6031(b) ....................10

26 U.S.C. § 6221 ....................10

26 U.S.C. § 6223(a)(2) ....................10

**Page(s)**

26 U.S.C. § 6226(a) ....................4, 10

26 U.S.C. § 6226(a)(1) ....................4, 14

26 U.S.C. § 6226(f) ....................4, 10

26 U.S.C. § 6226(g) ....................4

26 U.S.C. § 6230(a)(2)(A)(i) ....................11

26 U.S.C. § 6231(a)(3) ....................10, 20, 48, 53, 56

26 U.S.C. § 6231(a)(4) ....................11

26 U.S.C. § 6231(a)(5) ....................11

26 U.S.C. § 6231(e)(1) ....................11

26 U.S.C. § 7482(a)(1) ....................4

26 U.S.C. § 7483 ....................4

26 U.S.C. § 7701(a)(1) ....................50

26 U.S.C. § 7701(a)(2) ....................5

26 U.S.C. § 7701(a)(3) ....................5, 50

42 U.S.C. § 402(a) ....................6

42 U.S.C. § 411(a) ....................6, 7

42 U.S.C. § 411(a)(12) ....................1, 8, 22

42 U.S.C. § 411(b) ....................6

42 U.S.C. § 414(a) ....................6

42 U.S.C. § 426(a) ....................6

42 U.S.C. § 1395c ....................6

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 ....................9

Self-Employed Contributions Act, Pub. L. No. 81-734, 64 Stat. 477 (1950) ....................6

**Page(s)**

Social Security Amendments of 1967, Pub. L. No. 90-248, 81 Stat. 821 (1968) ..... 40

Social Security Amendments of 1977, Pub. L. No. 95-216, 91 Stat. 1509 ..... 8, 27

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 ..... 9

Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 ..... 40, 41

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 ..... 29

**REGULATIONS**

20 C.F.R. § 404.1080(b)(3) ..... 26

26 C.F.R. § 1.702-3T(f) ..... 54

26 C.F.R. § 301.6231(a)(3)-1 ..... 10, 48, 49

26 C.F.R. § 301.6231(a)(3)-1(a) ..... 49

26 C.F.R. § 301.6231(a)(3)-1(a)(1) ..... 53

26 C.F.R. § 301.6231(a)(3)-1(b) ..... 16, 55

**STATE STATUTES**

Del. Code. Ann. tit. 6, § 17-101(11) ..... 31

Del. Code. Ann. tit. 6, § 17-303(a) ..... 31

**OTHER AUTHORITIES**

*Black's Law Dictionary* (4th ed. 1951, 1957 prtg.) ..... 25, 39

*Black's Law Dictionary* (5th ed. 1979, 1986 prtg.) ..... 25

143 Cong. Rec. 13168 (June 27, 1997) ..... 29

43 Fed. Reg. 25422 (June 13, 1978) ..... 1, 26

51 Fed. Reg. 13212 (Apr. 18, 1986) ..... 55

62 Fed. Reg. 1702 (Jan. 13, 1997) ..... 28, 29

**Page(s)**

Bryan A. Garner, *Garner's Modern English Usage* (4th ed. 2016) ..................33, 34

H.R. Rep. No. 81-1300 (1949)..........................................................................6, 7

H.R. Rep. No. 95-702, pt. 1 (1977)..........................................................*passim*

IRS, *2024 Instructions for Form 1065* (Jan. 16, 2025),
https://www.irs.gov/pub/irs-prior/i1065--2024.pdf...............................27, 30, 56

IRS, *IRS Announces Rollout of Five Large Business and International Compliance Campaigns* (Mar. 13, 2018),
https://www.irs.gov/businesses/irs-lbi-compliance-campaigns-march-13-2018 ............................................................................................13

IRS, *Large Business & International Active Campaigns: SECA Tax* (last updated July 16, 2025),
https://www.irs.gov/businesses/corporations/lbi-active-campaigns#seca-tax ..............................................................................14

William Draper Lewis, *The Uniform Limited Partnership Act*,
65 U. Penn. L. Rev. 715 (1917) ......................................................................23

Rev. Unif. Ltd. P'ship Act (1976).......................................................................24

Rev. Unif. P'ship Act (2024-2025 ed., Westlaw).....................................................5

Social Sec. Admin., *Program Operation Manual System (POMS): RS 01802.302* (rev. Mar. 6, 1991),
https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802302 ..................................26

Unif. Ltd. P'ship Act, 8 U.L.A. 1 (1922)........................................................24, 34

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

This appeal implicates important and recurring issues of federal tax law. The Internal Revenue Service ("IRS") has launched a campaign to narrow an exception from self-employment tax for income of limited partners, which has resulted in substantial Tax Court litigation. To decide that the exception did not apply, the Tax Court espoused an interpretation of the relevant statute that the Commissioner of Internal Revenue (the "Commissioner") has not defended in another pending appeal involving this issue. It also inappropriately rendered a partner-level determination in a partnership-level proceeding. Given the importance and potential reach of this decision, Petitioners-Appellants respectfully submit that oral argument will aid the Court in its decisional process.

## INTRODUCTION

To bring self-employed individuals within the Social Security system, Congress extended benefits—and imposed taxes—based on an individual's "net earnings from self-employment." That amount includes the individual's distributive share of the business income of partnerships of which he is a partner. But, concerned about the use of limited partnerships to gain eligibility for Social Security benefits, Congress enacted a bright-line exception: "there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments . . . to that partner for services" (which are akin to an employee's wages). 26 U.S.C. § 1402(a)(13); *accord* 42 U.S.C. § 411(a)(12). This limited-partner exception is at the heart of this appeal.

For many years, both the Social Security Administration and the IRS interpreted the limited-partner exception consistent with its established legal meaning. In regulations and guidance issued around the exception's enactment, which remain in effect today, both agencies defined a "limited partner" as a partner of a state-law limited partnership whose liability for partnership obligations is limited to his investment. *See, e.g.*, 43 Fed. Reg. 25422, 25422 (June 13, 1978). That matches the settled understanding of a limited partner. The upshot is that, under that interpretation, all of such a limited partner's partnership income is

excluded from his net earnings from self-employment, except guaranteed payments he receives for services provided to the partnership.

Denham Capital Management LP ("Denham") and its limited partners followed that interpretation to a T. Denham is a limited partnership that provides investment-management services across the energy and commodities sectors. During the 2016 and 2017 tax years at issue, Denham paid its five limited partners market-based guaranteed payments for the services they provided, and they shared in Denham's profits as limited partners. Consistent with the text of the limited-partner exception—as it had long been interpreted by both agencies responsible for administering it—the limited partners reported their guaranteed payments, but not their distributive shares, as net earnings from self-employment.

Unsatisfied with taxing only limited partners' guaranteed payments, the IRS has embarked on a campaign to treat their distributive shares as net earnings from self-employment, too. As part of that campaign, the IRS audited Denham and increased its aggregate net earnings from self-employment by the amount of its limited partners' distributive shares. The Tax Court's decision blessing that maneuver was wrong in two critical respects.

*First*, the Tax Court distorted the meaning of the limited-partner exception. Although the court seemingly understood that a limited partner is a partner with limited liability, it nonetheless construed the exception not to care about limited

liability. Instead, the court held, the limited-partner exception applies only to passive investors in the partnership. But the statute uses the term "limited partner," not "passive investor"—and limited partners need not be passive investors, as other parts of the statutory scheme confirm.

*Second*, the Tax Court erroneously permitted the IRS to adjust net earnings from self-employment at the partnership level. Under the so-called "TEFRA" procedural regime in effect for the 2016 and 2017 tax years, the IRS was permitted to adjust only "partnership items" in a partnership-level proceeding like this one. *See infra* at 9-11 (explaining TEFRA). But net earnings from self-employment are determined for *individuals*, not *partnerships*, and have no effect on the partnership or other partners. And net earnings from self-employment, including the applicability of the limited-partner exception, turn on partner-by-partner determinations that are not appropriate for partnership-level proceedings. While partnership income may affect an individual partner's net earnings from self-employment, the amount of net earnings from self-employment remains an individual item, not a partnership item.

For either, or both, of these reasons, the Tax Court's decision cannot stand and should be reversed or vacated.

## JURISDICTIONAL STATEMENT

On March 27, 2023, the IRS issued notices of final partnership administrative adjustment to Denham for the 2016 and 2017 tax years. APP33-39; APP40-46.[1] Denham timely petitioned the Tax Court for readjustment on June 22, 2023. APP12-22; *see* 26 U.S.C. § 6226(a)(1).[2] The Tax Court had "jurisdiction to determine all partnership items of [Denham]" for the 2016 and 2017 tax years. 26 U.S.C. § 6226(f); *see id.* § 6226(a). Denham disputes that this case involves a partnership item over which the Tax Court had jurisdiction. *See infra* at 47-57.

On January 14, 2025, the Tax Court entered its final decision. ADD20-21. Denham timely filed a notice of appeal on April 7, 2025. APP233-35; *see* 26 U.S.C. § 7483. This Court has jurisdiction under 26 U.S.C. §§ 6226(g) and 7482(a)(1).

## STATEMENT OF THE ISSUES

**I.** Whether Denham's limited partners' distributive shares of partnership income—as distinct from the guaranteed payments they received for services they

---

[1] "ADD" references are to the addendum to this brief. "APP" references are to the appendix filed concurrently with this brief. "ROA" references are to the Administrative Record filed on April 23, 2025 (page numbers refer to the pagination appearing in the header).

[2] Unless otherwise noted, references to title 26 of the U.S. Code and title 26 of the Code of Federal Regulations are to the statutes and regulations in effect for the 2016 and 2017 tax years.

provided to Denham—are excluded from net earnings from self-employment under the limited-partner exception.

**II.** Whether net earnings from self-employment, including the applicability of the limited-partner exception, can be determined in a TEFRA partnership-level proceeding.

## STATEMENT OF THE CASE

### A. Legal Background

This appeal touches on the taxation of partnerships and partners. Like a corporation, a partnership is distinct from its owners. *See, e.g.*, 26 U.S.C. §§ 761(a)-(b), 7701(a)(2)-(3); Revised Uniform Partnership Act § 201(a) (2024-2025 ed., Westlaw). Unlike a corporation, a partnership is generally not taxed as a separate entity. *See* 26 U.S.C. §§ 11(a), 701. Instead, partnership income is divided among the partners, and each partner is taxed on his share of that income. *See id.* § 701. Quirks of partnership taxation show up in both the substantive and the procedural questions presented here—which concern whether Denham's limited partners are liable for certain taxes on their shares of partnership income and whether that question can be answered at the partnership level, respectively.

#### 1. The Limited-Partner Exception

The Social Security and Medicare programs create a trade-off familiar to most working Americans: pay payroll taxes on income from work today and

receive cash and medical benefits funded by those taxes in retirement. *See, e.g.*, 26 U.S.C. § 3101(a)-(b); 42 U.S.C. §§ 402(a), 414(a), 426(a), 1395c. These payroll taxes are typically imposed on "wages" paid to employees, and are split between the employer and the employee. 26 U.S.C. §§ 3101(a)-(b), 3111(a)-(b). Since self-employed individuals are not employees who receive wages from an employer, they fall outside of these payroll taxes and did not originally qualify for the benefits funded by them. *See, e.g.*, H.R. Rep. No. 81-1300, at 9-10 (1949).

The Self-Employed Contributions Act ("SECA") rectified that issue by extending coverage based on "self-employment income" and imposing taxes on that income that substitute for the employer and employee taxes paid on wages. Pub. L. No. 81-734, § 208, 64 Stat. 477, 540-45 (1950); *see* H.R. Rep. No. 81-1300, at 9-10, 24-25, 31-32. There are currently three taxes imposed by SECA: a 12.4% tax on self-employment income up to a certain amount for Social Security, a 2.9% tax on all self-employment income for Medicare, and a 0.9% additional tax on self-employment income over a certain amount for Medicare. *See* 26 U.S.C. §§ 1401(a)-(b), 1402(a)-(b).

For all purposes relevant here, self-employment income refers to "net earnings from self-employment." *Id.* § 1402(a)-(b); *accord* 42 U.S.C. § 411(a)-(b). The starting point for "net earnings from self-employment" is classic net income an individual earns by going into business for himself. *See* 26 U.S.C. § 1402(a);

42 U.S.C. § 411(a). More relevant to this case, though, the phrase also includes an individual's "distributive share . . . of income or loss described in section 702(a)(8) [of the Internal Revenue Code] from any trade or business carried on by a partnership of which [the individual] is a member"—i.e., the individual's distributive share of the partnership's ordinary business income. 26 U.S.C. § 1402(a); *accord* 42 U.S.C. § 411(a); *see* 26 U.S.C. § 702(a)(8).

That distributive share originally constituted net earnings from self-employment "irrespective of the nature" of the individual's partnership interest. H.R. Rep. No. 81-1300, at 137. That changed in the 1970s. By the mid-1970s, Congress became aware of "situations in which certain business organizations solicit[ed] investments in limited partnerships as a means for an investor to become insured for social security benefits." H.R. Rep. No. 95-702, pt. 1, at 40-41 (1977). These solicitations were "directed mainly toward public employees whose employment [wa]s covered by public retirement systems and not by social security." *Id.* at 41. They frequently "emphasize[d]" that "those who invest[ed]" a relatively small amount of money in "limited partnerships [would] qualify for minimum benefits" and thereby achieve a "high return." *Id.*

Congress addressed this issue with the limited-partner exception. The limited-partner exception is an exception to the definition of "net earnings from self-employment" in parallel provisions of the Social Security Act and the Internal

Revenue Code. *See* Social Security Amendments of 1977, Pub. L. No. 95-216, § 313, 91 Stat. 1509, 1535-36. It provides as follows:

> There shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) of the Internal Revenue Code of 1986 to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services[.]

42 U.S.C. § 411(a)(12); *accord* 26 U.S.C. § 1402(a)(13).[3] Partnership income subject to the limited-partner exception does not qualify the partner for Social Security benefits and is not subject to SECA taxes. *See* H.R. Rep. No. 95-702, pt. 1, at 11, 40-41, 86.

There is no express statutory definition for "limited partner" or "limited partner, as such." But the key statutory language—"distributive share of [partnership income] of a limited partner, as such, other than guaranteed payments . . . for services"—delineates several boundaries. 26 U.S.C. § 1402(a)(13). "Distributive shares received as a general partner" rather than as a limited partner

---

[3] The text of the limited-partner exception in the Social Security Act is substantively identical to the text of the limited-partner exception in the Internal Revenue Code. The only real difference is that the former refers to "section 707(c) of the Internal Revenue Code of 1986," whereas the latter simply refers to "section 707(c)." *Compare* 42 U.S.C. § 411(a)(12), *with* 26 U.S.C. § 1402(a)(13). As this is a tax case, this brief primarily refers to the limited-partner exception in the Internal Revenue Code.

fall outside of the exception. H.R. Rep. No. 95-702, pt. 1, at 40. "Also, if a person is both a limited partner and a general partner in the same partnership, the distributive share received as a general partner" falls outside of the exception. *Id.* And "guaranteed payments" that a limited partner receives "for services actually performed . . . for the partnership," which are determined without regard to the partnership's income and are akin to a "salary," fall outside of the exception. *Id.*; *see* 26 U.S.C. § 707(c). These kinds of partnership income are net earnings from self-employment that do qualify the partner for Social Security benefits and are subject to SECA taxes.

**2. TEFRA**

For many years, including those at issue in this case, IRS partnership audits were conducted under the "TEFRA" framework, an acronym for the law that created it. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401-07, 96 Stat. 324, 648-70; *United States v. Woods*, 571 U.S. 31, 38-39 (2013).[4] "Before TEFRA, the Internal Revenue Code treated partnership items such as the partnership's income, gain, loss, or credit at the individual partner level," which could result in "inconsistent treatment of the same items by different partners." *Bassing v. United States*, 563 F.3d 1280, 1282 (Fed. Cir.

[4] The Bipartisan Budget Act of 2015 replaced TEFRA for partnership tax years beginning in 2018. Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625-38. It does not apply to the 2016 and 2017 tax years at issue.

2009). To unify partnership proceedings and ensure consistent treatment of partnership items, TEFRA directed the IRS to address partnership matters in two stages: a partnership-level stage and a partner-level stage. *See* 26 U.S.C. § 6221; *Desmet v. Commissioner*, 581 F.3d 297, 301-02 (6th Cir. 2009).

At the partnership-level stage, the IRS would audit the partnership's tax return[5] for "items whose treatment affects the entire partnership." *Bush v. United States*, 655 F.3d 1323, 1325 (Fed. Cir. 2011); *see* 26 U.S.C. § 6221. These items, intuitively called "partnership items," comprised items "required to be taken into account for the partnership's taxable year under any provision of subtitle A"—i.e., the income-tax law—"to the extent regulations prescribed by the Secretary provide" they are "more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3); *see* 26 C.F.R. § 301.6231(a)(3)-1. At the end of a partnership-level audit, the IRS would issue a single notice of final partnership administrative adjustment. *See, e.g.*, 26 U.S.C. § 6223(a)(2). The partnership could petition a court "for a readjustment of the partnership items for [the] taxable year." *Id.* § 6226(a); *see id.* § 6226(f).

---

[5] Although partnerships do not pay income taxes at the partnership level, they must file tax returns providing information about partnership income, deductions, etc., which are used to compute the partners' income-tax liabilities. *See* 26 U.S.C. §§ 701, 6031(a)-(b).

Once partnership-level adjustments became final, they would trickle down to the partners. *See Bassing*, 563 F.3d at 1283. The IRS would determine "affected item[s]," or "any item to the extent such item [was] affected by a partnership item." 26 U.S.C. § 6231(a)(5). If affected items were "computational" in nature, they could be "assessed directly to the partner's return." *Desmet*, 581 F.3d at 302. If they "require[d] partner level determinations," however, they could be contested in partner-level proceedings with the IRS and in court. 26 U.S.C. § 6230(a)(2)(A)(i); *see Estate of Keeter v. Commissioner*, 75 F.4th 1268, 1275-76 (11th Cir. 2023). Any adjustments by the IRS to "nonpartnership item[s]," and judicial review thereof, would occur outside of TEFRA partnership- and partner-level proceedings. 26 U.S.C. § 6231(a)(4), (e)(1); *see Desmet*, 581 F.3d at 302.

### B. Factual Background And Procedural History

This case implicates both legal issues discussed above because it arises out of a TEFRA partnership-level proceeding about whether the limited-partner exception applies to Denham's limited partners' distributive shares.

#### 1. Denham's Operations And Payments To Limited Partners

Denham is a Delaware limited partnership that provides investment-management services to global investment vehicles that invest across the energy and commodities sectors. ADD2. Its partners and employees—who numbered about 80 during 2016 and 2017—do a variety of things, including raising capital,

evaluating investment proposals, negotiating and valuing investments, monitoring portfolio companies post-investment, and performing certain support functions. *See* ADD2, 4-8. In exchange for its investment-advisory services, Denham receives management fees, which typically ranged from 0.75% to 1.75% of a fund's capital during the years at issue. ADD5-6. By 2017, Denham advised seven active investment funds with $8.3 billion in capital and generated over $60 million of revenue annually, all of which came from management fees. *Id.*

Throughout the 2016 and 2017 tax years at issue, Denham's general partner was Denham Capital Management GP LLC. ADD1-2. It also had five limited partners—Stuart Porter, Scott Mackin, Carl Tricoli, Riaz Siddiqi, and Jordan Marye. ADD2. Denham's governing limited-partnership agreement "vested all management authority exclusively" in the general partner. *Id.* While the limited partners were investment professionals involved in Denham's business full-time, they could take part in partnership management only "as authorized" by the general partner. APP63; *see* ADD3, 16. The general partner appointed them and other senior professionals to Denham's investment, valuation, and management committees, which met regularly, acted by consensus, and could only make recommendations that remained subject to the approval of the relevant investment fund's general partner. *See* ADD2-3, 6-8, 17.

Limited partners received two distinct forms of payment from Denham. *First*, Denham paid limited partners market-based guaranteed payments, which "were intended to represent [their] salaries and included the value of a package of typical employment benefits." ADD8; *see* APP205-06, 227-28. The guaranteed payments to the five limited partners totaled $1.7 million in 2016 and $1.4 million in 2017. ADD9. These guaranteed payments were reported as net earnings from self-employment. *Id.* *Second*, each limited partner was allocated a distributive share of Denham's partnership income, and received capital distributions, corresponding to his interest in the partnership. ADD8. "There was no guaranteed minimum for the [limited partners'] distributive shares for the year, and they varied from year to year as they were tied to the profits of the firm." *Id.* The limited partners' distributive shares of Denham's income were not reported as net earnings from self-employment under the limited-partner exception. ADD8-9.

### 2. The IRS Audit

In 2018, the IRS launched a coordinated "compliance campaign" regarding the limited-partner exception. *See* IRS, *IRS Announces Rollout of Five Large Business and International Compliance Campaigns* (Mar. 13, 2018), https://www.irs.gov/businesses/irs-lbi-compliance-campaigns-march-13-2018 (listing "SECA Tax"). According to the IRS, "[s]ome individual partners," including limited partners of "state-law . . . limited partnerships," should not have been claiming the

limited-partner exception for their distributive shares of partnership income. IRS, *Large Business & International Active Campaigns: SECA Tax* (last updated July 16, 2025), https://www.irs.gov/businesses/corporations/lbi-active-campaigns#seca-tax. The IRS thereafter opened a TEFRA partnership-level audit of Denham's 2016 and 2017 tax returns focusing on this issue.

In March 2023, the IRS issued notices of final partnership administrative adjustment to Denham for 2016 and 2017. APP33-39; APP40-46. In each notice, the IRS concluded that the limited-partner exception did not apply and increased net earnings from self-employment at the partnership level by the limited partners' aggregate distributive share of partnership income. *See* ADD9; APP38-39; APP45-46. Denham petitioned the Tax Court for readjustment in June 2023. APP12-22; *see* 26 U.S.C. § 6226(a)(1).

### 3. The Tax Court's Intervening *Soroban* Decision

A few months after the petition was filed, the Tax Court issued an opinion that shaped the decision below. *See Soroban Cap. Partners LP v. Commissioner*, 161 T.C. 310 (2023). In *Soroban*, an investment firm organized as a Delaware limited partnership reported its limited partners' guaranteed payments as net earnings from self-employment, but not their distributive shares of partnership income. *Id.* at 313-14. The IRS audited the partnership and adjusted the "net earnings from self-employment by increasing it to include the shares of ordinary

business income allocated to the limited partners." *Id.* at 311. The partnership contested that adjustment in Tax Court. *Id.* at 314.

On summary judgment, the partnership asked the Tax Court to hold that, because the limited partners were "state law limited partners" of a "state law limited partnership," the limited-partner exception applied to their distributive shares of partnership income. *Id.* at 319. If the court instead concluded that the exception depended on an inquiry into the limited partners' roles in the partnership, as the Commissioner argued, the partnership asked the court to hold that this "inquiry . . . does not concern a partnership item and cannot be resolved in a TEFRA partnership-level proceeding." *Id.* at 314. The court denied summary judgment, siding with the Commissioner on both issues.

With respect to the substantive issue, the Tax Court held that a "functional analysis test should be applied when determining whether the limited partner exception . . . applies to limited partners in state law limited partnerships." *Id.* at 319. That holding depended on the court's interpretation of the phrase "as such." *See id.* at 320. The limited-partner exception applies to the "distributive share . . . of a limited partner, as such." 26 U.S.C. § 1402(a)(13). According to the court, "[i]f Congress had intended that limited partners be automatically excluded, it could have simply said 'limited partner.'" *Soroban*, 161 T.C. at 320. "By adding 'as such,'" the court said, "Congress made clear that the limited partner exception

applies only to a limited partner who is functioning as a limited partner." *Id.* Based on legislative history, the court took the phrase "limited partner, as such" to refer to partners who function as "passive investors." *Id.* at 321.

With respect to the procedural issue, the court recognized that its functional analysis would require an examination of "the functions and roles of the limited partners in the partnership," but nonetheless held that the application of its test "is a partnership item" that is "appropriate" for a partnership-level proceeding. *Id.* at 322, 324-25. It noted that the limited-partner exception can affect the amount of net earnings from self-employment, and that partnerships report that amount in the "aggregate" for all of their partners. *Id.* at 324. Because the court's "functional inquiry . . . involves factual determinations that are necessary to determine [the] aggregate amount of net earnings from self-employment," the court found it "appropriate" to undertake that inquiry in partnership-level proceedings. *Id.* (relying on 26 C.F.R. § 301.6231(a)(3)-1(b)).

#### 4. Tax Court Proceedings Below

Returning to this case: In April 2024, the Tax Court held a two-day trial focusing on two issues: *first*, whether "the income attributable" to Denham's five limited partners was "excludable from Denham's [net earnings from self-employment] under the limited partner exception"; and *second*, whether "an adjustment to a partnership's [net earnings from self-employment] is an adjustment

to a partnership item subject to determination at the partnership level." ADD2; *see* APP9. Denham urged the court not to follow *Soroban* on either issue.

On the first issue, Denham argued that *Soroban* had misinterpreted the limited-partner exception, specifically the phrase "as such." *See* ADD13-14; ROA vol. 6 at 940-49. Denham noted that a person can be both a limited partner and a general partner of the same partnership. *See* ROA vol. 6 at 942-44. Citing dictionary definitions and legislative history, it contended that the phrase "distributive share . . . of a limited partner, as such" refers to the distributive share that a limited partner receives *as a limited partner* rather than as a general partner—and does not support *Soroban*'s functional analysis. *See id.* at 942-45. In place of that analysis, Denham proposed that, for purposes of the limited-partner exception, a "limited partner" includes a partner of a state-law limited partnership whose liability for partnership debts is limited to his investment in the partnership. *See id.* at 949-90. Denham contended that its limited partners qualified as limited partners under that standard. *Id.* at 990-1004.

Rather than "reconsider *Soroban*'s holding in this respect," the Tax Court doubled-down on *Soroban*'s functional analysis. ADD13; *see* ADD13-14. Relying on its own case law dealing with entity owners other than limited partners of limited partnerships, the court concluded that it needed to consider whether the limited partners' "relationships with Denham were more akin to those of passive

investors or employees." ADD15. Applying that test, and looking to a multitude of factors, the court determined that Denham's limited partners were more akin to employees and therefore "may not exclude [their] distributive shares from [their net earnings from self-employment] by way of the limited partner exception." ADD18; *see* ADD15-18.

On the second issue, Denham argued that *Soroban* had misinterpreted what counts as a partnership item that can be resolved in a TEFRA partnership-level proceeding. *See* ROA vol. 6 at 1004-09. Denham observed that partnership items "affect the entire partnership." *Id.* at 1006. Since the amount of net earnings from self-employment—including any amount excluded under the limited-partner exception—is determined partner-by-partner and merely affects the SECA "tax liability of a specific partner," Denham contended, it is not a partnership item. *Id.* at 1009 (citation omitted). The Tax Court did not grapple with this issue, instead summarily declining to "revisit *Soroban*'s reasoning" on it. ADD11.

The Tax Court accordingly sustained the IRS's adjustments, increasing Denham's net earnings from self-employment by $27.5 million for 2016 and $22.9 million for 2017. ADD1, 9; ADD20-21. This appeal followed. APP233-35.

## SUMMARY OF ARGUMENT

**I.** Denham's limited partners' distributive shares of partnership income—as distinct from their guaranteed payments for services they provided to

Denham—should be excluded from their net earnings from self-employment under the limited-partner exception.

Under that exception, "there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments . . . for services." 26 U.S.C. § 1402(a)(13). The key question is whether Denham's limited partners were limited partners within the meaning of the exception. They were. "Limited partner" is a legal term with a well-understood meaning: a partner of a limited partnership with limited liability for partnership obligations. Denham's limited partners unquestionably—indeed, undisputedly—fit that bill. Their distributive shares of Denham's income should therefore be excluded from their net earnings from self-employment.

The Tax Court erred in looking beyond the definition of a "limited partner" and imposing "a functional analysis inquiry" that examines a partner's "roles and responsibilities" with the partnership. ADD11. As support, the court primarily relied on the words "as such" in the limited-partner exception. But those words signify that the exception applies only to the distributive share a limited partner receives *as a limited partner*—and not in some other capacity, like a general partner. They do not call for a free-floating inquiry into whether a particular partner is "functioning as a limited partner." *Soroban*, 161 T.C. at 320.

Nor does the content of the Tax Court's functional-analysis test work. That test treats a partner as a limited partner only if he is akin to a "passive investor." ADD14. But the limited-partner exception—through its carveout for guaranteed payments for services and its treatment of dual-status partners—contemplates limited partners who are anything but passive. Other aspects of the statutory scheme bolster the point. And a passive-investor test is unworkable and lacks any sound footing. The Tax Court came up with it based on its own precedents, which dealt with a different issue, and legislative history, which does not support the passive-investor test. In any event, the definition of "limited partner" must control, and that definition encompasses Denham's limited partners.

**II.** The Tax Court also erred in determining net earnings from self-employment in a TEFRA partnership-level proceeding.

Net earnings from self-employment are not a "partnership item" under TEFRA. 26 U.S.C. § 6231(a)(3). They are not "required to be taken into account for the partnership's taxable year under any provision of subtitle A" of the Internal Revenue Code, nor does any regulation say they are "more appropriately determined at the partnership level than at the partner level." *Id.* On the contrary, net earnings from self-employment are computed by individuals based on their own income for their own taxable year. And determining net earnings from self-employment—including the applicability of the limited-partner exception—

requires an examination of partner-specific facts that is wholly *in*appropriate for determination at the partnership level.

The Tax Court's contrary conclusion was based on its view that partnerships must determine their aggregate net earnings from self-employment. That view appears to come from IRS forms and instructions, not any statute or regulation that counts for TEFRA purposes. And affirming the Tax Court would mean expanding partnership-level proceedings to encompass a litany of partner-specific determinations that do not affect the partnership or other partners—an outcome that cannot be reconciled with TEFRA or precedents interpreting it.

The Tax Court's decision should be reversed or vacated with instructions to dismiss for lack of a partnership item.

**STANDARD OF REVIEW**

This Court reviews Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." *Cavallaro v. Commissioner*, 842 F.3d 16, 20 (1st Cir. 2016) (citation omitted). "Thus, [this Court] review[s] the Tax Court's legal conclusions de novo and its factual findings for clear error." *Id.* The issues raised here are legal in nature and subject to de novo review.

# ARGUMENT

## I. THE LIMITED PARTNERS' DISTRIBUTIVE SHARES OF DENHAM'S INCOME ARE EXCLUDED FROM NET EARNINGS FROM SELF-EMPLOYMENT UNDER THE LIMITED-PARTNER EXCEPTION

Under the limited-partner exception, the "distributive share" of a partnership's income "of a limited partner, as such" is excluded from net earnings from self-employment for both Social Security and SECA tax purposes. 26 U.S.C. § 1402(a)(13); *accord* 42 U.S.C. § 411(a)(12). A limited partner is a partner of a limited partnership with limited liability. Denham's limited partners fit that bill. As a result, their distributive shares of Denham's income—as distinct from their guaranteed payments from Denham—are excluded from their net earnings from self-employment. In holding otherwise, the Tax Court misconstrued the words "as such" to require a functional analysis of a partner's role in the partnership and adopted a test that conflicts with the statutory scheme.

### A. Denham's Limited Partners Qualified For The Limited-Partner Exception Because They Had Limited Liability For Denham's Obligations

#### 1. A "Limited Partner" Is A Partner Of A Limited Partnership With Limited Liability

This case largely turns on the term "limited partner" in the limited-partner exception. 26 U.S.C. § 1402(a)(13). That term is not statutorily defined but has a well-established meaning: A limited partner is a partner of a limited partnership—

a state-law entity with general and limited partners—whose liability for partnership obligations is limited to his partnership investment. In fact, both agencies that administer the limited-partner exception have followed that definition.

**a.** “Under accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning.” *United Techs. Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96, 99 (1st Cir. 1994); *see, e.g.*, *Morissette v. United States*, 342 U.S. 246, 263 (1952) (“[W]here Congress borrows terms of art . . . , it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . .”). “Limited partner” is a legal term with a customary legal meaning that is dispositive here.

Limited partnerships are creatures of statute that have existed in the United States for two centuries. *See* William Draper Lewis, *The Uniform Limited Partnership Act*, 65 U. Penn. L. Rev. 715, 716-17 (1917). Their essential features are widely recognized. “A true limited partnership is an association in which the liability of one or more but not all of the members is limited to their contributions to the common fund; the liability of the other member or members for the debts of the association being unlimited.” *Id.* at 716. “The members whose liability is limited are usually referred to as ‘limited’ or ‘special partners,’ while those whose liability is unlimited are referred to as ‘general partners.’” *Id.*

These fundamental features are embedded in a host of limited-partnership laws. The 1916 Uniform Limited Partnership Act—which drew from then-existing state laws and was eventually adopted nationwide—defined a "limited partnership" as "a partnership formed by two or more persons . . . having as members one or more general partners and one or more limited partners" and made clear that "limited partners as such shall not be bound by the obligations of the partnership." Unif. Ltd. P'ship Act § 1, 8 U.L.A. 1, 2 (1922); *see id.*, Appendix, 8 U.L.A. at 51-188 (surveying state limited-partnership laws). The 1976 Revised Uniform Limited Partnership Act carried forward these features, and was likewise adopted nationwide. *See* Rev. Unif. Ltd. P'ship Act § 101(7) (1976) (APP78) (defining a "[l]imited partnership" as "a partnership formed by 2 or more persons under the laws of this State and having one or more general partners and one or more limited partners"); *id.* § 303(a) (APP86) (shielding limited partners from liability for partnership obligations); *see also, e.g.*, *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1501 n.14 (11th Cir. 1996) ("There is significant agreement among the 50 states and the District of Columbia on the broad outlines of a rule governing the liability of limited partners. This is because nearly every jurisdiction in this country has adopted a version of the Revised Uniform Limited Partnership Act of 1976 (RULPA).").

Legal dictionaries published around the enactment of the limited-partner exception are in accord. *See Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (relying on *Black's Law Dictionary* from "the time [42 U.S.C.] § 1988(b) was adopted" to discern the meaning of "'prevailing party'"); *United States v. Nason*, 269 F.3d 10, 16 (1st Cir. 2001) ("[p]redictably" turning to *Black's Law Dictionary* "to glean the most widely accepted legal meaning of 'physical force'"). The fourth and fifth editions of *Black's Law Dictionary* were published before and after the enactment of the limited-partner exception, respectively. They echo the definition of a limited partnership as a partnership with both general partners and limited (or special) partners. *See Black's Law Dictionary* 1277 (4th ed. 1951, 1957 prtg.) ("*Black's* Fourth Edition"); *Black's Law Dictionary* 836, 1009-10 (5th ed. 1979, 1986 prtg.) ("*Black's* Fifth Edition"). And they make clear that the key difference between the types of partners is that general partners "are personally liable for all debts of the partnership" whereas limited (or special) partners are "partner[s] whose liability to third party creditors of the partnership is limited to the amount invested . . . in the partnership." *Black's* Fifth Edition, *supra*, at 616, 836; *see id.* at 1009-10; *Black's* Fourth Edition, *supra*, at 1277.

These sources thus all point in the same direction: A "limited partner" within the meaning of the limited-partner exception is a partner of a limited

partnership—a partnership formed under state law with both general and limited partners—whose liability is limited to his partnership investment.

**b.** That same definition has been echoed by the Social Security Administration and the IRS, the agencies that administer the Social Security Act and the Internal Revenue Code, in which the limited-partner exception appears.

In 1978, the Social Security Administration amended its regulations to conform to the then-recently enacted limited-partner exception. 43 Fed. Reg. 25422, 25422 (June 13, 1978). Per that amendment, "the distributive share of partnership income or loss received by a limited partner is excluded from social security coverage." *Id.* The amendment defined a "'limited' partner" the same way as all the sources above—as "one whose financial liability with respect to the obligations of the partnership is limited to the amount of his or her financial investment in the partnership." *Id.* This definition has been carried forward and remains in the Social Security regulations today (with minor wording changes). *See* 20 C.F.R. § 404.1080(b)(3). The Social Security Administration's internal handbook also reiterates the same definitions related to limited partnerships and limited partners. *See* Social Sec. Admin., *Program Operation Manual System (POMS): RS 01802.302* (rev. Mar. 6, 1991), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802302.

IRS guidance outside of litigation is of a piece. The limited-partner exception went into effect for tax years beginning in 1978. *See* Social Security Amendments of 1977, Pub. L. No. 95-216, § 313(c), 91 Stat. 1509, 1536. The IRS's instructions for preparing partnership tax returns that year included "Definitions" focusing on the characteristics of limited partnerships and limited partners described above:

> **2. General Partner.**—A general partner is a member of the organization who is personally liable for the obligations of the partnership.
>
> **3. Limited Partner.**—A limited partner is one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership.
>
> **4. Limited Partnership.**—A limited partnership is a partnership composed of at least one general partner and one or more limited partners.

APP118. A report issued by the IRS about 1978 partnership returns echoed these definitions, citing the Uniform Limited Partnership Act. *See* APP109.

The IRS's consistency on this point continued through the 2016 and 2017 tax years at issue here, and continues to this day. Partnership return instructions for 2016 and 2017 and beyond repeated the same definitions related to limited partnerships and limited partners. *See* APP129, 132; APP135, 138; IRS, *2024 Instructions for Form 1065*, at 3, 46 (Jan. 16, 2025), https://www.irs.gov/pub/irs-prior/i1065--2024.pdf ("2024 Form 1065 Instructions"). And in addressing who

qualifies for the limited-partner exception specifically, those instructions directly stated the relevant point:

> **Limited partners.** Generally, a limited partner's share of partnership income (loss) isn't included in net earnings (loss) from self-employment. Limited partners treat as self-employment earnings only guaranteed payments for services they actually rendered to, or on behalf of, the partnership to the extent that those payments are payment for those services.

APP132; *accord* APP138. While the Commissioner has espoused a different position in this and other litigation, his marked departure from "guidance" that he has "repeatedly issued . . . to the public" is good reason "to question whether [his] current position represents the best view of the law." *Bittner v. United States*, 598 U.S. 85, 97 (2023).

**c.** Notably, too, attempts to shape the meaning of the limited-partner exception outside of litigation have gone nowhere.

In 1997, the Treasury Department proposed a regulation seeking to redefine the term "limited partner" "[s]olely for purposes of section 1402(a)(13)" of the Internal Revenue Code and the proposed regulation. 62 Fed. Reg. 1702, 1704 (Jan. 13, 1997). The proposed regulation would have applied a "functional approach" to deny the limited-partner exception to any partner who (1) had "personal liability . . . for the debts of or claims against the partnership by reason of being a partner"; (2) had "authority . . . to contract on behalf of the partnership"; (3) "participate[d]

in the partnership's trade or business for more than 500 hours during the partnership's taxable year"; or (4) provided any services "to or on behalf of" a partnership involved in the "performance of services in [specified] fields." *Id.* at 1703-04. Since this proposed regulation would have narrowed the limited-partner exception compared to Social Security regulations, *see supra* at 26, it could have caused some partnership income to be subject to SECA taxes but not to qualify the partner for Social Security benefits.

Congress swiftly responded. The Senate passed a resolution expressing "concern[] that the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department and would effectively change the law administratively without congressional action." 143 Cong. Rec. 13168 (June 27, 1997). Congress then passed, and the President signed, a law that prevented any "temporary or final regulation with respect to the definition of a limited partner under section 1402(a)(13) of the Internal Revenue Code" from "be[ing] issued" or going into effect "before July 1, 1998." Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 935, 111 Stat. 788, 882. Since that time, Treasury has not proposed new regulations on the limited-partner exception.

The IRS did try to sneak a functional analysis into the partnership return instructions, but that also failed. The draft instructions for preparing 2021

partnership returns added language regarding the limited-partner exception stating that "whether a partner is a limited partner" turns on, among other things, whether the partner "perform[s] services" for the partnership. APP150. That language was not included in the final partnership return instructions for 2021, nor does it appear in the instructions for later years. *See* APP143; *see also, e.g.*, 2024 Form 1065 Instructions, *supra*, at 3, 46.

This history solidifies that the term "limited partner" in the limited-partner exception continues to carry its settled legal meaning: a partner of a limited partnership with limited liability for partnership obligations.

#### 2. Denham's Limited Partners Undisputedly Had Limited Liability For Partnership Obligations

The only remaining question is whether Denham's limited partners were in fact partners of a limited partnership with limited liability for partnership obligations. With respect to that question, the evidence was unrefuted.

Denham undoubtedly was (and is) a limited partnership. The Commissioner stipulated that Denham is a limited partnership formed under Delaware law. APP26. In conformity with Delaware law, Denham's governing limited-partnership agreement designated a general partner and limited partners—the former having "unlimited liability" and "exclusive[]" management authority; and the latter having "liability . . . limited to the amount of [their] capital

contributions," limited rights, and no inherent management authority. APP62-66; *see* ADD2; *see also, e.g.*, Del. Code. Ann. tit. 6, § 17-101(11).

The limited partners likewise were (and are) limited partners. For starters, trial testimony revealed that Denham and its limited partners cared about limited liability because of the risks of Denham's global investing business. *See, e.g.*, APP218 (Mr. Porter: "[T]his business wouldn't exist if we didn't have limited liability."); APP229 (Mr. Tricoli: "You can't do the job without having limited liability."); *see also, e.g.*, APP171-73, 209-10, 218 (describing liability risks). Recognizing that a limited partner's limited liability can be compromised by failing to adhere to the requirements of state law, Denham meticulously observed all necessary formalities and ensured that limited partners did not purport to exercise control inconsistent with their limited-partner status. *See, e.g.*, APP161-62, 173-74, 190, 207-09, 230; *see also, e.g.*, Del. Code. Ann. tit. 6, § 17-303(a).

Indeed, these facts were not meaningfully contested. Rather than argue that Denham was not a limited partnership or that the limited partners did not have limited liability, the Commissioner argued that these facts were immaterial. *See, e.g.*, ROA vol. 6 at 1254, 1267 n.4. And ultimately, the Tax Court found all these facts. ADD2-3. That controls the outcome here. Since the limited partners were partners of a Delaware limited partnership who undisputedly had limited liability, they were limited partners within the meaning of the limited-partner exception, and

their distributive shares of Denham's income must be excluded from their net earnings from self-employment. *See* 26 U.S.C. § 1402(a)(13).

### B. The Tax Court Erred In Reading Its Functional-Analysis Test Into The Limited-Partner Exception

Although the Tax Court recognized the usual meaning of a limited partner, it did not adhere to that meaning when construing the limited-partner exception. Instead, the court held that determining whether someone qualifies for the limited-partner exception "require[s] a functional analysis inquiry to ascertain [his] roles and responsibilities" with the partnership. ADD10-11; *see Soroban Cap. Partners LP v. Commissioner*, 161 T.C. 310, 319-20 (2023). The court went on to hold that this test depends on whether a partner was "more akin to [a] passive investor[] or employee[]." ADD15. The court was wrong both to impose a functional-analysis test and about the content of that test.

#### 1. The Tax Court Misconstrued The Limited-Partner Exception To Impose A Functional Analysis

Notably, the Tax Court's reasoning in *Soroban*, which the court below followed, *see* ADD11-13, aligns with the definition of "limited partner" discussed at length above. In *Soroban*, the Tax Court determined that, if Congress had "simply said 'limited partner,'" it would have signaled that all partners of limited partnerships with limited liability are "automatically" limited partners for purposes

of the limited-partner exception. 161 T.C. at 320. The court's justifications for coming to a different understanding of the statute are deeply flawed.

**a.** The Tax Court's primary reason for departing from the accepted understanding of a "limited partner" rests on the next two words in the statute: "as such." 26 U.S.C. § 1402(a)(13). The limited-partner exception extends to the distributive share of partnership income of "a limited partner, as such." *Id.* The court viewed the words "as such" as "ma[king] clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Soroban*, 161 T.C. at 320. That read far too much into "as such."

The phrase "as such" has a plain meaning that must be respected. *See, e.g.*, *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013). "Such" is a "pointing word that must refer to a clear antecedent." Bryan A. Garner, *Garner's Modern English Usage* 873 (4th ed. 2016) (typeface normalized). In the phrase "as such," "*such* is a pronoun requiring an antecedent"; "as such" means *as the antecedent*. *Id.* at 78. *Garner's Modern English Usage* provides several illustrations, including:

- "There has been an abundance of English slang from at least the sixteenth century to the present time, but it has always been recognized *as such* . . . ." *Id.* (citation omitted). "Slang" is the antecedent, and "such" refers to it. *See id.* So the sentence means that English slang has always been recognized *as slang*.

- "I saw in this a threat to the British way of life, but I saw also that my seeing it *as such* [i.e., as a threat] was nonsense." *Id.* (alteration in original) (citation omitted).
- "Jake Coker was the starter even if Saban didn't anoint him *as such*," or *as the starter*. *Id.* (citation omitted).

The takeaway is that the phrase "a limited partner, as such," 26 U.S.C. § 1402(a)(13), means "a limited partner, *as a limited partner*." That is, in excluding from net earnings from self-employment the distributive share of partnership income of "a limited partner, as such," the limited-partner exception excludes the distributive share that a limited partner receives in his capacity as a limited partner—rather than in some other capacity. *Id.*[6]

The distinction drawn by "as such" matters because one person can wear multiple hats for the same partnership. Since at least the 1916 Uniform Limited Partnership Act, "[a] person may be a general partner and a limited partner in the same partnership at the same time." Unif. Ltd. P'ship Act § 12(1), 8 U.L.A. at 24.

---

[6] Related authorities corroborate this interpretation. A core partnership-tax statute provides that "[a] partnership as such shall not be subject to the income tax," meaning that a partnership is not taxed *as a partnership*, but the partners are taxed on partnership income. 26 U.S.C. § 701. Similarly, a core provision of the Uniform Limited Partnership Act stated that "limited partners as such shall not be bound by the obligations of the partnership," meaning that limited partners are not liable *as limited partners* but may be liable due to another role they hold. Unif. Ltd. P'ship Act § 1, 8 U.L.A. at 2.

A dual-status partner could receive two distributive shares of partnership income—one as a general partner and one as a limited partner. Only the latter would be eligible for the limited-partner exception. Indeed, legislative history suggests that "as such" appears in the limited-partner exception because of dual-status partners. *See* H.R. Rep. No. 95-702, pt. 1, at 40 (1977) ("[I]f a person is both a limited partner and a general partner in the same partnership, the distributive share received as a general partner would continue to be covered under present law [i.e., not subject to the limited-partner exception].").

In sum, the words "as such" do not mean what the Tax Court thought. Tellingly, in another appeal challenging *Soroban*, the Commissioner did not defend the Tax Court's reliance on "as such." *See* Appellee Br., *Sirius Sols., L.L.L.P. v. Commissioner*, No. 24-60240 (5th Cir. Oct. 11, 2024), ECF No. 57. That highlights the court's error in interpreting "as such" to require the addition of a functional analysis to the definition of "limited partner."

**b.** The Tax Court's secondary justification for imposing a functional analysis fares no better. The court indicated that "federal law, not state law," governs whether someone is a "limited partner" within the meaning of the limited-partner exception, ADD14, and expressed concern about extending the exception to any partner with limited liability—what the court called "a partner who is

limited in name only," ADD11-12 (citation omitted). The court misunderstood how federal and state law interact, and its concern was misplaced.

It is common for federal tax law and state law to be linked. As the Supreme Court put it, "[s]tate law creates legal interests and rights," while "federal revenue acts designate" whether the "interests or rights, so created, shall be taxed." *Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940). And there are many cases linking federal tax law to state law. *See, e.g.*, *United States v. National Bank of Com.*, 472 U.S. 713, 722-23 (1985) (state law determines a taxpayer's legal interest in property; federal tax law determines whether that interest is "property"); *Morgan*, 309 U.S. at 81 (similar, as to powers of appointment); *Boyer v. Commissioner*, 732 F.2d 191, 194 (D.C. Cir. 1984) (looking primarily to state law "to determine marital status for federal tax purposes"). Perhaps most on-point, several courts have considered who counts as a "shareholder" required to elect a special corporate tax regime. *See* 26 U.S.C. § 1362(a)(2). As the Seventh Circuit explained, "federal law . . . determines which *kind* of shareholder—namely, beneficial rather than record—is required to elect," but "[w]hether a particular investor was a shareholder of that kind . . . is an issue of state law." *Cabintaxi Corp. v. Commissioner*, 63 F.3d 614, 617 (7th Cir. 1995); *see Pahl v. Commissioner*, 150 F.3d 1124, 1127-28 (9th Cir. 1998).

This case presents similarly intertwined issues of federal and state law. Federal tax law governs "which *kind* of" partner is a limited partner for purposes of the limited-partner exception. *Cabintaxi*, 63 F.3d at 617. As discussed above, partners of limited partnerships with limited liability for partnership obligations are of that kind. *See supra* at 22-30. State law then dictates "[w]hether a particular [partner] was a [partner] of that kind." *Cabintaxi*, 63 F.3d at 617. Contrary to what the Tax Court said, this linkage does not mean that the limited-partner exception "appl[ies] to a partner who is limited in name only." ADD11-12 (quoting *Soroban*, 161 T.C. at 320). Rather, it applies to partners who—like Denham's limited partners—are limited in the sense that mattered to the Congress that enacted the exception.

#### 2. The "Passive Investor" Test Is Incompatible With The Statutory Scheme, Unsound, And Unjustified

While the Tax Court's primary error was in imposing a functional-analysis test at all, the content of that test is also wrong. The Tax Court adopted a "passive investor" test, which purports "to ascertain whether" a partner's relationship with the partnership is "more akin" to that of a "passive investor[]" or an "employee[]." ADD14-15; *see Soroban*, 161 T.C. at 320-21. Only if the relationship is "generally one of passive investment" does the Tax Court exclude the partner's distributive share of partnership income from net earnings from self-employment under the

limited-partner exception. ADD14. That test is at odds with the statutory scheme and is unworkable, and the court's reasons for adopting it are unavailing.

**a.** The Tax Court's passive-investor test conflicts with the statutory scheme, which contemplates limited partners who are anything but passive. This is plain from two aspects of the limited-partner exception itself.

*First*, the limited-partner exception contains a carveout for guaranteed payments for services. A guaranteed payment is a payment to a partner that is "determined without regard to the income of the partnership." 26 U.S.C. § 707(c). When a guaranteed payment is made to "a partner for services," it is "considered as made to one who is not a member of the partnership." *Id.* It is like a salary to an employee. And the limited-partner exception treats it that way: "[G]uaranteed payments . . . for services actually rendered to or on behalf of the partnership" that are "in the nature of remuneration for those services" fall outside of the exception—and so are treated like employee wages for both Social Security and SECA tax purposes. *Id.* § 1402(a)(13); *see* H.R. Rep. No. 95-702, pt. 1, at 40; *supra* at 8-9. On its face, then, the limited-partner exception contemplates limited partners who are active in the partnership.

*Second*, as discussed above, the limited-partner exception accommodates dual-status partners, or those who are both a general partner and a limited partner of the same partnership. *See supra* at 34-35. General partners typically conduct

and control the limited partnership's business, *see, e.g.*, *Black's* Fourth Edition, *supra*, at 1277, so a dual-status partner could, too, in his capacity as a general partner. Yet a dual-status partner is still subject to the limited-partner exception to the extent his distributive share of the partnership's income is attributable to his limited-partner interest. *See* H.R. Rep. No. 95-702, pt. 1, at 40; *supra* at 34-35.

The Tax Court briefly mentioned the first point, but not the second. ADD14. The court tried to square the "guaranteed payment carveout" with its passive-investor test, suggesting that a limited partner can perform *some* services for the partnership as long as his relationship to the partnership "is generally one of passive investment." *Id.* But that view erases the line that Congress drew with the guaranteed-payment carveout. A limited partner might work full-time for the partnership and receive a guaranteed payment of $50,000 for services worth $50,000. The carveout would sensibly make that $50,000 net earnings from self-employment. The Tax Court's passive-investor test, by contrast, would ignore the carveout, deem the partner "more akin" to an employee, and treat *all* of his partnership income as net earnings from self-employment. ADD13.

The right way to approach the limited-partner exception is to recognize that it already addresses limited partners who work for the partnership: A limited partner's distributive share of partnership income falls within the limited-partner

exception unless it is a guaranteed payment for services or is not attributable to his limited-partner interest.

**b.** Two statutes enacted close in time to the limited-partner exception confirm that the Tax Court's passive-investor test is wrong.

*First*, roughly a decade before Congress enacted the limited-partner exception, it added a retired-partner exception. *See* Social Security Amendments of 1967, Pub. L. No. 90-248, § 118(a), 81 Stat. 821, 841 (1968) (codified at 26 U.S.C. § 1402(a)(10) and 42 U.S.C. § 411(a)(9)). That exception excludes "amounts received by a partner . . . on account of retirement" from net earnings from self-employment—but only if the partner "rendered *no services* with respect to any trade or business carried on by such partnership." 26 U.S.C. § 1402(a)(10) (emphasis added). Such a partner would be truly passive. But Congress did not say anything similar in the limited-partner exception.

*Second*, the year before Congress enacted the limited-partner exception, it enacted another statute with the term "limited partner." Tax Reform Act of 1976, Pub. L. No. 94-455, § 207(a)(1), 90 Stat. 1520, 1536-37 (codified for the years at issue at 26 U.S.C. § 461(j)). That statute denied certain deductions to a "farming syndicate," defined in pertinent part as "a partnership . . . engaged in the trade or business of farming, if more than 35 percent of the losses during any period are allocable to limited partners." *Id.* The statute did not define "limited partner," but

it provided that a partnership interest is "treated as . . . not held by a limited partner" for this purpose if it is attributable to "any individual who has actively participated (for a period of not less than 5 years) in the management of any trade or business of farming." *Id.* This demonstrates Congress's understanding that limited partners need not be passive investors. After all, the statute envisions limited partners who "actively participate[]" in the partnership and gives special treatment—for farming-syndicate purposes only—to limited partners who actively participate for "not less than 5 years." *Id.*

These pieces of statutory context establish that Congress easily could have written a passive-investor test into the definition of "limited partner," but opted not to. It should not be treated as though it had. *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 227 (2008) (rejecting limit on statute when Congress "easily could have written" the statute to incorporate that limit).

**c.** The Tax Court's passive-investor test—a multifactor totality-of-the-circumstances test—is also indeterminate and unworkable.

As its treatment of the guaranteed-payment carveout shows, the Tax Court does not truly believe its passive-investor test requires a limited partner to be passive. A limited partner can work for the partnership, but if he works too much, then *none* of his partnership income is subject to the limited-partner exception—even if he is fully compensated for his services through payments that are already

outside of that exception. *See* ADD14; *supra* at 39. How much is too much is anyone's guess.

Indeed, the Tax Court has leaned into the indeterminacy of its test. Based on its opinion in this case, the court has identified five factors that feed into its passive investor test: (1) "the extent to which the partners' time, skills, and judgment were essential to the partnership's income"; (2) the "roles they played in the business"; (3) "the time they devoted to the business"; (4) "how the partnership advertised itself to the public, and whether it advertised any specific skills or expertise of the partners"; and (5) "the capital contributed by the partners." *Soroban Cap. Partners LP v. Commissioner*, T.C. Memo. 2025-52, 2025 WL 1517432, at *10 (2025) (discussing ADD15-17). But the court has also said its test "is not dictated by any set number of factors." *Id.* at *11. This is a classic totality-of-the-circumstances test where tax certainty goes to die—creating massive administrability problems for taxpayers, their advisors, both agencies that administer the limited-partner exception, and courts. *See Sirius* Recording of Oral Arg. at 26:22-34 (5th Cir. Feb. 6, 2025), https://www.ca5.uscourts.gov/OralArgRecordings/24/24-60240_02-06-2025.mp3 (Judge Oldham calling the "list of factors" in the Tax Court's passive-investor test "extraordinary" and stating that the test "blanches even me because I'm not sure how in the world I would apply it"); *cf., e.g.*, *Commissioner v. Soliman*, 506 U.S. 168, 183-84 (1993) (Thomas, J., concurring in the judgment) ("I

am at a loss [for how different facts would impact a totality-of-the-circumstances test], and I am afraid the taxpayer, his attorney, and a lower court would be as well."). That may explain why, outside of litigation, neither the Social Security Administration nor the IRS has adopted it. *See supra* at 26-28.

The burden imposed by the Tax Court's passive-investor test could perhaps be justified if Congress had written it into law. But it has not. Congress chose a term—"limited partner"—that does not correspond to "passive investor" and, as discussed, left ample evidence that it was not imposing a passive-investor test.

**d.** The Tax Court's main reason for adopting the passive-investor test lay in its own precedent, primarily *Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137 (2011). *See* ADD12-13. But that precedent—which obviously does not bind *this* Court in any way—concerned a different issue.

In *Renkemeyer*, the Tax Court considered whether partners of a Kansas law firm could invoke the limited-partner exception to exclude their distributive shares of the firm's income from their net earnings from self-employment. *See* 136 T.C. at 138-39. In holding they could not, the court disregarded the partners' limited liability under state law and instead focused on the fact that their "distributive shares arose from legal services they performed on behalf of the law firm" rather than a financial investment in the firm. *Id.* at 150; *see id.* at 146-50.

An important distinction is that the entity designation in *Renkemeyer* had an extra "L." The *Renkemeyer* firm was a limited liability partnership (or "LLP"), not a limited partnership (or "LP"). *See id.* at 138. A limited liability partnership is a form of entity that "did not come into existence until 1991," over a decade after the limited-partner exception was enacted. *Garnett v. Commissioner*, 132 T.C. 368, 374 (2009). It is a species of "*general* partnership" in which "all partners . . . enjoy limited liability protection and may have management powers"—not a *limited* partnership in which the general partners have unlimited liability and control the partnership while the limited partners have limited liability and lack control. *Renkemeyer*, 136 T.C. at 148 (emphasis added). The limited-partner exception does not cover distributive shares of general partners, and so the partners in *Renkemeyer* sought to *extend* it to general partners who "enjoy[ed] limited liability" under state law. *Id.*; *see id.* at 147.

The other cases discussed by the Tax Court considered similar extensions of the limited-partner exception to entity owners other than limited partners and are distinguishable for the same reason. *See Hardy v. Commissioner*, T.C. Memo. 2017-16, 2017 WL 168471, at *2-3, 10-11 (2017) (minority member of a limited liability company); *Castigliola v. Commissioner*, T.C. Memo. 2017-62, 2017 WL 1372505, at *3 (2017) ("members of a member-managed" professional limited liability company). In fact, pre-*Renkemeyer* cases *rejected* a passive-

investor test, holding that owners of partnerships that were not organized as state-law limited partnerships could not rely on the limited-partner exception despite their lack of "personal involvement" in the partnership's business. *Perry v. Commissioner*, T.C. Memo. 1994-215, 67 T.C.M. (CCH) 2966, 2967-68 (1994); *see Johnson v. Commissioner*, T.C. Memo. 1990-461, 60 T.C.M. (CCH) 603, 606 (1990). And post-*Renkemeyer* cases clarified that the "functional test of *Renkemeyer*" did not necessarily carry over to "de jure limited partner[s]." *Joseph v. Commissioner*, T.C. Memo. 2020-65, 2020 WL 2538971, at *21 n.9 (2020); *see Duffy v. Commissioner*, T.C. Memo. 2020-108, 2020 WL 3960116, at *50 n.16 (2020) (*Renkemeyer* applies to "interest[s] other than a limited partner interest").

Whatever the test for an extension of the limited-partner exception to entity owners other than limited partners may be, it is not implicated here. Denham is a limited partnership with a general partner and limited partners as all these concepts have long been understood. *See supra* at 22-32. The Tax Court precedent on which the court relied thus has no bearing on this case.

**e.** The other source on which the Tax Court relied for its passive-investor test was a House Report published in connection with the law that enacted the limited-partner exception. *See Soroban*, 161 T.C. at 316-17 (citing H.R. Rep. No. 95-702, pt. 1, at 11). Specifically, the court cited a summary of the limited-partner exception indicating that the exception "is to exclude for [Social Security]

coverage purposes certain earnings which are basically of an investment nature." H.R. Rep. No. 95-702, pt. 1, at 11; *see Soroban*, 161 T.C. at 317. But that isolated statement ignores other statements in the House Report and cannot control the test to be applied anyway.

The very next sentence in the House Report contradicts the Tax Court's passive-investor test. Explaining the guaranteed-payment carveout, it stated that the limited-partner exception "would not extend to guaranteed payments . . . , such as salary and professional fees, received for services actually performed by the limited partner for the partnership"—an acknowledgment that limited partners need not be passive investors. H.R. Rep. No. 95-702, pt. 1, at 11; *see supra* at 38. The detailed overview of the exception repeated that statement and also described the treatment of dual-status partners, which likewise conflicts with a passive-investor test. *See* H.R. Rep. No. 95-702, pt. 1, at 40-41, 86; *supra* at 38-39.

More generally, the House Report makes clear that the limited-partner exception was enacted to prevent limited partners from using their partnership income to claim Social Security coverage, except in the case of guaranteed payments for services. *See* H.R. Rep. No. 95-702, pt. 1, at 11, 40-41. That aim demands a bright-line rule that broadly keeps limited partners' non-guaranteed partnership income *out* of their net earnings from self-employment. The Tax Court's murky passive-investor test would do the opposite. If that fact-laden test

deems a limited partner to be "more akin" to an employee, ADD13, then *all* of his partnership income becomes net earnings from self-employment for Social Security and SECA tax purposes. So a limited partner who receives a $50,000 guaranteed payment for services worth $50,000, along with a $100,000 distributive share of partnership income, could end up with Social Security benefits and SECA taxes based on $150,000 of net earnings from self-employment. That is squarely at odds with what the limited-partner exception was designed to do.

In the end, though, what matters is not what the House Report said but what Congress did. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) ("[L]egislative history is not the law."). And that takes us back to the beginning. The limited-partner exception uses the term "limited partner, " which has a well-understood definition that is not synonymous with "passive investor." Since Denham's limited partners met that definition, their distributive shares of Denham's income are excluded from net earnings from self-employment, and the Tax Court's contrary decision should be reversed.

## II. NET EARNINGS FROM SELF-EMPLOYMENT CANNOT BE DETERMINED IN A TEFRA PARTNERSHIP-LEVEL PROCEEDING

Although Denham is right about the merits, the Court need not necessarily reach the merits. This case arises out of a partnership-level proceeding under TEFRA—which, as explained above, can determine only "partnership items." ADD1; *see supra* at 10. But determinations of net earnings from self-employment,

including the applicability of the limited-partner exception, are made at the partner level, and are not a partnership item. The Tax Court's contrary conclusion is wrong and would stretch partnership-level proceedings to encompass determinations that affect only individual partners, not the partnership, and turn on partner-specific facts.

### A. Net Earnings From Self-Employment Are Not A Partnership Item

For something to be a "partnership item" within the meaning of TEFRA, two things must be true. *See Napoliello v. Commissioner*, 655 F.3d 1060, 1065 (9th Cir. 2011). *First*, the "item" must be "required to be taken into account for the partnership's taxable year under any provision of subtitle A" of the Internal Revenue Code. 26 U.S.C. § 6231(a)(3). *Second*, Treasury Regulations must "provide that . . . such item is more appropriately determined at the partnership level than at the partner level." *Id.*; *see* 26 C.F.R. § 301.6231(a)(3)-1. Neither is true as to net earnings from self-employment.

At the first prong, individuals, not partnerships, account for net earnings from self-employment under subtitle A. The definition of "net earnings from self-employment" in subtitle A revolves around the individual: The term means "income derived by *an individual* from any trade or business carried on by such *individual*, . . . plus *his* distributive share of income . . . described in section 702(a)(8) from any trade or business carried on by a partnership of which

*he* is a member" (subject to certain exceptions, including the limited-partner exception). 26 U.S.C. § 1402(a) (emphases added). Consistent with that individual-centric focus, net earnings from self-employment are computed for an individual's, not a partnership's, taxable year. *See id.* (flush language) ("[T]he distributive share [a partner] is required to include in computing his net earnings from self-employment shall be based on the ordinary income or loss of the partnership for any taxable year of the partnership ending within or with *his taxable year*." (emphasis added)); *see also id.* § 6017 (individuals must "make a return with respect to the self-employment tax" when they "hav[e] net earnings from self-employment of $400 or more" during their taxable year).

The second prong is even more straightforward. Treasury Regulations list a variety of items that are "more appropriately determined at the partnership level than at the partner level." 26 C.F.R. § 301.6231(a)(3)-1(a). But those regulations do not mention net earnings from self-employment anywhere. *See id.* § 301.6231(a)(3)-1; *see also, e.g.*, *Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000) (a partner's right to consistent settlement terms was not a partnership item because, among other things, it was "not on the list" in the regulations).

More generally, it makes no sense to view net earnings from self-employment as a partnership item. Partnership items are "relevant to the partnership as a whole," *United States v. Woods*, 571 U.S. 31, 39 (2013), and are

determined in partnership-level proceedings because their "treatment affects the entire partnership," *Bush v. United States*, 655 F.3d 1323, 1325 (Fed. Cir. 2011); *see, e.g.*, *Napoliello*, 655 F.3d at 1065 (the validity of a partnership is a partnership item because, among other things, it "affects the tax liability of all partners"). By contrast, "[i]tems that merely affect the tax liability of a specific partner, but not the other partners, are not partnership items." *Russian Recovery Fund Ltd. v. United States*, 81 Fed. Cl. 793, 797 (2008) (alteration in original) (citation omitted). Each individual determines his net earnings from self-employment based on his income from non-partnership and partnership sources. And a partner's net earnings from self-employment depend on facts specific to him, affect only his liability for SECA taxes, and do not affect any other partner. *See, e.g.*, *Estate of Quick v. Commissioner*, 110 T.C. 172, 186-87 (1998) (the "characterization of [partnership] losses as active or passive in the hands of petitioners [wa]s not a partnership item"; it "ha[d] no effect on any item that would affect all of the partners' respective returns, nor d[id] it have any effect on any item on the Partnership's return or on the Partnership's books and records").

To take one obvious example, only "an individual" can have net earnings from self-employment; a corporation cannot. 26 U.S.C. § 1402(a); *see id.* § 7701(a)(1), (3). So whether partnership income constitutes net earnings from self-employment depends in part on the identity of the partner. A partnership with

two equal partners, one individual and one corporation, would distribute equal income to both—but only the individual partner's distributive share could be net earnings from self-employment. And neither the corporate partner's status as a corporation nor its lack of net earnings from self-employment affects the individual partner or the partnership. There is no partnership item in the mix. *See Grigoraci v. Commissioner*, T.C. Memo. 2002-202, 84 T.C.M. (CCH) 186, 190-91 (2002) ("[D]etermining the identity of the partners is not a partnership item . . . because it has no effect on either the partnership's aggregate or each partner's share of income, gain, loss, deductions, or credits of the partnership.").

The exceptions in the definition of "net earnings from self-employment" highlight the individualistic nature of that term. There are over a dozen exceptions, many of which turn on facts specific to an individual or a partner. *See* 26 U.S.C. § 1402(a). The limited-partner exception is a good example. As the parties have interpreted it, that exception turns primarily on whether a partner has limited liability or is more akin to a passive investor versus an employee. Either way, it requires a partner-by-partner determination based on partner-specific facts, and the determination as to one partner does not affect any other partner. It simply cannot be decided for "the partnership as a whole." *Woods*, 571 U.S. at 39.

In short, net earnings from self-employment are computed by each individual based on his own facts and affect only him. While that determination

must take into account his distributive share of income from any partnerships of which he is a partner, it has no effect on the partnership or the other partners. As a result, Denham's limited partners' net earnings from self-employment, including the applicability of the limited-partner exception to them, are not a partnership item that can be determined in a TEFRA partnership-level proceeding like this one.

### B. The Tax Court Inappropriately Treated A Partner-Level Determination As A Partnership Item

The Tax Court determined that the limited partners' net earnings from self-employment could be determined at the partnership level based solely on its earlier decision in *Soroban*. *See* ADD10-11. While *Soroban* started with the correct two-prong test, *see* 161 T.C. at 323-24; *supra* at 48, its cursory analysis of that test does not withstand scrutiny.

The *Soroban* court summarily concluded that the first prong was met because "[s]ection 1402 is found in subtitle A" of the Internal Revenue Code and, according to a prior Tax Court case, "subtitle A requires a partnership to separately state 'the amount of income that would be [net earnings from self-employment] in the hands of the ultimate recipients if those recipients were in fact individuals.'" 161 T.C. at 324 (alteration in original) (quoting *Olsen-Smith, Ltd. v. Commissioner*, T.C. Memo. 2005-174, 90 T.C.M. (CCH) 64, 66 (2005)). There are at least two problems with the Tax Court's reasoning in this respect.

*First*, that reasoning did not actually engage with the statutory test. The first prong does not ask whether a particular provision is located in subtitle A or whether a partnership must separately state an item. It asks whether an item is "required to be taken into account for the partnership's taxable year under any provision of subtitle A." 26 U.S.C. § 6231(a)(3). Section 1402 and its definition of "net earnings from self-employment" may appear in subtitle A, but as discussed above, a partnership does not take net earnings from self-employment into account for its taxable year. *See supra* at 48-49. Rather, a partnership determines its income and each partner's distributive share of that income—both of which are partnership items—and the partner factors his own distributive share into his own computation of net earnings from self-employment for his own taxable year. *See* 26 U.S.C. § 1402(a) (flush language); *see also* 26 C.F.R. § 301.6231(a)(3)-1(a)(1).

*Second*, the Tax Court's reasoning was incorrect on its own terms. Neither *Soroban* nor the case it cited, *Olsen-Smith*, identified a provision in subtitle A requiring partnerships to separately state net earnings from self-employment. Such a requirement would usually emanate from sections 702 and 703 of the Internal Revenue Code—which are in subtitle A and require partners and partnerships to "separately state[]" partnership items listed in section 702(a) to which the Code

ascribes particular treatment. 26 U.S.C. § 703(a)(1); *see id.* § 702(a).[7] But nothing in section 702(a) addresses net earnings from self-employment or requires partnerships to separately state net earnings from self-employment.

On the contrary, two items listed in section 702(a) show that partnerships need not separately state net earnings from self-employment. Section 702(a)(7) requires items specified in regulations to be separately stated. *Id.* § 702(a)(7). But the regulations do not require partnerships to separately state net earnings from self-employment—and a temporary regulation indicates that net earnings from self-employment are determined "with respect to a partner" and are not a "partnership item[]." 26 C.F.R. § 1.702-3T(f). Section 702(a)(8) requires "taxable income or loss, exclusive of items requiring separate computation under other paragraphs" to be separately stated. 26 U.S.C. § 702(a)(8). That figure flows directly into net earnings from self-employment. *See id.* § 1402(a) (net earnings from self-employment include a partner's "distributive share" of partnership "income or loss *described in section 702(a)(8)*" (emphasis added)). This confirms

[7] For example, a partnership must separately state its long-term capital gains and ordinary business income because partners must report their shares of those items in different ways and they are subject to different tax treatment (e.g., long-term capital gains are typically taxed at a lower rate than ordinary business income). *See* 26 U.S.C. § 702(a)(1)-(2), (8); *Dewees v. Commissioner*, 870 F.2d 21, 27 (1st Cir. 1989).

that partnerships need only separately state *that* figure, which the partners use to compute their *own* net earnings from self-employment.

The *Soroban* court's reasoning at the second prong was equally flawed. According to *Soroban*, a partnership must determine its "aggregate amount of net earnings from self-employment." 161 T.C. at 324. Based on its understanding of a Treasury Regulation, *Soroban* concluded that any "factual determinations that are necessary to determine" that aggregate amount—including the applicability of the limited-partner exception to partners' distributive shares—are more appropriately determined at the partnership level than at the partner level. *Id.* (relying on 26 C.F.R. § 301.6231(a)(3)-1(b)). Not so.

The regulation on which *Soroban* relied provides that "[t]he term 'partnership item' includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)-1(b). This provision was added in response to a comment to make explicit what had been "implicit": "[I]tems that affect the computation of partnership taxable income" are themselves partnership items. 51 Fed. Reg. 13212, 13213 (Apr. 18, 1986). The central problem with *Soroban*'s reasoning is that it presumes partnerships need to determine their "aggregate amount of net earnings from self-employment." 161 T.C. at 324. But they do not. Individuals—

not partnerships—determine net earnings from self-employment based on their income and their individual attributes and exceptions. *See supra* at 48-49.

At both prongs, the Tax Court's view seems to have been colored by IRS forms and instructions. *See Olsen-Smith*, 90 T.C.M. (CCH) at 65-66. It is true that the IRS's partnership tax return form and related instructions tell partnerships to report aggregate net earnings from self-employment. *See, e.g.*, 2024 Form 1065 Instructions, *supra*, at 45-47. But IRS forms and instructions are not "provision[s] of subtitle A" that can require partnerships to take items into account for their taxable year or dictate the treatment of something as a partnership item. 26 U.S.C. § 6231(a)(3).[8] Nor are they "regulations" that can dictate whether an item is "more appropriately determined at the partnership level than at the partner level." *Id.*; *cf., e.g.*, *Green Rock LLC v. IRS*, 104 F.4th 220, 229 (11th Cir. 2024) (IRS notice designating certain transactions as potentially abusive was not legally binding because it did not go through notice-and-comment rulemaking).

In the end, the Tax Court reached a bottom-line conclusion that is antithetical to both TEFRA and its own precedent. *Soroban* concluded that there must be "[a] functional inquiry into the roles and activities" of *all* the partners in

---

[8] Although a statute requires partnerships to file returns reporting information that the IRS "may by forms and regulations prescribe," it is in subtitle F, not subtitle A. 26 U.S.C. § 6031(a); *see Monti*, 223 F.3d at 82 (pointing to a statute's location in "subtitle F" to determine that a right granted by that statute was not a partnership item).

one partnership proceeding to determine whether *each* partner is a limited partner for SECA tax purposes—requiring facts about how much time each partner spent on partnership activities, how much authority each partner had, and the like. 161 T.C. at 324; *see supra* at 41-43. Accepting that conclusion would obliterate the wall between partnership-level proceedings, which are supposed to deal with items "relevant to the partnership as a whole," and partner-level proceedings, which are supposed to deal with "partner level determinations." *Woods*, 571 U.S. at 39-41. The Tax Court's own precedent, on which *Soroban* relied, did not countenance that result. *See Olsen-Smith*, 90 T.C.M. (CCH) at 67. This Court should not either.

## CONCLUSION

The Tax Court's decision should be reversed on the merits or vacated with instructions to dismiss because there is no partnership item at issue.

Date: August 8, 2025

Respectfully submitted,

/s/ *Eric J. Konopka*

Eric J. Konopka
Elizabeth A. Kanyer
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
eric.konopka@lw.com

Brian C. McManus
Shannon C. Fiedler
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

*Counsel for Petitioners-Appellants Denham Capital Management LP; Denham Capital Management GP LLC, Tax Matters Partner*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,968 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and First Circuit Rule 34.0(a).

I hereby certify that the foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Eric J. Konopka*
Eric J. Konopka

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Eric J. Konopka*
Eric J. Konopka

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS


**Page**

**Addendum Pursuant To Local Rule 28.0**

Memorandum Findings of Fact and Opinion, Dkt. No. 72 (Dec. 23, 2024) .......... ADD1

Order and Decision, Dkt. No. 73 (Jan. 14, 2025) .......... ADD20

**Statutory And Regulatory Addendum**[1]

26 U.S.C. § 461 .......... ADD22

26 U.S.C. § 701 .......... ADD35

26 U.S.C. § 702 .......... ADD36

26 U.S.C. § 703 .......... ADD39

26 U.S.C. § 707 .......... ADD41

26 U.S.C. § 1401 .......... ADD44

26 U.S.C. § 1402 .......... ADD47

26 U.S.C. § 6031 .......... ADD63

26 U.S.C. § 6221 .......... ADD66

26 U.S.C. § 6223 .......... ADD67

26 U.S.C. § 6226 .......... ADD72

26 U.S.C. § 6231 .......... ADD77

42 U.S.C. § 411 .......... ADD84

20 C.F.R. § 404.1080 .......... ADD98

26 C.F.R. § 1.702-3T .......... ADD102

26 C.F.R. § 301.6231(a)(3)-1 .......... ADD110


---

[1] Versions in effect for the 2016 and 2017 tax years at issue.

# United States Tax Court

T.C. Memo. 2024-114

DENHAM CAPITAL MANAGEMENT LP, DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

---

Docket No. 9973-23. Filed December 23, 2024.

---

*Shannon C. Fiedler*, *Brian C. McManus*, and *Elizabeth A. Kanyer*, for petitioner.

*Julie V. Skeen*, *Emerald G. Smith*, *Alicia H. Eyler*, *Naseem J. Khan*, and *Michael E. Washburn*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, *Chief Judge*: Respondent issued Notices of Final Partnership Administrative Adjustment (FPAA) for tax years 2016 and 2017 (years in issue) to Denham Capital Management GP LLC (petitioner) as tax matters partner for Denham Capital Management, LP (Denham). In the FPAAs respondent increased Denham's net earnings from self-employment (NESE) for 2016 and 2017 by $27,475,186 and $22,919,414, respectively. Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 12/23/24**

**[*2]** The issues for consideration are whether (1) an adjustment to a partnership's NESE is an adjustment to a partnership item subject to determination at the partnership level and (2) the income attributable to five of Denham's partners is excludable from Denham's NESE under the limited partner exception pursuant to section 1402(a)(13).

## FINDINGS OF FACT

Some of the facts are stipulated and so found. The Stipulations of Facts and the attached Exhibits are incorporated herein by this reference. Denham's principal place of business was Massachusetts when its Petition was timely filed.

Petitioner is the tax matters partner and state law general partner of Denham. Petitioner is a Delaware limited liability company and elected to be treated as a partnership for federal income tax purposes. Denham is organized as a limited partnership under Delaware law and offers investment advisory and management services to affiliated private equity funds that invest in the energy sector, specifically oil and gas, mining, and power. Pursuant to investment advisory agreements between Denham and each fund, Denham was expected to furnish investment advice, negotiate terms of investments, monitor the health of the investments, and complete the day-to-day administrative tasks associated with managing the funds.

*Denham's Partners and the Partnership Agreement*

In addition to petitioner Denham had five limited partners during the years in issue. These individuals were Stuart Porter, Scott Mackin, Carl Tricoli, Riaz Siddiqi, and Jordan Marye (collectively, Partners). The Partners functioned similarly to and were subject to the same general policies and procedures as Denham's employees.

Denham's Fifth Amended and Restated Limited Partnership Agreement (LPA), effective May 1, 2014, governed the obligations and authority of Denham's partners for the years in issue. Under the LPA, petitioner, as general partner of Denham, had "unlimited liability" for Denham's debts. Partners enjoyed limited liability and could be held personally liable for the debts and obligations of Denham only to the extent, if any, of capital contributions they made to Denham.

The LPA vested all management authority exclusively in petitioner. Mr. Porter owned 100% of the equity of petitioner, but all of the Partners were voting members of petitioner throughout the years in

**[*3]** issue. Denham's limited partners had authority to the extent petitioner delegated authority to them. On November 1, 2013, acting in his authority as managing member of petitioner, Mr. Porter authorized via written resolution Messrs. Tricoli, Mackin, and Siddiqi, along with Denham's chief financial officer, director of tax, general counsel, and associate general counsel, to negotiate and execute any type of agreement or document on petitioner's behalf. The resolution also authorized Kelly Henry, whose role with Denham could not be determined from the record, to execute any federal or state tax return. Denham's LPA also required that each partner, except for Mr. Porter, "devote substantially all of his or her business time and attention to the affairs of [Denham] and its affiliates."

Messrs. Porter, Siddiqi, and Tricoli were Denham's founding partners. On February 15, 2007, Mr. Porter contributed approximately $8 million in exchange for his limited partner interest. Other than Mr. Porter's initial contribution, no other capital contributions were made to Denham by any of the partners. Messrs. Tricoli, Siddiqi, Mackin, and Marye received their limited partner interests in Denham through grants of profits interests at various times ranging from April 2008 to May 2014.

Denham's Partners had the authority to remove partners by consensus. The Partners voted informally to decide whether to expel an underperforming partner. Partner removal occurred according to written agreements whereby the exiting partner disassociated simultaneously from all Denham-related entities. For example, two partners exited Denham in this fashion before the years in issue. Mr. Siddiqi, for reasons other than his performance, began phasing out of Denham by the end of 2017.

The Partners held various roles and responsibilities not explicitly outlined in the LPA. Mr. Porter oversaw Denham's investment strategy from a macroeconomic perspective through managing the risk group, which performed risk analyses of transactions and Denham's portfolios and provided its recommendations to the appropriate investment committee. Denham carried total life insurance coverage on Mr. Porter of $90 million in 2016 and $30 million in 2017. Mr. Porter also spent a considerable amount of his time meeting with lower level Denham employees to discuss career development and their ongoing work.

Messrs. Tricoli, Mackin, and Marye each held the title of managing partner and led deal teams within their respective sectors.

**[*4]** Messrs. Tricoli and Mackin also held the title of copresident. Mr. Tricoli led oil and gas and mining deal teams. Mr. Mackin joined Denham as a managing director before becoming partner in 2010. During the years in issue Mr. Mackin led deal teams in the power sector. Mr. Marye was promoted to partner in 2014, and he also led oil and gas sector deal teams.

Mr. Siddiqi served as managing partner and led the portfolio services group during the years in issue. The portfolio services group was an internal Denham team which monitored and reported on the status of the investments Denham managed. The group conducted extensive due diligence and intervened where a company a Denham fund had invested in, called a portfolio company, did not meet expectations. Intervention typically involved forming and implementing a business plan, hiring or replacing management, or exiting the investment early. During the years in issue Mr. Siddiqi was personally involved with Denham's rehabilitation of at least two portfolio companies.

The Partners' role with Denham was so fundamental to the firm's operation that investors had the right to withdraw their investments early if one or more of the Partners died, became disabled, or could no longer devote substantially all business time to the funds. Each fund's "key person" provision referred to Mr. Porter, but all five Partners were considered a key person by at least one of the funds active during the years in issue.

In addition to their specific titles and roles, certain responsibilities were handled by all the Partners. First and foremost, each of the Partners served on some or all of Denham's management, valuation, and/or investment committees, which are discussed in further detail below. Excluding Mr. Porter, the Partners frequently served on boards of directors of portfolio companies. A Denham partner or employee was not compensated for serving on a portfolio company's board of directors. The Partners often discussed their decision making in their director roles with other Denham Partners but observed that they owed fiduciary duties to the portfolio companies' other shareholders.

Messrs. Porter, Mackin, and Marye were actively engaged in fostering and attracting investor relationships. They frequently traveled to meet with potential and current investors for fundraising

**[*5]** purposes. When the Partners traveled, travel reimbursements were provided by Denham, not petitioner.

The Partners made most business decisions affecting Denham's internal operation through the management committee. Petitioner established the management committee, which was empowered pursuant to Article III, section 3.02(b) of the LPA. In 2016 and 2017 Messrs. Porter, Tricoli, and Mackin were the sole members of the management committee. The management committee discussed issues such as, but not limited to, budgeting, significant employee hirings or departures, and the expansion of the number of offices.

*Denham's Operation*

Denham managed five active funds in 2016 and seven active funds in 2017, under which it had $7.5 billion and $8.3 billion of assets under management, respectively. Messrs. Porter, Siddiqi, and at least one other of Denham's Partners were directly involved with each fund. Each partner is referenced in every private placement memorandum (PPM), and each investment committee had Mr. Porter, Mr. Siddiqi, and at least one more. Denham had approximately 80 employees during the years in issue. In 2017 Denham's compensation per employee ranged from approximately $61,000 to $1,200,000. Denham was scheduled to pay approximately $21,302,203 in total employee compensation in 2017. With the exception of Mr. Siddiqi, who had begun to phase out, each of the Partners was scheduled to receive a salary of $325,000 and no bonus. Twenty-three of Denham's employees were scheduled to receive total compensation exceeding the Partners' salaries.

Each fund is a separate entity formed as a limited partnership with another limited partnership as its general partner. The partners of the limited partnerships that served as the funds' general partners were generally partners and/or employees of Denham. Each fund's general partner had the authority to make all investment decisions for the respective fund, and its investors, primarily institutional, purchased limited partner interests in the fund entities to make their investments. Fund investors had no decision-making authority as part of their limited partnership stake.

Each fund paid Denham quarterly management fees in exchange for its advisory services. Management fee terms varied by fund but typically ranged between 0.75% and 1.75% of capital committed by investors. Denham generated $69,903,232 and $61,280,194 in total

**[*6]** revenue for 2016 and 2017, respectively, all of which was derived from fees collected in exchange for its investment management services.

Denham's funds generally followed a specific process in making their investments. At the outset Denham established the fund's legal structure, and the Partners collectively determined the fund's fundraising target, or the "top target capital raise," based on market factors. To aid the Partners in soliciting capital commitments, Denham hired outside counsel to prepare PPMs to inform potential investors of the details of each fund. Denham's general counsel and the Partners reviewed the PPMs before they were circulated to potential investors. The PPMs informed investors about the fund's objectives, its strategies, and the Denham team overseeing the fund, including a professional biography of each Partner and the senior-level employees that supported that respective sector.

According to Denham's recommendations, the funds used the committed capital to acquire equity interests, typically controlling interests, in portfolio companies Denham viewed as being fit for investment, held them for a period, and then "exited" the investments by selling the equity they had acquired and returning capital to investors.

Denham's method of providing advice to the funds involved multiple internal Denham teams, such as each fund's deal team, investment committee, and valuation committee. Deal teams consisted of sector-specific groups of investment professionals under the supervision of a Partner or a managing director. Voting members of the investment committees typically included one or more of Denham's Partners and other senior professionals. In 2016 and 2017 Messrs. Porter, Tricoli, and Siddiqi served on the investment committee for every fund Denham managed. Also during the years in issue, Mr. Mackin served on the committees for the commingled commodity funds and Mr. Marye served on the oil and gas fund's investment committee.[1]

Each fund's deal team was responsible for generating and analyzing investment proposals and presenting them to that fund's investment committee. Investment committees met weekly to consider and vote on potential new investments and significant decisions relating to existing investments. For the committee to adopt an investment

[1] Other limited partners whose status as such is not in question for the years in issue also served on various investment committees.

**[*7]** recommendation, the vote needed to be unanimous. As a result, each of the Partners, while having no affirmative authority to do so, could effectively reject an investment proposal unilaterally. The respective fund's deal team executed recommendations approved by the investment committee and monitored portfolio companies.

The investment committees closely scrutinized each recommendation. Deal teams circulated memoranda explaining the details of investment proposals, followed by a presentation of the same to the investment committee. Voting members of the respective investment committee debated the proposal before voting. Partners, even when discussing a proposal before a committee they were not a voting member of, were encouraged to use their specialized knowledge of finance and the commodities industry to provide feedback on the proposal being discussed. The deal teams and investment committees worked closely with other Denham teams such as the risk group and the portfolio services group throughout the process.

Denham's valuation committees reviewed, discussed, and approved recommendations with respect to valuations prepared by the deal teams. Valuation recommendations were made quarterly on a company-by-company basis and were necessary for accurate financial reporting to regulators and fund investors. The valuation committee's role was advisory as it did not have the authority to obligate a fund to accept or reject a valuation.

Most portfolio companies were not traded on public markets, and consequently the valuation process involved benchmarking investments against comparable public market investments or other ventures Denham had engaged in. Denham's accounting team refined the valuations it proposed in response to valuation committee members' critical evaluation and inquiries into the assumptions and methodologies used to reach their conclusion. Once all disagreements were resolved, the valuations were presented for a vote.

In 2016 and 2017 the valuation committees included a broad group of Denham personnel, such as the chief financial officer, the general counsel, and other senior professionals, including all five of the Partners. As with Denham's investment committees, approval of a valuation recommendation required a unanimous vote from the valuation committee, and thus one voting member could effectively reject a recommendation.

**[*8]** A fund's decision to initiate, alter, or exit an investment was made according to recommendations given to it by Denham. The recommendations were reviewed, scrutinized, and revised at the direction of the Partners that were voting members of the respective investment committee. Each fund's general partner had the authority to reject a recommendation that was approved by an investment committee, but that never actually occurred.

Denham's PPMs frequently represented to potential investors that "[t]he overall direction of the firm is guided by its partners." Further, the Partners' experience and expertise was an influential consideration to potential investors. In contrast to the employees who provided support, Denham's Partners used their experience and expertise to make the strategic decisions related to Denham's provision of investment advisory services in three distinct areas. The Partners (1) managed investor relations and fundraising; (2) made fundamental business decisions by serving as voting members of one or more of Denham's management, valuation, and investment committees, and (3) managed their sector's deal teams, including making personnel decisions.

*Denham's Financial and Tax Reporting*

Chief Financial Officer John Collins led Denham's finance team and handled financial reporting for Denham and its affiliates. Denham worked in conjunction with PricewaterhouseCoopers, LLP (PwC), to have its financial statements audited and to prepare Denham's Forms 1065, U.S. Return of Partnership Income. PwC's audit report described the Partners as "active limited partners," a term provided by Denham.

Petitioner made no guaranteed payments or distributions to the Partners in 2016 or 2017. In each of those years Denham made guaranteed payments and capital distributions to the Partners and petitioner. The guaranteed payments were intended to represent the Partners' salaries and included the value of a package of typical employment benefits. The distributions to the Partners were tied to their distributive shares of Denham's income and calculated on the basis of their profits interests. There was no guaranteed minimum for the Partners' distributive shares for the year, and they varied from year to year as they were tied to the profits of the firm.

When computing the Partners' NESE for the years in issue, Denham included their guaranteed payments but excluded their

**[*9]** distributive shares of Denham's ordinary business income. The following tables show the amounts of guaranteed payments, NESE, and distributions Denham reported on its returns for 2016 and 2017:

| *2016* | | | | |
|---|---|---|---|---|
| | *Ordinary Income* | *Guaranteed Payments* | *NESE* | *Distributions* |
| Petitioner | $33,813 | — | $33,633 | $39,574 |
| Stuart Porter | 10,027,043 | $427,178 | 427,178 | 8,723,326 |
| Scott Mackin | 3,990,985 | 241,565 | 241,565 | 3,030,423 |
| Carl Tricoli | 6,931,842 | 350,820 | 350,820 | 5,656,821 |
| Riaz Siddiqi | 2,456,321 | 382,820 | 382,820 | 2,083,944 |
| Jordan Marye | 4,068,995 | 342,516 | 342,516 | 2,424,961 |

| *2017* | | | | |
|---|---|---|---|---|
| | *Ordinary Income* | *Guaranteed Payments* | *NESE* | *Distributions* |
| Petitioner | $28,088 | — | $28,268 | $24,705 |
| Stuart Porter | 6,554,420 | $382,959 | 382,959 | 7,091,483 |
| Scott Mackin | 2,662,994 | 179,704 | 179,704 | 2,919,166 |
| Carl Tricoli | 6,890,616 | 389,633 | 389,633 | 7,316,065 |
| Riaz Siddiqi | 1,412,031 | 47,175 | 47,175 | 1,434,193 |
| Jordan Marye | 5,398,806 | 367,809 | 367,809 | 5,331,920 |

Denham reported total NESE of $1,778,532 and $1,395,001 for 2016 and 2017, respectively.[2] On March 27, 2023, respondent issued the FPAAs for the years in issue, increasing Denham's NESE to $29,253,718 and $24,314,415 for 2016 and 2017, respectively.

## OPINION

The Commissioner's determinations in an FPAA are generally presumed correct, though the taxpayer can rebut this presumption. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Republic*

[2] For 2017 Denham reported $547 less of total NESE than the sum of the NESE it reported on the Partners' Schedules K–1, Partner's Share of Income, Deductions, Credits, etc. We see no reason for this difference other than computational error. We need not decide the effect of this error as it does not affect our resolution of this case.

**[*10]** *Plaza Props. P'ship v. Commissioner*, 107 T.C. 94, 104 (1996). Section 7491 provides that the burden of proof on a factual issue may shift to the Commissioner if the taxpayer satisfies specified conditions. Among these conditions are that the taxpayer must have "introduce[d] credible evidence with respect to [that] factual issue." § 7491(a)(1).

When each party has satisfied its burden of production, then the party supported by the weight of the evidence will prevail, and thus a shift in the burden of proof has real significance only in the event of an evidentiary tie. *See Knudsen v. Commissioner*, 131 T.C. 185, 189 (2008), *supplementing* T.C. Memo. 2007-340. We have discerned no evidentiary tie on any relevant factual question and are able to decide the issues on the preponderance of the evidence. *See, e.g.*, *Bordelon v. Commissioner*, T.C. Memo. 2020-26, at *11.

Generally, NESE includes

> the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by [subtitle A] which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member . . . .

§ 1402(a).

Section 1402(a) also provides a list of exclusions from NESE. Relevantly, section 1402(a)(13) excludes from NESE an individual's

> distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration of those services . . . .

Section 1402(a)(13) is commonly referred to as the limited partner exception. Resolution of this case depends on our classification of Denham's partners under section 1402(a)(13).

Recently, the Court held in *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023), that the Court has jurisdiction to determine a state law limited partner's status for the purpose of

**[*11]** determining applicability of the limited partner exception in partnership level proceedings pursuant to the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, *Soroban*, 161 T.C. at 325, and that such determinations require a functional analysis inquiry to ascertain the roles and responsibilities of partners to determine their status for tax purposes, *Soroban*, 161 T.C. at 319. Petitioner challenges both of *Soroban*'s holdings.

Petitioner contends that *Soroban* missed the mark because therein the Court did not consider a third element of the definition of partnership items—that the item must affect the entire partnership, not just the partners individually. The Court adheres to the doctrine of stare decisis and thus affords precedential weight to its prior reviewed and division opinions. *E.g.*, *Analog Devices, Inc. & Subs. v. Commissioner*, 147 T.C. 429, 443 (2016). We revisit our prior decisions only when presented with a special justification to do so. *Sec. State Bank v. Commissioner*, 111 T.C. 210, 213 (1998), *aff'd*, 214 F.3d 1254 (10th Cir. 2000). We see no special justification to revisit *Soroban*'s reasoning. Therefore, determination of the applicability of the limited partner exception is a partnership item over which the Court has jurisdiction. Also, determinations under section 1402(a)(13) require a functional analysis inquiry to ascertain the Partners' roles and responsibilities for tax purposes.

*Functional Analysis Test*

Section 1401 imposes a tax on every individual's self-employment income for a taxable year. § 1401(a) and (b). With minor exceptions not relevant here, self-employment income is equivalent to the NESE derived by an individual during the taxable year. § 1402(b). Section 1402(a)(13) excludes from NESE an individual's distributive share of any item of income or loss of a "limited partner, as such," other than guaranteed payments described in section 707(c) to the extent the payments are in the nature of remuneration of services actually rendered to or on behalf of the partnership. We construe exceptions to NESE narrowly to achieve the congressional policy that the optimum number of potentially eligible persons will be provided for under the Social Security framework. *Stevenson v. Commissioner*, T.C. Memo. 1989-357, 57 T.C.M. (CCH) 1032, 1034 (citing *Johnson v. Commissioner*, 60 T.C. 829, 833 (1973)).

In *Soroban*, 161 T.C. at 320–31, the Court held "that the limited partner exception does not apply to a partner who is limited in name

**[*12]** only" and that "Congress intended section 1402(a)(13) to apply to partners that are passive investors." Before *Soroban*, in *Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137 (2011), the Court applied a functional analysis test to determine whether the lawyer-partners of a Kansas limited liability partnership were limited partners under section 1402(a)(13).

The Court in *Renkemeyer* looked to the legislative history to provide insight with respect to Congress's intent. *Renkemeyer*, 136 T.C. at 150. We held that "the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations (which was the archetype of limited partners at the time) would not receive credits toward Social Security coverage." *Id.* Furthermore, the legislative history does not support the conclusion that Congress intended to exclude partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons) from liability for self-employment taxes. *Id.*

The parties disagree on whether the Partners are limited partners for purposes of section 1402(a)(13). Petitioner contends that a functional analysis test in the context of a limited partnership should inquire whether the partners have maintained their limited liability status under state law or the Revised Uniform Limited Partnership Act. As part of its analysis in *Renkemeyer*, the Court held that a partner's having limited liability was not enough for the partner to qualify as a limited partner for purposes of section 1402(a)(13). *Renkemeyer*, 136 T.C. at 147. The Court concluded that the interest of a limited partner in a limited partnership is similar to the interest of a passive investor. *Id.* at 147–48.

In *Renkemeyer* the Court focused on how partnership income was derived and found that it was received in exchange for legal services performed by the partners. *Id.* at 150. Each of those partners participated in management of the firm and contributed only a nominal amount of capital for his respective partnership units. *Id.* at 141. Those facts led the Court to conclude that the partners' distributive shares of income were not a return on the partners' investments, but rather earned from the provision of legal services performed by the partners on behalf of the law firm. *Id.* at 150. *Renkemeyer*'s conclusion was not affected by the fact that the partners failed to comply with formalities prescribed by state partnership law. *Id.*

**[*13]** Since *Renkemeyer*, the Court has continued to use a functional analysis to determine whether state-law partners of passthrough entities are limited partners for the purpose of section 1402(a)(13). In *Castigliola v. Commissioner*, T.C. Memo. 2017-62, at *12, the Court used the *Renkemeyer* analysis to conclude that the members of a professional limited liability company were not limited partners because they were involved in the management of the business.

The Court has also applied the *Renkemeyer* functional analysis test to determine whether a partner is a "limited partner, as such" under section 1402(a)(13). In *Hardy v. Commissioner*, T.C. Memo. 2017-16, the Court concluded that a surgeon who held a minority interest in a partnership that operated a surgery center was a limited partner for purposes of section 1402(a)(13). The surgeon performed some of his surgeries at the center, but he had no day-to-day or management responsibilities with respect to the partnership; and patients paid separate fees to the partnership for the use of the surgery centers. *Hardy*, T.C. Memo. 2017-16, at *7. The number of surgeries that the surgeon performed at the center did not affect his distributive share. *Id.* The Court concluded that the surgeon received a distribution based on the fees that patients paid to use the surgery centers, and therefore his distributive share was not subject to the self-employment tax because he received it in his capacity as an investor. *Id.* at *32. In *Hardy*, as in *Renkemeyer* and *Castigliola*, the functional inquiry was not focused on state law, but rather on the efforts and responsibilities borne by the partner and whether his business arrangement with the partnership in question was more akin to one of employment or one of a passive investment.

Petitioner argues that the pre-*Soroban* cases are inapplicable here because they concerned taxpayers who owned interests in entities other than a state law limited partnership. This argument fails because it ignores that *Soroban* expressly condoned the Commissioner's position therein that "the Court must apply a functional analysis test, *similar to the test outlined in Renkemeyer and subsequent cases*." *Soroban*, 161 T.C. at 319 (emphasis added). While petitioner is correct that those cases involved entities other than limited partnerships, the Court's opinion in *Soroban* adequately considered and resolved the question that petitioner's argument attempts to answer. Again, without a special justification to reconsider *Soroban*'s holding in this respect, *see Sec. State Bank*, 111 T.C. at 213, we find *Renkemeyer* and the subsequent cases instructive in applying a functional analysis test applicable to state law limited partnerships.

**[*14]** In addition to disregarding our settled precedent, petitioner's position violates the maxim that federal law, not state law, prescribes classification of individuals and organizations for federal tax purposes. *See, e.g.*, Treas. Reg. § 301.7701-1(a); *see also Kraatz & Craig Surveying Inc. v. Commissioner*, 134 T.C. 167, 180 (2010) ("The meaning of the words or the legal status of circumstances for federal tax purposes need not be identical to their meaning or their legal effect under state law." (quoting *Estate of Steffke v. Commissioner*, 538 F.2d 730, 732 (7th Cir. 1976), *aff'g* 64 T.C. 530 (1975))).

Our caselaw has continuously reinforced our position that determinations under section 1402(a)(13) require a factual inquiry into how the partnership generated the income in question and the partners' roles and responsibilities in doing so. Petitioner's position that the Partners are eligible for the limited partnership exception merely because the Partners complied with formalities prescribed by state partnership law does not comport with our caselaw. *See Renkemeyer*, 136 T.C. at 150; *Castigliola*, T.C. Memo. 2017-62, at *7–14; *Hardy*, T.C. Memo. 2017-16, at *29–32.

Petitioner alternatively contends that a passive investor standard violates the canon against surplusage because it renders meaningless the final clause of section 1402(a)(13), also known as the guaranteed payment carveout. *See Growmark, Inc. & Subs. v. Commissioner*, 160 T.C. 475, 486 (2023) ("When construing a statute, the Court must interpret it 'so as to avoid rendering any part of the statute meaningless surplusage.'" (quoting *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016))). Specifically, petitioner suggests that because passive investors never receive guaranteed payments, the clause will never be invoked under a passive investor standard. We disagree.

We need to perform a comprehensive inquiry that seeks to determine, on account of the pertinent facts and circumstances, whether the Partners were "*generally* akin" to passive investors. *See Renkemeyer*, 136 T.C. at 147–48 (emphasis added). This standard does not preclude a partner from qualifying for the limited partner exception with respect to his distributive share of partnership income despite receiving a guaranteed payment for services actually rendered, as long as other circumstances of the partner's economic relationship with the partnership sufficiently indicate it is generally one of passive investment. Accordingly, we apply the passive investor standard to the facts of this case.

**[*15]** To determine Denham's NESE, we must analyze the Partners' roles and responsibilities to ascertain whether their relationships with Denham were more akin to those of passive investors or employees. Petitioner bears the burden of establishing that the Partners' distributive shares represented income of an investment nature. *See* Rule 142(a). To follow the Court's reasoning in *Renkemeyer*, we review the sources of Denham's income for the years in issue, the Partners' role in generating it, and the relationship between the Partners' distributive shares and any capital contributions they made to the partnership. *See Renkemeyer*, 136 T.C. at 150.

Denham's income for 2016 and 2017 consisted solely of fees it received in exchange for services provided to investors such as advising and operating the private investment funds. The Partners' time, skills, and judgment were essential to the provision of these services. The fees were substantial, generating approximately $130 million in revenue for Denham across the two years in issue. Denham claims that these amounts, which were largely distributed to the Partners as profits, were returns on their investments despite only one of the Partners' having made a capital contribution to acquire his interest. We disagree.

Except for Mr. Porter, none of the Partners made capital contributions to Denham to acquire their interests. Messrs. Porter and Siddiqi testified that the Partners paid Mr. Porter directly for their interests pursuant to written agreements. No such written agreements have been offered as evidence, and the record discloses no other instance of capital contributions to Denham except Mr. Porter's initial investment.

In 2016 and 2017 Denham made guaranteed payments and capital distributions to each of the Partners. The distributions were multiple times larger than the guaranteed payments in both years. The following table illustrates the absence of capital contributions made by the Partners to Denham and the amounts received in the years in issue they claim are returns on investment:

| **[*16]** *Partner* | *Capital Contributions Since Inception* | *2016 and 2017 Distributive Share* | *2016 and 2017 Guaranteed Payments* | *2016 and 2017 Distributions* |
|---|---|---|---|---|
| Stuart Porter | $8,000,000 | $16,581,463 | $810,137 | $15,814,809 |
| Carl Tricoli | — | 13,822,459 | 740,453 | 12,972,886 |
| Scott Mackin | — | 6,653,979 | 421,269 | 5,949,589 |
| Riaz Siddiqi | — | 3,870,352 | 429,995 | 3,518,137 |
| Jordan Marye | — | 9,467,801 | 710,325 | 7,756,881 |

When the size of a partner's investment is relatively small in comparison to the income the partnership earned for the services the partners provided, the small investment is not sufficient to classify the partner's distributive share as a return on investment. *See Renkemeyer*, 136 T.C. at 150. Considering that the Partners, except Mr. Porter, paid nothing for their partnership interests, it cannot be said that such large portions of the Partners' distributive shares in 2016 and 2017 were returns on investments. Even though Mr. Porter made a capital contribution, he cannot be considered a passive investor in view of the relative size of his investment compared to the substantial fees received by Denham, the central role that he played in generating them, and the fact that Denham carried a "key person" life insurance policy on him during the years in issue.

In addition, all of Denham's Partners, except for Mr. Porter, were required to "devote substantially all of [their] business time and attention to the affairs of the [p]artnership and its affiliates." The Partners, in fact, did each devote substantially all of their time to Denham. The Partners treated their work for Denham as their full-time employment. Each of the Partners participated in the management of Denham in some way. Messrs. Porter, Tricoli, and Siddiqi made up Denham's management committee. All five served on the firm's investment and valuation committees. When not acting by committee the Partners exercised authority delegated to them by petitioner to negotiate and execute any agreement or document to conduct Denham's business. These facts further support that the Partners were crucial and active parts of Denham's business.

**[*17]** The Partners' expertise and judgment were a significant draw for fund investors, who bargained for the Partners' oversight and could withdraw their investments if certain partners could no longer participate. Fund marketing materials made clear that the Partners had a significant role in Denham's operation, and it was the Partners who solicited capital commitments. Fund PPMs explained that investment decisions for the funds would be made by that fund's investment committee, which included the Partners.

The Partners each exercised significant control over personnel decisions. Through the management committee, and occasionally unilateral action, the Partners decided who to invite to be a new partner and who to hire and fire as employees, and they determined compensation packages. Criteria for hiring and promotion at Denham included strong financial analysis skills and a solid track record in investing. The Partners' control over Denham's personnel decisions is further evidence that the Partners were active and fundamental contributors to Denham's operation.

Denham planned to spend over $23 million in employee compensation for 2017. Such a large payroll indicates a substantial and active business operation, which included the Partners. Further, that a sizable number of Denham employees were scheduled to receive total compensation exceeding the Partners' guaranteed payments that petitioner alleges represented their market-level salary indicates that the guaranteed payments were not designed to adequately compensate the Partners for the value of their services. Petitioner provided no evidence tending to show how the guaranteed payments were calculated.

Denham does not exist without the Partners. Their directional and strategic guidance is what drew investors to Denham in the first place and is the reason Denham has maintained its success. Petitioner contends that the funds were independent and could refuse the recommendations of the Partners, but there is no evidence to support this claim. None of the Partners' investment recommendations were refused in practice. Denham's employees filled the ranks and provided support to effect the Partners' guidance. Employees made up the deal teams that analyzed and executed transactions and completed the day-to-day tasks of monitoring the funds. No employee of Denham had authority to make investment decisions for the funds. Individuals that serve roles as integral to their partnerships as those the Partners served for Denham cannot be said to be merely passive investors.

**[*18]** Petitioner's position in this case is unpersuasive for three reasons. First, petitioner's reliance on the prior cases of *Joseph v. Commissioner*, T.C. Memo. 2020-65, and *Duffy v. Commissioner*, T.C. Memo. 2020-108, is misplaced. In neither case did the Court address the issue of the applicability of the *Renkemeyer* functional analysis test to a state law limited partner. In other words, the facts and issues of both cases were sufficiently distinct from the record before us now that we do not consider dicta therein to be persuasive here. In any event, they support our conclusion that state partnership law is not determinative. *See Duffy*, T.C. Memo. 2020-108, at *50 n.16 ("In [*Renkemeyer*], 136 T.C. at 147, however, we concluded that an owner's protection from claims against an entity is not enough to qualify the owner as a limited partner for purposes of [section] 1402(a)(13)."); *Joseph*, T.C. Memo. 2020-65, at *59 (acknowledging that the evolution of state law limited liability entities forced the Court in *Renkemeyer* to adopt a functional analysis inquiry seeking to determine whether interest-holders are passive investors).

Second, the record supports the conclusion that the Partners were operating Denham's business as self-employed persons, rather than acting as limited partners as that term would have been understood when Congress enacted section 1402(a)(13). Denham's chief operation was providing investment management services to the funds, and the Partners controlled nearly every aspect of the provision of such services. Petitioner's contentions rest upon changes made to state law after the enactment of section 1402(a)(13), and thus cannot be considered to affect the statute's interpretation.

Third, petitioner's attempt to characterize the Partners' involvement in Denham's operation as carrying out their roles as members of petitioner does not comport with the fact that the Partners were focused on deriving financial benefit to and were compensated by Denham, not petitioner. Mr. Porter's testimony that his roles as a member of petitioner and an adviser to the funds were entirely different confirms that the Partners were providing services to the funds in their capacity as partners of Denham.

Accordingly, we find that the Partners were not "limited partners, as such" under section 1402(a)(13) and that Denham may not exclude the Partners' distributive shares from its NESE by way of the limited partner exception.

**[*19]** *Conclusion*

We have considered all of the parties' arguments and, to the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

*Decision will be entered for respondent.*

# United States Tax Court

Washington, DC 20217

DENHAM CAPITAL MANAGEMENT LP, DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER,

Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent

Docket No. 9973-23.

## ORDER AND DECISION

Pursuant to the determination of the Court, as set forth in its Memorandum Findings of Fact and Opinion (T.C. Memo. 2024-114), issued December 23, 2024, it is

ORDERED and DECIDED that the following statement shows the adjustments to the partnership items of Denham Capital Management LP for the tax period ending December 31, 2016:

| *Partnership Item* | *As Reported* | *As Determined* |
| --- | --- | --- |
| Net Earnings from Self-Employment | $1,778,532 | $29,253,718 |

It is further

ORDERED and DECIDED that the following statement shows the adjustments to the partnership items of Denham Capital Management LP for the tax period ending December 31, 2017:

**Entered and Served 01/14/25**

| *Partnership Item* | *As Reported* | *As Determined* |
|---|---|---|
| Net Earnings from Self-Employment | $1,395,001 | $24,314415 |

**(Signed) Kathleen Kerrigan**
**Chief Judge**

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 1. Normal Taxes and Surtaxes (Refs & Annos)
Subchapter E. Accounting Periods and Methods of Accounting
Part II. Methods of Accounting
Subpart C. Taxable Year for Which Deductions Taken

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 461, I.R.C. § 461

§ 461. General rule for taxable year of deduction

**(a) General rule.**--The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

**(b) Special rule in case of death.**--In the case of the death of a taxpayer whose taxable income is computed under an accrual method of accounting, any amount accrued as a deduction or credit only by reason of the death of the taxpayer shall not be allowed in computing taxable income for the period in which falls the date of the taxpayer's death.

**(c) Accrual of real property taxes.**--

**(1) In general.**--If the taxable income is computed under an accrual method of accounting, then, at the election of the taxpayer, any real property tax which is related to a definite period of time shall be accrued ratably over that period.

**(2) When election may be made.**--

**(A) Without consent.**--A taxpayer may, without the consent of the Secretary, make an election under this subsection for his first taxable year in which he incurs real property taxes.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Such an election shall be made not later than the time prescribed by law for filing the return for such year (including extensions thereof).

**(B) With consent.**--A taxpayer may, with the consent of the Secretary, make an election under this subsection at any time.

**(d) Limitation on acceleration of accrual of taxes.--**

**(1) General rule.**--In the case of a taxpayer whose taxable income is computed under an accrual method of accounting, to the extent that the time for accruing taxes is earlier than it would be but for any action of any taxing jurisdiction taken after December 31, 1960, then, under regulations prescribed by the Secretary, such taxes shall be treated as accruing at the time they would have accrued but for such action by such taxing jurisdiction.

**(2) Limitation.**--Under regulations prescribed by the Secretary, paragraph (1) shall be inapplicable to any item of tax to the extent that its application would (but for this paragraph) prevent all persons (including successors in interest) from ever taking such item into account.

**(e) Dividends or interest paid on certain deposits or withdrawable accounts.**--Except as provided in regulations prescribed by the Secretary, amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends or interest on their deposits or withdrawable accounts (if such amounts paid or credited are withdrawable on demand subject only to customary notice to withdraw) by a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, or a cooperative bank shall not be allowed as a deduction for the taxable year to the extent such amounts are paid or credited for periods representing more than 12 months. Any such amount not allowed as a deduction as the result of the application of the preceding sentence shall be allowed as a deduction for such other taxable year as the Secretary determines to be consistent with the preceding sentence.

**(f) Contested liabilities.**--If--

**(1)** the taxpayer contests an asserted liability,

**(2)** the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,

**(3)** the contest with respect to the asserted liability exists after the time of the transfer, and

**(4)** but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year) determined after application of subsection (h),

then the deduction shall be allowed for the taxable year of the transfer. This subsection shall not apply in respect of the deduction for income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States.

**(g) Prepaid interest.--**

**(1) In general.**--If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period--

**(A)** with respect to which the interest represents a charge for the use or forbearance of money, and

**(B)** which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

**(2) Exception.**--This subsection shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

**(h) Certain liabilities not incurred before economic performance.--**

**(1) In general.**--For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs.

**(2) Time when economic performance occurs.**--Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles:

**(A) Services and property provided to the taxpayer.**--If the liability of the taxpayer arises out of--

**(i)** the providing of services to the taxpayer by another person, economic performance occurs as such person provides such services,

**(ii)** the providing of property to the taxpayer by another person, economic performance occurs as the person provides such property, or

**(iii)** the use of property by the taxpayer, economic performance occurs as the taxpayer uses such property.

**(B) Services and property provided by the taxpayer.**--If the liability of the taxpayer requires the taxpayer to provide property or services, economic performance occurs as the taxpayer provides such property or services.

**(C) Workers compensation and tort liabilities of the taxpayer.**--If the liability of the taxpayer requires a payment to another person and--

**(i)** arises under any workers compensation act, or

**(ii)** arises out of any tort,


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

economic performance occurs as the payments to such person are made. Subparagraphs (A) and (B) shall not apply to any liability described in the preceding sentence.

**(D) Other items.**--In the case of any other liability of the taxpayer, economic performance occurs at the time determined under regulations prescribed by the Secretary.

**(3) Exception for certain recurring items.--**

**(A) In general.**--Notwithstanding paragraph (1) an item shall be treated as incurred during any taxable year if--

**(i)** the all events test with respect to such item is met during such taxable year (determined without regard to paragraph (1)),

**(ii)** economic performance with respect to such item occurs within the shorter of--

**(I)** a reasonable period after the close of such taxable year, or

**(II)** 8 ½ months after the close of such taxable year,

**(iii)** such item is recurring in nature and the taxpayer consistently treats items of such kind as incurred in the taxable year in which the requirements of clause (i) are met, and

**(iv)** either--

**(I)** such item is not a material item, or

**(II)** the accrual of such item in the taxable year in which the requirements of clause (i) are met results in a more proper match against income than accruing such item in the taxable year in which economic performance occurs.

**(B) Financial statements considered under subparagraph (A)(iv).**--In making a determination under subparagraph (A)(iv), the treatment of such item on financial statements shall be taken into account.

**(C) Paragraph not to apply to workers compensation and tort liabilities.**--This paragraph shall not apply to any item described in subparagraph (C) of paragraph (2).

**(4) All events test.**--For purposes of this subsection, the all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.

**(5) Subsection not to apply to certain items.**--This subsection shall not apply to any item for which a deduction is allowable under a provision of this title which specifically provides for a deduction for a reserve for estimated expenses.

**(i) Special rules for tax shelters.--**

**(1) Recurring item exception not to apply.**--In the case of a tax shelter, economic performance shall be determined without regard to paragraph (3) of subsection (h).

**(2) Special rule for spudding of oil or gas wells.--**

**(A) In general.**--In the case of a tax shelter, economic performance with respect to amounts paid during the taxable year for drilling an oil or gas well shall be treated as having occurred within a taxable year if drilling of the well commences before the close of the 90th day after the close of the taxable year.

**(B) Deduction limited to cash basis.--**

**(i) Tax shelter partnerships.**--In the case of a tax shelter which is a partnership, in applying section 704(d) to a deduction or loss for any taxable year attributable to an item which is deductible by reason of subparagraph (A), the term “cash basis” shall be substituted for the term “adjusted basis”.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(ii) Other tax shelters.**--Under regulations prescribed by the Secretary, in the case of a tax shelter other than a partnership, the aggregate amount of the deductions allowable by reason of subparagraph (A) for any taxable year shall be limited in a manner similar to the limitation under clause (i).

**(C) Cash basis defined.**--For purposes of subparagraph (B), a partner's cash basis in a partnership shall be equal to the adjusted basis of such partner's interest in the partnership, determined without regard to--

**(i)** any liability of the partnership, and

**(ii)** any amount borrowed by the partner with respect to such partnership which--

**(I)** was arranged by the partnership or by any person who participated in the organization, sale, or management of the partnership (or any person related to such person within the meaning of section 465(b)(3)(C)), or

**(II)** was secured by any asset of the partnership.

**(3) Tax shelter defined.**--For purposes of this subsection, the term "tax shelter" means--

**(A)** any enterprise (other than a C corporation) if at any time interests in such enterprise have been offered for sale in any offering required to be registered with any Federal or State agency having the authority to regulate the offering of securities for sale,

**(B)** any syndicate (within the meaning of section 1256(e)(3)(B)), and

**(C)** any tax shelter (as defined in section 6662(d)(2)(C)(ii)).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(4) Special rules for farming.**--In the case of the trade or business of farming (as defined in section 464(e)), in determining whether an entity is a tax shelter, the definition of farming syndicate in subsection (j) shall be substituted for subparagraphs (A) and (B) of paragraph (3).

**(5) Economic performance.**--For purposes of this subsection, the term "economic performance" has the meaning given such term by subsection (h).

**(j) [1] Limitation on excess farm losses of certain taxpayers.**--

**(1) Limitation.**--If a taxpayer other than a C corporation receives any applicable subsidy for any taxable year, any excess farm loss of the taxpayer for the taxable year shall not be allowed.

**(2) Disallowed loss carried to next taxable year.**--Any loss which is disallowed under paragraph (1) shall be treated as a deduction of the taxpayer attributable to farming businesses in the next taxable year.

**(3) Applicable subsidy.**--For purposes of this subsection, the term "applicable subsidy" means--

**(A)** any direct or counter-cyclical payment under title I of the Food, Conservation, and Energy Act of 2008, or any payment elected to be received in lieu of any such payment, or

**(B)** any Commodity Credit Corporation loan.

**(4) Excess farm loss.**--For purposes of this subsection--

**(A) In general.**--The term "excess farm loss" means the excess of--

**(i)** the aggregate deductions of the taxpayer for the taxable year which are attributable to farming businesses of such taxpayer (determined without regard to whether or not such deductions are disallowed for such taxable year under paragraph (1)), over

**(ii)** the sum of--

**(I)** the aggregate gross income or gain of such taxpayer for the taxable year which is attributable to such farming businesses, plus

**(II)** the threshold amount for the taxable year.

**(B) Threshold amount.--**

**(i) In general.--**The term "threshold amount" means, with respect to any taxable year, the greater of--

**(I)** $300,000 ($150,000 in the case of married individuals filing separately), or

**(II)** the excess (if any) of the aggregate amounts described in subparagraph (A)(ii)(I) for the 5-consecutive taxable year period preceding the taxable year over the aggregate amounts described in subparagraph (A)(i) for such period.

**(ii) Special rules for determining aggregate amounts.--**For purposes of clause (i)(II)--

**(I)** notwithstanding the disregard in subparagraph (A)(i) of any disallowance under paragraph (1), in the case of any loss which is carried forward under paragraph (2) from any taxable year, such loss (or any portion thereof) shall be taken into account for the first taxable year in which a deduction for such loss (or portion) is not disallowed by reason of this subsection, and

**(II)** the Secretary shall prescribe rules for the computation of the aggregate amounts described in such clause in cases where the filing status of the taxpayer is not the same for the taxable year and each of the taxable years in the period described in such clause.

**(C) Farming business.--**

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(i) In general.**--The term "farming business" has the meaning given such term in section 263A(e)(4).

**(ii) Certain trades and businesses included.**--If, without regard to this clause, a taxpayer is engaged in a farming business with respect to any agricultural or horticultural commodity--

**(I)** the term "farming business" shall include any trade or business of the taxpayer of the processing of such commodity (without regard to whether the processing is incidental to the growing, raising, or harvesting of such commodity), and

**(II)** if the taxpayer is a member of a cooperative to which subchapter T applies, any trade or business of the cooperative described in subclause (I) shall be treated as the trade or business of the taxpayer.

**(D) Certain losses disregarded.**--For purposes of subparagraph (A)(i), there shall not be taken into account any deduction for any loss arising by reason of fire, storm, or other casualty, or by reason of disease or drought, involving any farming business.

**(5) Application of subsection in case of partnerships and S corporations.**--In the case of a partnership or S corporation--

**(A)** this subsection shall be applied at the partner or shareholder level, and

**(B)** each partner's or shareholder's proportionate share of the items of income, gain, or deduction of the partnership or S corporation for any taxable year from farming businesses attributable to the partnership or S corporation, and of any applicable subsidies received by the partnership or S corporation during the taxable year, shall be taken into account by the partner or shareholder in applying this subsection to the taxable year of such partner or shareholder with or within which the taxable year of the partnership or S corporation ends.

The Secretary may provide rules for the application of this paragraph to any other pass-thru entity to the extent necessary to carry out the provisions of this subsection.

**(6) Additional reporting.**--The Secretary may prescribe such additional reporting requirements as the Secretary determines appropriate to carry out the purposes of this subsection.

**(7) Coordination with section 469.**--This subsection shall be applied before the application of section 469.

**(j)** [1] **Farming syndicate defined.--**

**(1) In general.**--For purposes of subsection (i)(4), the term "farming syndicate" means--

**(A)** a partnership or any other enterprise other than a corporation which is not an S corporation engaged in the trade or business of farming, if at any time interests in such partnership or enterprise have been offered for sale in any offering required to be registered with any Federal or State agency having authority to regulate the offering of securities for sale, or

**(B)** a partnership or any other enterprise other than a corporation which is not an S corporation engaged in the trade or business of farming, if more than 35 percent of the losses during any period are allocable to limited partners or limited entrepreneurs.

**(2) Holdings attributable to active management.**--For purposes of paragraph (1)(B), the following shall be treated as an interest which is not held by a limited partner or a limited entrepreneur:

**(A)** in the case of any individual who has actively participated (for a period of not less than 5 years) in the management of any trade or business of farming, any interest in a partnership or other enterprise which is attributable to such active participation,

**(B)** in the case of any individual whose principal residence is on a farm, any partnership or other enterprise engaged in the trade or business of farming such farm,

**(C)** in the case of any individual who is actively participating in the management of any trade or business of farming or who is an individual who is described in subparagraph (A) or

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

(B), any participation in the further processing of livestock which was raised in such trade or business (or in the trade or business referred to in subparagraph (A) or (B)),

**(D)** in the case of an individual whose principal business activity involves active participation in the management of a trade or business of farming, any interest in any other trade or business of farming, and

**(E)** any interest held by a member of the family (or a spouse of any such member) of a grandparent of an individual described in subparagraph (A), (B), (C), or (D) if the interest in the partnership or the enterprise is attributable to the active participation of the individual described in subparagraph (A), (B), (C), or (D).

For purposes of subparagraph (A), where one farm is substituted for or added to another farm, both farms shall be treated as one farm. For purposes of subparagraph (E), the term "family" has the meaning given to such term by section 267(c)(4).

**(3) Farming.**--For purposes of this subsection, the term "farming" has the meaning given to such term by section 464(e).

**(4) Limited entrepreneur.**--For purposes of this subsection, the term "limited entrepreneur" means a person who--

**(A)** has an interest in an enterprise other than as a limited partner, and

**(B)** does not actively participate in the management of such enterprise.

## CREDIT(S)

(Aug. 16, 1954, c. 736, 68A Stat. 157; Pub.L. 86-781, § 6(a), Sept. 14, 1960, 74 Stat. 1020; Pub.L. 87-876, § 3(a), Oct. 24, 1962, 76 Stat. 1199; Pub.L. 88-272, Title II, § 223(a)(1), Feb. 26, 1964, 78 Stat. 76; Pub.L. 94-455, Title II, § 208(a), Title XIX, §§ 1901(a)(69), 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1541, 1776, 1834; Pub.L. 98-369, Div. A, Title I, § 91(a), (e), July 18, 1984, 98 Stat. 598, 607; Pub.L. 99-514, Title VIII, §§ 801(b), 805(c)(5), 823(b)(1), Title XVIII, § 1807(a)(1), (2), Oct. 22, 1986, 100 Stat. 2347, 2362, 2374, 2811; Pub.L. 100-203, Title X, § 10201(b)(5), Dec. 22, 1987, 101 Stat. 1330-387; Pub.L. 100-647, Title I, §§ 1008(a)(3), 1018(u)

(5), Nov. 10, 1988, 102 Stat. 3436, 3590; Pub.L. 101-239, Title VII, § 7721(c)(10), Dec. 19, 1989, 103 Stat. 2400; Pub.L. 101-508, Title XI, § 11704(a)(5), Nov. 5, 1990, 104 Stat. 1388-518; Pub.L. 104-188, Title I, § 1704(t)(24), (78), Aug. 20, 1996, 110 Stat. 1888, 1891; Pub.L. 109-135, Title IV, § 412(aa), Dec. 21, 2005, 119 Stat. 2638; Pub.L. 110-234, Title XV, § 15351(a), May 22, 2008, 122 Stat. 1523; Pub.L. 110-246, § 4(a), Title XV, § 15351(a), June 18, 2008, 122 Stat. 1664, 2285; Pub.L. 113-295, Div. A, Title II, § 221(a)(58)(B), Dec. 19, 2014, 128 Stat. 4047.)

## Footnotes

1 So in original. Two subsecs. (j) have been enacted.

26 U.S.C.A. § 461, 26 USCA § 461
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 1. Normal Taxes and Surtaxes (Refs & Annos)
Subchapter K. Partners and Partnerships (Refs & Annos)
Part I. Determination of Tax Liability

26 U.S.C.A. § 701, I.R.C. § 701

§ 701. Partners, not partnership, subject to tax

Currentness

A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 239.)

26 U.S.C.A. § 701, 26 USCA § 701
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag
Enacted Legislation Amended by PL 119-21, July 4, 2025, 139 Stat 72,

KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 1. Normal Taxes and Surtaxes (Refs & Annos)
Subchapter K. Partners and Partnerships (Refs & Annos)
Part I. Determination of Tax Liability

26 U.S.C.A. § 702, I.R.C. § 702

§ 702. Income and credits of partner

Currentness

**(a) General rule.**--In determining his income tax, each partner shall take into account separately his distributive share of the partnership's--

**(1)** gains and losses from sales or exchanges of capital assets held for not more than 1 year,

**(2)** gains and losses from sales or exchanges of capital assets held for more than 1 year,

**(3)** gains and losses from sales or exchanges of property described in section 1231 (relating to certain property used in a trade or business and involuntary conversions),

**(4)** charitable contributions (as defined in section 170(c)),

**(5)** dividends with respect to which section 1(h)(11) or part VIII of subchapter B applies,

**(6)** taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States,

**(7)** other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary, and

**(8)** taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

**(b) Character of items constituting distributive share.**--The character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share under paragraphs (1) through (7) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.

**(c) Gross income of a partner.**--In any case where it is necessary to determine the gross income of a partner for purposes of this title, such amount shall include his distributive share of the gross income of the partnership.

**(d) Cross reference.**--

For rules relating to procedures for determining the tax treatment of partnership items see subchapter C of chapter 63 (section 6221 and following).

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 239; Pub.L. 88-272, Title II, § 201(d)(7), Feb. 26, 1964, 78 Stat. 32; Pub.L. 94-455, Title XIV, § 1402(b)(1)(L), (2), Title XIX, §§ 1901(b)(1)(I)(i), (ii), 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1732, 1791, 1834; Pub.L. 96-223, Title IV, § 404(b)(5), Apr. 2, 1980, 94 Stat. 307; Pub.L. 97-34, Title III, § 301(b)(5), (6)(C), Aug. 13, 1981, 95 Stat. 270; Pub.L. 97-248, Title IV, § 402(c)(1), Sept. 3, 1982, 96 Stat. 667; Pub.L. 97-448, Title I, § 103(a)(4), Jan. 12, 1983, 96 Stat. 2375; Pub.L. 98-369, Div. A, Title X, § 1001(b)(9), (e), July 18, 1984, 98 Stat. 1011, 1012; Pub.L. 99-514, Title VI, § 612(b)(5), Oct. 22, 1986, 100 Stat. 2250; Pub.L. 108-27, Title III, § 302(e)(8), May 28, 2003, 117 Stat. 764.)

26 U.S.C.A. § 702, 26 USCA § 702
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 1. Normal Taxes and Surtaxes (Refs & Annos)
Subchapter K. Partners and Partnerships (Refs & Annos)
Part I. Determination of Tax Liability

26 U.S.C.A. § 703, I.R.C. § 703

§ 703. Partnership computations

Currentness

**(a) Income and deductions.**--The taxable income of a partnership shall be computed in the same manner as in the case of an individual except that--

**(1)** the items described in section 702(a) shall be separately stated, and

**(2)** the following deductions shall not be allowed to the partnership:

**(A)** the deductions for personal exemptions provided in section 151,

**(B)** the deduction for taxes provided in section 164(a) with respect to taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States,

**(C)** the deduction for charitable contributions provided in section 170,

**(D)** the net operating loss deduction provided in section 172,

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(E)** the additional itemized deductions for individuals provided in part VII of subchapter B (sec. 211 and following), and

**(F)** the deduction for depletion under section 611 with respect to oil and gas wells.

**(b) Elections of the partnership.**--Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that any election under--

**(1)** subsection (b)(5) or (c)(3) of section 108 (relating to income from discharge of indebtedness),

**(2)** section 617 (relating to deduction and recapture of certain mining exploration expenditures), or

**(3)** section 901 (relating to taxes of foreign countries and possessions of the United States),

shall be made by each partner separately.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 240; Pub.L. 89-570, § 2(b), Sept. 12, 1966, 80 Stat. 764; Pub.L. 91-172, Title V, § 504(c)(3), Dec. 30, 1969, 83 Stat. 633; Pub.L. 92-178, Title III, § 304(c), Dec. 10, 1971, 85 Stat. 523; Pub.L. 94-12, Title V, § 501(b)(3), Mar. 29, 1975, 89 Stat. 53; Pub.L. 94-455, Title XIX, § 1901(b)(21)(F), Title XXI, § 2115(c)(2), Oct. 4, 1976, 90 Stat. 1798, 1909; Pub.L. 95-30, Title I, § 101(d)(10), May 23, 1977, 91 Stat. 134; Pub.L. 96-589, § 2(e)(1), Dec. 24, 1980, 94 Stat. 3396; Pub.L. 99-514, Title V, § 511(d)(2)(B), Title VII, § 701(e)(4)(E), Oct. 22, 1986, 100 Stat. 2249, 2343; Pub.L. 100-647, Title I, § 1008(i), Nov. 10, 1988, 102 Stat. 3445; Pub.L. 103-66, Title XIII, § 13150(c)(9), Aug. 10, 1993, 107 Stat. 448.)

26 U.S.C.A. § 703, 26 USCA § 703
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 1. Normal Taxes and Surtaxes (Refs & Annos)
Subchapter K. Partners and Partnerships (Refs & Annos)
Part I. Determination of Tax Liability

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 707, I.R.C. § 707

§ 707. Transactions between partner and partnership

**(a) Partner not acting in capacity as partner.--**

**(1) In general.--**If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

**(2) Treatment of payments to partners for property or services.--**Under regulations prescribed by the Secretary--

**(A) Treatment of certain services and transfers of property.--**If--

**(i)** a partner performs services for a partnership or transfers property to a partnership,

**(ii)** there is a related direct or indirect allocation and distribution to such partner, and

**(iii)** the performance of such services (or such transfer) and the allocation and distribution, when viewed together, are properly characterized as a transaction occurring between the partnership and a partner acting other than in his capacity as a member of the partnership,

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

such allocation and distribution shall be treated as a transaction described in paragraph (1).

**(B) Treatment of certain property transfers.**--If--

**(i)** there is a direct or indirect transfer of money or other property by a partner to a partnership,

**(ii)** there is a related direct or indirect transfer of money or other property by the partnership to such partner (or another partner), and

**(iii)** the transfers described in clauses (i) and (ii), when viewed together, are properly characterized as a sale or exchange of property,

such transfers shall be treated either as a transaction described in paragraph (1) or as a transaction between 2 or more partners acting other than in their capacity as members of the partnership.

**(b) Certain sales or exchanges of property with respect to controlled partnerships.--**

**(1) Losses disallowed.**--No deduction shall be allowed in respect of losses from sales or exchanges of property (other than an interest in the partnership), directly or indirectly, between--

**(A)** a partnership and a person owning, directly or indirectly, more than 50 percent of the capital interest, or the profits interest, in such partnership, or

**(B)** two partnerships in which the same persons own, directly or indirectly, more than 50 percent of the capital interests or profits interests.

In the case of a subsequent sale or exchange by a transferee described in this paragraph, section 267(d) shall be applicable as if the loss were disallowed under section 267(a)(1). For purposes of section 267(a)(2), partnerships described in subparagraph (B) of this paragraph shall be treated as persons specified in section 267(b).

**(2) Gains treated as ordinary income.**--In the case of a sale or exchange, directly or indirectly, of property, which in the hands of the transferee, is property other than a capital asset as defined in section 1221--

**(A)** between a partnership and a person owning, directly or indirectly, more than 50 percent of the capital interest, or profits interest, in such partnership, or

**(B)** between two partnerships in which the same persons own, directly or indirectly, more than 50 percent of the capital interests or profits interests,

any gain recognized shall be considered as ordinary income.

**(3) Ownership of a capital or profits interest.**--For purposes of paragraphs (1) and (2) of this subsection, the ownership of a capital or profits interest in a partnership shall be determined in accordance with the rules for constructive ownership of stock provided in section 267(c) other than paragraph (3) of such section.

**(c) Guaranteed payments.**--To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

## CREDIT(S)

(Aug. 16, 1954, c. 736, 68A Stat. 243; Pub.L. 94-455, Title II, § 213(b)(3), Title XIX, § 1901(b)(3)(C), Oct. 4, 1976, 90 Stat. 1547, 1792; Pub.L. 98-369, Div. A, Title I, § 73(a), July 18, 1984, 98 Stat. 591; Pub.L. 99-514, Title VI, § 642(a)(2), Title XVIII, §§ 1805(b), 1812(c)(3)(A), (B), Oct. 22, 1986, 100 Stat. 2284, 2810, 2834.)

26 U.S.C.A. § 707, 26 USCA § 707
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Unconstitutional or Preempted Negative Treatment Reconsidered by Florida ex rel. Atty. Gen. v. U.S. Dept. of Health and Human Services, 11th Cir.(Fla.), Aug. 12, 2011

KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 2. Tax on Self-Employment Income (Refs & Annos)

26 U.S.C.A. § 1401, I.R.C. § 1401

§ 1401. Rate of tax

Currentness

**(a) Old-age, survivors, and disability insurance.**--In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to 12.4 percent of the amount of the self-employment income for such taxable year.

**(b) Hospital insurance.**--

**(1) In general.**--In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to 2.9 percent of the amount of the self-employment income for such taxable year.

**(2) Additional tax.**--

**(A) In general.**--In addition to the tax imposed by paragraph (1) and the preceding subsection, there is hereby imposed on every taxpayer (other than a corporation, estate, or trust) for each taxable year beginning after December 31, 2012, a tax equal to 0.9 percent of the self-employment income for such taxable year which is in excess of--

**(i)** in the case of a joint return, $250,000,

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(ii)** in the case of a married taxpayer (as defined in section 7703) filing a separate return, ½ of the dollar amount determined under clause (i), and

**(iii)** in any other case, $200,000.

**(B) Coordination with FICA.**--The amounts under clause (i), (ii), or (iii) (whichever is applicable) of subparagraph (A) shall be reduced (but not below zero) by the amount of wages taken into account in determining the tax imposed under section 3121(b)(2) with respect to the taxpayer.

**(c) Relief from taxes in cases covered by certain international agreements.**--During any period in which there is in effect an agreement entered into pursuant to section 233 of the Social Security Act with any foreign country, the self-employment income of an individual shall be exempt from the taxes imposed by this section to the extent that such self-employment income is subject under such agreement exclusively to the laws applicable to the social security system of such foreign country.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 353; Sept. 1, 1954, c. 1206, Title II, § 208(a), 68 Stat. 1093; Aug. 1, 1956, c. 836, Title II, § 202(a), 70 Stat. 845; Pub.L. 85-840, Title IV, § 401(a), Aug. 28, 1958, 72 Stat. 1041; Pub.L. 87-64, Title II, § 201(a), June 30, 1961, 75 Stat. 140; Pub.L. 89-97, Title I, § 111(c)(4), Title III, § 321(a), July 30, 1965, 79 Stat. 342, 394; Pub.L. 90-248, Title I, § 109(a)(1), (b)(1), Jan. 2, 1968, 81 Stat. 835, 836; Pub.L. 92-336, Title II, § 204(a)(1), (b)(1), July 1, 1972, 86 Stat. 420, 421; Pub.L. 92-603, Title I, § 135(a)(1), (b)(1), Oct. 30, 1972, 86 Stat. 1362, 1363; Pub.L. 93-233, § 6(b)(1), Dec. 31, 1973, 87 Stat. 955; Pub.L. 94-455, Title XIX, § 1901(a)(154), Oct. 4, 1976, 90 Stat. 1789; Pub.L. 95-216, Title I, § 101(a)(3), (b)(3), Title III, § 317(b)(1), Dec. 20, 1977, 91 Stat. 1511, 1512, 1539; Pub.L. 98-21, Title I, § 124(a), (b), Apr. 20, 1983, 97 Stat. 89; Pub.L. 101-508, Title XI, § 11801(a)(36), (c)(16), Nov. 5, 1990, 104 Stat. 1388-521, 1388-527; Pub.L. 108-203, Title IV, § 415, Mar. 2, 2004, 118 Stat. 530; Pub.L. 111-148, Title IX, § 9015(b)(1), Title X, § 10906(b), Mar. 23, 2010, 124 Stat. 871, 1020; Pub.L. 111-152, Title I, § 1402(b)(1)(B), Mar. 30, 2010, 124 Stat. 1063; Pub.L. 113-295, Div. A, Title II, § 221(a)(89), (90), Dec. 19, 2014, 128 Stat. 4050.)

26 U.S.C.A. § 1401, 26 USCA § 1401

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle A. Income Taxes (Refs & Annos)
Chapter 2. Tax on Self-Employment Income (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 1402, I.R.C. § 1402

§ 1402. Definitions

**(a) Net earnings from self-employment.**--The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary income or loss--

**(1)** there shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares, and including payments under section 1233(2) of the Food Security Act of 1985 (16 U.S.C. 3833(2))[1] to individuals receiving benefits under section 202 or 223 of the Social Security Act) together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) with respect to any such agricultural or horticultural commodity;

**(2)** there shall be excluded dividends on any share of stock, and interest on any bond, debenture, note, or certificate, or other evidence of indebtedness, issued with interest coupons or in registered form by any corporation (including one issued by a government or political subdivision thereof), unless such dividends and interest are received in the course of a trade or business as a dealer in stocks or securities;

**(3)** there shall be excluded any gain or loss--

**(A)** which is considered as gain or loss from the sale or exchange of a capital asset,

**(B)** from the cutting of timber, or the disposal of timber, coal, or iron ore, if section 631 applies to such gain or loss, or

**(C)** from the sale, exchange, involuntary conversion, or other disposition of property if such property is neither--

**(i)** stock in trade or other property of a kind which would properly be includible in inventory if on hand at the close of the taxable year, nor

**(ii)** property held primarily for sale to customers in the ordinary course of the trade or business;

**(4)** the deduction for net operating losses provided in section 172 shall not be allowed;

**(5)** if--

**(A)** any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the spouse carrying on such trade or business or, if such trade or business is jointly operated, treated as the gross income and deductions of each spouse on the basis of their respective distributive share of the gross income and deductions; and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(B)** any portion of a partner's distributive share of the ordinary income or loss from a trade or business carried on by a partnership is community income or loss under the community property laws applicable to such share, all of such distributive share shall be included in computing the net earnings from self-employment of such partner, and no part of such share shall be taken into account in computing the net earnings from self-employment of the spouse of such partner;

**(6)** a resident of Puerto Rico shall compute his net earnings from self-employment in the same manner as a citizen of the United States but without regard to section 933;

**(7)** the deduction for personal exemptions provided in section 151 shall not be allowed;

**(8)** an individual who is a duly ordained, commissioned, or licensed minister of a church or a member of a religious order shall compute his net earnings from self-employment derived from the performance of service described in subsection (c)(4) without regard to section 107 (relating to rental value of parsonages), section 119 (relating to meals and lodging furnished for the convenience of the employer), and section 911 (relating to citizens or residents of the United States living abroad), but shall not include in such net earnings from self-employment the rental value of any parsonage or any parsonage allowance (whether or not excludable under section 107) provided after the individual retires, or any other retirement benefit received by such individual from a church plan (as defined in section 414(e)) after the individual retires;

**(9)** the exclusion from gross income provided by section 931 shall not apply;

**(10)** there shall be excluded amounts received by a partner pursuant to a written plan of the partnership, which meets such requirements as are prescribed by the Secretary, and which provides for payments on account of retirement, on a periodic basis, to partners generally or to a class or classes of partners, such payments to continue at least until such partner's death, if--

**(A)** such partner rendered no services with respect to any trade or business carried on by such partnership (or its successors) during the taxable year of such partnership (or its successors), ending within or with his taxable year, in which such amounts were received, and

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(B)** no obligation exists (as of the close of the partnership's taxable year referred to in subparagraph (A)) from the other partners to such partner except with respect to retirement payments under such plan, and

**(C)** such partner's share, if any, of the capital of the partnership has been paid to him in full before the close of the partnership's taxable year referred to in subparagraph (A);

**(11)** the exclusion from gross income provided by section 911(a)(1) shall not apply;

**(12)** in lieu of the deduction provided by section 164(f) (relating to deduction for one-half of self-employment taxes), there shall be allowed a deduction equal to the product of--

**(A)** the taxpayer's net earnings from self-employment for the taxable year (determined without regard to this paragraph), and

**(B)** one-half of the sum of the rates imposed by subsections (a) and (b) of section 1401 for such year (determined without regard to the rate imposed under paragraph (2) of section 1401(b));

**(13)** there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services;

**(14)** in the case of church employee income, the special rules of subsection (j)(1) shall apply;

**(15)** in the case of a member of an Indian tribe, the special rules of section 7873 (relating to income derived by Indians from exercise of fishing rights) shall apply;

**(16)** the deduction provided by section 199 shall not be allowed; and

**(17)** notwithstanding the preceding provisions of this subsection, each spouse's share of income or loss from a qualified joint venture shall be taken into account as provided in section 761(f) in determining net earnings from self-employment of such spouse.

If the taxable year of a partner is different from that of the partnership, the distributive share which he is required to include in computing his net earnings from self-employment shall be based on the ordinary income or loss of the partnership for any taxable year of the partnership ending within or with his taxable year. In the case of any trade or business which is carried on by an individual or by a partnership and in which, if such trade or business were carried on exclusively by employees, the major portion of the services would constitute agricultural labor as defined in section 3121(g)--

**(i)** in the case of an individual, if the gross income derived by him from such trade or business is not more than the upper limit, the net earnings from self-employment derived by him from such trade or business may, at his option, be deemed to be 66 $^{2}/_{3}$ percent of such gross income; or

**(ii)** in the case of an individual, if the gross income derived by him from such trade or business is more than the upper limit and the net earnings from self-employment derived by him from such trade or business (computed under this subsection without regard to this sentence) are less than the lower limit, the net earnings from self-employment derived by him from such trade or business may, at his option, be deemed to be the lower limit; and

**(iii)** in the case of a member of a partnership, if his distributive share of the gross income of the partnership derived from such trade or business (after such gross income has been reduced by the sum of all payments to which section 707(c) applies) is not more than the upper limit, his distributive share of income described in section 702(a)(8) derived from such trade or business may, at his option, be deemed to be an amount equal to 66 $^{2}/_{3}$ percent of his distributive share of such gross income (after such gross income has been so reduced); or

**(iv)** in the case of a member of a partnership, if his distributive share of the gross income of the partnership derived from such trade or business (after such gross income has been reduced by the sum of all payments to which section 707(c) applies) is more than the upper limit and his distributive share (whether or not distributed) of income described in section 702(a)(8) derived from such trade or business (computed under this subsection without regard to this sentence) is less than the lower limit, his distributive share of income described in section 702(a)(8) derived from such trade or business may, at his option, be deemed to be the lower limit.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

For purposes of the preceding sentence, gross income means--

**(v)** in the case of any such trade or business in which the income is computed under a cash receipts and disbursements method, the gross receipts from such trade or business reduced by the cost or other basis of property which was purchased and sold in carrying on such trade or business, adjusted (after such reduction) in accordance with the provisions of paragraphs (1) through (7) and paragraph (9) of this subsection; and

**(vi)** in the case of any such trade or business in which the income is computed under an accrual method, the gross income from such trade or business, adjusted in accordance with the provisions of paragraphs (1) through (7) and paragraph (9) of this subsection;

and, for purposes of such sentence, if an individual (including a member of a partnership) derives gross income from more than one such trade or business, such gross income (including his distributive share of the gross income of any partnership derived from any such trade or business) shall be deemed to have been derived from one trade or business.

The preceding sentence and clauses (i) through (iv) of the second preceding sentence shall also apply in the case of any trade or business (other than a trade or business specified in such second preceding sentence) which is carried on by an individual who is self-employed on a regular basis as defined in subsection (h), or by a partnership of which an individual is a member on a regular basis as defined in subsection (h), but only if such individual's net earnings from self-employment as determined without regard to this sentence in the taxable year are less than the lower limit and less than 66 $^{2}/_{3}$ percent of the sum (in such taxable year) of such individual's gross income derived from all trades or businesses carried on by him and his distributive share of the income or loss from all trades or businesses carried on by all the partnerships of which he is a member; except that this sentence shall not apply to more than 5 taxable years in the case of any individual, and in no case in which an individual elects to determine the amount of his net earnings from self-employment for a taxable year under the provisions of the two preceding sentences with respect to a trade or business to which the second preceding sentence applies and with respect to a trade or business to which this sentence applies shall such net earnings for such year exceed the lower limit.

**(b) Self-employment income.**--The term “self-employment income” means the net earnings from self-employment derived by an individual (other than a nonresident alien individual, except as provided by an agreement under section 233 of the Social Security Act) during any taxable year; except that such term shall not include--

**(1)** in the case of the tax imposed by section 1401(a), that part of the net earnings from self-employment which is in excess of (i) an amount equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) which is effective for the calendar year in which such taxable year begins, minus (ii) the amount of the wages paid to such individual during such taxable years; or

**(2)** the net earnings from self-employment, if such net earnings for the taxable year are less than $400.

For purposes of paragraph (1), the term "wages" (A) includes such remuneration paid to an employee for services included under an agreement entered into pursuant to the provisions of section 3121(l) (relating to coverage of citizens of the United States who are employees of foreign affiliates of American employers), as would be wages under section 3121(a) if such services constituted employment under section 3121(b), and (B) includes compensation which is subject to the tax imposed by section 3201 or 3211, .[2] An individual who is not a citizen of the United States but who is a resident of the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa shall not, for purposes of this chapter be considered to be a nonresident alien individual. In the case of church employee income, the special rules of subsection (j)(2) shall apply for purposes of paragraph (2).

**(c) Trade or business.**--The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses), except that such term shall not include--

**(1)** the performance of the functions of a public office, other than the functions of a public office of a State or a political subdivision thereof with respect to fees received in any period in which the functions are performed in a position compensated solely on a fee basis and in which such functions are not covered under an agreement entered into by such State and the Commissioner of Social Security pursuant to section 218 of the Social Security Act;

**(2)** the performance of service by an individual as an employee, other than--

**(A)** service described in section 3121(b)(14)(B) performed by an individual who has attained the age of 18,

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(B)** service described in section 3121(b)(16),

**(C)** service described in section 3121(b)(11), (12), or (15) performed in the United States (as defined in section 3121(e)(2)) by a citizen of the United States, except service which constitutes "employment" under section 3121(y),

**(D)** service described in paragraph (4) of this subsection,

**(E)** service performed by an individual as an employee of a State or a political subdivision thereof in a position compensated solely on a fee basis with respect to fees received in any period in which such service is not covered under an agreement entered into by such State and the Commissioner of Social Security pursuant to section 218 of the Social Security Act,

**(F)** service described in section 3121(b)(20), and

**(G)** service described in section 3121(b)(8)(B);

**(3)** the performance of service by an individual as an employee or employee representative as defined in section 3231;

**(4)** the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

**(5)** the performance of service by an individual in the exercise of his profession as a Christian Science practitioner; or

**(6)** the performance of service by an individual during the period for which an exemption under subsection (g) is effective with respect to him.

The provisions of paragraph (4) or (5) shall not apply to service (other than service performed by a member of a religious order who has taken a vow of poverty as a member of such order) performed by an individual unless an exemption under subsection (e) is effective with respect to him.

**(d) Employee and wages.**--The term "employee" and the term "wages" shall have the same meaning as when used in chapter 21 (sec. 3101 and following, relating to Federal Insurance Contributions Act).

**(e) Ministers, members of religious orders, and Christian Science practitioners.**--

**(1) Exemption.**--Subject to paragraph (2), any individual who is (A) a duly ordained, commissioned, or licensed minister of a church or a member of a religious order (other than a member of a religious order who has taken a vow of poverty as a member of such order) or (B) a Christian Science practitioner, upon filing an application (in such form and manner, and with such official, as may be prescribed by regulations made under this chapter) together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act) and, in the case of an individual described in subparagraph (A), that he has informed the ordaining, commissioning, or licensing body of the church or order that he is opposed to such insurance, shall receive an exemption from the tax imposed by this chapter with respect to services performed by him as such minister, member, or practitioner. Notwithstanding the preceding sentence, an exemption may not be granted to an individual under this subsection if he had filed an effective waiver certificate under this section as it was in effect before its amendment in 1967.

**(2) Verification of application.**--The Secretary may approve an application for an exemption filed pursuant to paragraph (1) only if the Secretary has verified that the individual applying for the exemption is aware of the grounds on which the individual may receive an exemption pursuant to this subsection and that the individual seeks exemption on such grounds. The Secretary (or the Commissioner of Social Security under an agreement with the Secretary) shall make such verification by such means as prescribed in regulations.

**(3) Time for filing application.**--Any individual who desires to file an application pursuant to paragraph (1) must file such application on or before the due date of the return (including any extension thereof) for the second taxable year for which he has net earnings from self-employment (computed without regard to subsections (c)(4) and (c)(5)) of $400 or more, any

part of which was derived from the performance of service described in subsection (c)(4) or (c)(5).

**(4) Effective date of exemption.**--An exemption received by an individual pursuant to this subsection shall be effective for the first taxable year for which he has net earnings from self-employment (computed without regard to subsections (c)(4) and (c)(5)) of $400 or more, any part of which was derived from the performance of service described in subsection (c)(4) or (c)(5), and for all succeeding taxable years. An exemption received pursuant to this subsection shall be irrevocable.

**(f) Partner's taxable year ending as the result of death.**--In computing a partner's net earnings from self-employment for his taxable year which ends as a result of his death (but only if such taxable year ends within, and not with, the taxable year of the partnership), there shall be included so much of the deceased partner's distributive share of the partnership's ordinary income or loss for the partnership taxable year as is not attributable to an interest in the partnership during any period beginning on or after the first day of the first calendar month following the month in which such partner died. For purposes of this subsection--

**(1)** in determining the portion of the distributive share which is attributable to any period specified in the preceding sentence, the ordinary income or loss of the partnership shall be treated as having been realized or sustained ratably over the partnership taxable year; and

**(2)** the term “deceased partner's distributive share” includes the share of his estate or of any other person succeeding, by reason of his death, to rights with respect to his partnership interest.

**(g) Members of certain religious faiths.--**

**(1) Exemption.**--Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by--

**(A)** such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and

**(B)** his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,

and only if the Commissioner of Social Security finds that--

**(C)** such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

**(D)** it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and

**(E)** such sect or division thereof has been in existence at all times since December 31, 1950.

An exemption may not be granted to any individual if any benefit or other payment referred to in subparagraph (B) became payable (or, but for section 203 or 222(b) of the Social Security Act, would have become payable) at or before the time of the filing of such waiver.

**(2) Period for which exemption effective.**--An exemption granted to any individual pursuant to this subsection shall apply with respect to all taxable years beginning after December 31, 1950, except that such exemption shall not apply for any taxable year--

**(A)** beginning (i) before the taxable year in which such individual first met the requirements of the first sentence of paragraph (1), or (ii) before the time as of which the Commissioner of Social Security finds that the sect or division thereof of which such individual is a member met the requirements of subparagraphs (C) and (D), or

**(B)** ending (i) after the time such individual ceases to meet the requirements of the first sentence of paragraph (1), or (ii) after the time as of which the Commissioner of Social Security finds that the sect or division thereof of which he is a member ceases to meet the requirements of subparagraph (C) or (D).

**(3) Subsection to apply to certain church employees.**--This subsection shall apply with respect to services which are described in subparagraph (B) of section 3121(b)(8) (and are not described in subparagraph (A) of such section).

**(h) Regular basis.**--An individual shall be deemed to be self-employed on a regular basis in a taxable year, or to be a member of a partnership on a regular basis in such year, if he had net earnings from self-employment, as defined in the first sentence of subsection (a), of not less than $400 in at least two of the three consecutive taxable years immediately preceding such taxable year from trades or businesses carried on by such individual or such partnership.

**(i) Special rules for options and commodities dealers.--**

**(1) In general.**--Notwithstanding subsection (a)(3)(A), in determining the net earnings from self-employment of any options dealer or commodities dealer, there shall not be excluded any gain or loss (in the normal course of the taxpayer's activity of dealing in or trading section 1256 contracts) from section 1256 contracts or property related to such contracts.

**(2) Definitions.**--For purposes of this subsection--

**(A) Options dealer.**--The term “options dealer” has the meaning given such term by section 1256(g)(8).

**(B) Commodities dealer.**--The term “commodities dealer” means a person who is actively engaged in trading section 1256 contracts and is registered with a domestic board of trade which is designated as a contract market by the Commodities Futures Trading Commission.

**(C) Section 1256 contracts.**--The term “section 1256 contract” has the meaning given to such term by section 1256(b).

**(j) Special rules for certain church employee income.--**

**(1) Computation of net earnings.**--In applying subsection (a)--

**(A)** church employee income shall not be reduced by any deduction;

**(B)** church employee income and deductions attributable to such income shall not be taken into account in determining the amount of other net earnings from self-employment.

**(2) Computation of self-employment income.--**

**(A) Separate application of subsection (b)(2).**--Paragraph (2) of subsection (b) shall be applied separately--

**(i)** to church employee income, and

**(ii)** to other net earnings from self-employment.

**(B) $100 floor.**--In applying paragraph (2) of subsection (b) to church employee income, "$100" shall be substituted for "$400".

**(3) Coordination with subsection (a)(12).**--Paragraph (1) shall not apply to any amount allowable as a deduction under subsection (a)(12), and paragraph (1) shall be applied before determining the amount so allowable.

**(4) Church employee income defined.**--For purposes of this section, the term "church employee income" means gross income for services which are described in section 3121(b)(8)(B) (and are not described in section 3121(b)(8)(A)).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(k) Codification of treatment of certain termination payments received by former insurance salesmen.**--Nothing in subsection (a) shall be construed as including in the net earnings from self-employment of an individual any amount received during the taxable year from an insurance company on account of services performed by such individual as an insurance salesman for such company if--

**(1)** such amount is received after termination of such individual's agreement to perform such services for such company,

**(2)** such individual performs no services for such company after such termination and before the close of such taxable year,

**(3)** such individual enters into a covenant not to compete against such company which applies to at least the 1-year period beginning on the date of such termination, and

**(4)** the amount of such payment--

**(A)** depends primarily on policies sold by or credited to the account of such individual during the last year of such agreement or the extent to which such policies remain in force for some period after such termination, or both, and

**(B)** does not depend to any extent on length of service or overall earnings from services performed for such company (without regard to whether eligibility for payment depends on length of service).

**(l) Upper and lower limits.**--For purposes of subsection (a)--

**(1) Lower limit.**--The lower limit for any taxable year is the sum of the amounts required under section 213(d) of the Social Security Act for a quarter of coverage in effect with respect to each calendar quarter ending with or within such taxable year.

**(2) Upper limit.**--The upper limit for any taxable year is the amount equal to 150 percent of the lower limit for such taxable year.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 353; Sept. 1, 1954, c. 1206, Title II, § 201(a) to (c), 68 Stat. 1087; Aug. 1, 1956, c. 836, Title II, § 201(e)(2), (3), (f), (g), (i), 70 Stat. 840 to 842; Pub.L. 85-239, §§ 1(a), (b), 2, 5(b), Aug. 30, 1957, 71 Stat. 521, 523; Pub.L. 85-840, Title IV, §§ 402(a), 403(a), Aug. 28, 1958, 72 Stat. 1042, 1043; Pub.L. 86-778, Title I, §§ 101(a) to (c), 103(k), (l), 105(c)(1), 106(b), Sept. 13, 1960, 74 Stat. 926, 927, 938, 944, 945; Pub.L. 87-64, Title II, § 202(a), June 30, 1961, 75 Stat. 141; Pub.L. 88-272, Title II, § 227(b)(6), Feb. 26, 1964, 78 Stat. 98; Pub.L. 88-650, § 2(a), (b), Oct. 13, 1964, 78 Stat. 1076, 1077; Pub.L. 89-97, Title III, §§ 311(b)(1) to (3), 312(b), 319(a), (c), 320(b)(1), 331(a), 341(a), (b), July 30, 1965, 79 Stat. 381, 390, 391, 393, 401, 411; Pub.L. 89-368, Title I, § 102(c), Mar. 15, 1966, 80 Stat. 64; Pub.L. 90-248, Title I, §§ 108(b)(1), 115(b), 118(a), 122(b), Title V, §§ 501(a), 502(b)(1), Jan. 2, 1968, 81 Stat. 835, 839, 841, 843, 933, 934; Pub.L. 92-5, Title II, § 203(b)(1), Mar. 17, 1971, 85 Stat. 10; Pub.L. 92-336, Title II, § 203(b)(1), July 1, 1972, 86 Stat. 418; Pub.L. 92-603, Title I, §§ 121(b), 124(b), 140(b), Oct. 30, 1972, 86 Stat. 1353, 1357, 1366; Pub.L. 93-66, Title II, § 203(b)(1), July 9, 1973, 87 Stat. 153; Pub.L. 93-233, § 5(b)(1), Dec. 31, 1973, 87 Stat. 954; Pub.L. 93-368, § 10(b), Aug. 7, 1974, 88 Stat. 422; Pub.L. 94-92, Title II, § 203(a), Aug. 9, 1975, 89 Stat. 465; Pub.L. 94-455, Title XII, § 1207(e)(1)(B), Title XIX, §§ 1901(a)(155), (b)(1)(I)(iii), (X), 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1707, 1789, 1791, 1792, 1834; Pub.L. 95-216, Title III, § 313(b), Dec. 20, 1977, 91 Stat. 1536; Pub.L. 95-600, Title VII, § 703(j)(8), Nov. 6, 1978, 92 Stat. 2941; Pub.L. 95-615, Title II, § 202(g)(5), formerly § 202(f)(5), Nov. 8, 1978, 92 Stat. 3100, renumbered § 202(g)(5) Pub.L. 96-222, Title I, § 108(a)(1)(A), Apr. 1, 1980, 94 Stat. 223; Pub.L. 97-34, Title I, § 111(b)(3), (5), Aug. 13, 1981, 95 Stat. 194; Pub.L. 97-248, Title II, § 278(a)(2), Sept. 3, 1982, 96 Stat. 559; Pub.L. 98-21, Title I, § 124(c)(2), Title III, §§ 321(e)(3), 322(b)(2), 323(b)(1), Apr. 20, 1983, 97 Stat. 91, 120, 121; Pub.L. 98-369, Title I, § 102(c)(1), Title VI, §§ 2603(c)(2), (d)(2), 2663(j)(5)(B), July 18, 1984, 98 Stat. 622, 1129, 1130, 1171; Pub.L. 99-272, Title XIII, § 13205(a)(2)(B), Apr. 7, 1986, 100 Stat. 315; Pub.L. 99-509, Title IX, § 9002(b)(1)(B), Oct. 21, 1986, 100 Stat. 1971; Pub.L. 99-514, Title III, § 301(b)(12), Title XII, § 1272(d)(8), (9), Title XVII, § 1704(a)(1), (2), Title XVIII, §§ 1882(a), (b)(1), 1883(a)(11)(A), Oct. 22, 1986, 100 Stat. 2218, 2594, 2779, 2914, 2915, 2916; Pub.L. 100-203, Title IX, § 9022(b), Dec. 22, 1987, 101 Stat. 1330-295; Pub.L. 100-647, Title III, § 3043(c)(1), Title VIII, § 8007(c), Nov. 10, 1988, 102 Stat. 3642, 3783; Pub.L. 101-239, Title X, § 10204(a)(1), Dec. 19, 1989, 103 Stat. 2474; Pub.L. 101-508, Title V, §§ 5123(a)(3), 5130(a)(2), Title XI, § 11331(b), Nov. 5, 1990, 104 Stat. 1388-284, 1388-289, 1388-467; Pub.L. 103-66, Title XIII, § 13207(b), Aug. 10, 1993, 107 Stat. 468; Pub.L. 103-296, Title I, § 108(h)(1), Title III, § 319(a)(4), Aug. 15, 1994, 108 Stat. 1487, 1534; Pub.L. 104-188, Title I, § 1456(a), Aug. 20, 1996, 110 Stat. 1818; Pub.L. 105-34, Title IX, § 922(a), Aug. 5, 1997, 111 Stat. 879; Pub.L. 108-203, Title IV, § 425(b), Mar. 2, 2004, 118 Stat. 536; Pub.L. 108-357, Title I, § 102(d)(7), Oct. 22, 2004, 118 Stat. 1429; Pub.L. 110-28, Title VIII, § 8215(b)(1), May 25, 2007, 121 Stat. 193; Pub.L. 110-234, Title XV, §§ 15301(a), 15352(a), May 22, 2008, 122 Stat. 1501, 1525; Pub.L. 110-246, § 4(a),

Title XV, §§ 15301(a), 15352(a), June 18, 2008, 122 Stat. 1664, 2263, 2287; Pub.L. 111-148, Title IX, § 9015(b)(2)(B), Mar. 23, 2010, 124 Stat. 871; Pub.L. 113-295, Div. A, Title II, § 221(a)(91), Dec. 19, 2014, 128 Stat. 4050.)

## Footnotes

1 See now 16 U.S.C.A. § 3833(a)(2). See References in Text note set out under this section.

2 So in original.

26 U.S.C.A. § 1402, 26 USCA § 1402
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 61. Information and Returns
Subchapter A. Returns and Records (Refs & Annos)
Part III. Information Returns (Refs & Annos)
Subpart A. Information Concerning Persons Subject to Special Provisions (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 6031, I.R.C. § 6031

§ 6031. Return of partnership income

**(a) General rule.**--Every partnership (as defined in section 761(a)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, and such other information for the purpose of carrying out the provisions of subtitle A as the Secretary may by forms and regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual.

**(b) Copies to partners.**--Each partnership required to file a return under subsection (a) for any partnership taxable year shall (on or before the day on which the return for such taxable year was required to be filed) furnish to each person who is a partner or who holds an interest in such partnership as a nominee for another person at any time during such taxable year a copy of such information required to be shown on such return as may be required by regulations. In the case of an electing large partnership (as defined in section 775), such information shall be furnished on or before the first March 15 following the close of such taxable year.

**(c) Nominee reporting.**--Any person who holds an interest in a partnership as a nominee for another person--

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(1)** shall furnish to the partnership, in the manner prescribed by the Secretary, the name and address of such other person, and any other information for such taxable year as the Secretary may by form and regulation prescribe, and

**(2)** shall furnish in the manner prescribed by the Secretary such other person the information provided by such partnership under subsection (b).

**(d) Separate statement of items of unrelated business taxable income.**--In the case of any partnership regularly carrying on a trade or business (within the meaning of section 512(c)(1)), the information required under subsection (b) to be furnished to its partners shall include such information as is necessary to enable each partner to compute its distributive share of partnership income or loss from such trade or business in accordance with section 512(a)(1), but without regard to the modifications described in paragraphs (8) through (15) of section 512(b).

**(e) Foreign partnerships.**--

**(1) Exception for foreign partnership.**--Except as provided in paragraph (2), the preceding provisions of this section shall not apply to a foreign partnership.

**(2) Certain foreign partnerships required to file return.**--Except as provided in regulations prescribed by the Secretary, this section shall apply to a foreign partnership for any taxable year if for such year, such partnership has--

**(A)** gross income derived from sources within the United States, or

**(B)** gross income which is effectively connected with the conduct of a trade or business within the United States.

The Secretary may provide simplified filing procedures for foreign partnerships to which this section applies.

**(f) Electing investment partnerships.**--In the case of any electing investment partnership (as defined in section 743(e)(6)), the information required under subsection (b) to be furnished to any

partner to whom section 743(e)(2) applies shall include such information as is necessary to enable the partner to compute the amount of losses disallowed under section 743(e).

## CREDIT(S)

(Aug. 16, 1954, c. 736, 68A Stat. 741; Pub.L. 94-455, Title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub.L. 97-248, Title IV, § 403, Sept. 3, 1982, 96 Stat. 669; Pub.L. 99-514, Title XV, § 1501(c)(16), Title XVIII, § 1811(b)(1)(A), Oct. 22, 1986, 100 Stat. 2740, 2832; Pub.L 100-647, Title V, § 5074(a), Nov. 10, 1988, 102 Stat. 3682; Pub.L. 105-34, Title XI, § 1141(a), Title XII, § 1223(a), Aug. 5, 1997, 111 Stat. 980, 1019; Pub.L. 108-357, Title VIII, § 833(b)(4)(B), Oct. 22, 2004, 118 Stat. 1590.)

26 U.S.C.A. § 6031, 26 USCA § 6031
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 63. Assessment
Subchapter C. Tax Treatment of Partnership Items (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 6221, I.R.C. § 6221

§ 6221. Tax treatment determined at partnership level

Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

**CREDIT(S)**

(Added Pub.L. 97-248, Title IV, § 402(a), Sept. 3, 1982, 96 Stat. 648; amended Pub.L. 105-34, Title XII, § 1238(a), Aug. 5, 1997, 111 Stat. 1026.)

26 U.S.C.A. § 6221, 26 USCA § 6221
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 63. Assessment
Subchapter C. Tax Treatment of Partnership Items (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 6223, I.R.C. § 6223

§ 6223. Notice to partners of proceedings

**(a) Secretary must give partners notice of beginning and completion of administrative proceedings.**--The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of--

**(1)** the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

**(2)** the final partnership administrative adjustment resulting from any such proceeding.

A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

**(b) Special rules for partnership with more than 100 partners.**--

**(1) Partner with less than 1 percent interest.**--Except as provided in paragraph (2), subsection (a) shall not apply to a partner if--

**(A)** the partnership has more than 100 partners, and

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(B)** the partner has a less than 1 percent interest in the profits of the partnership.

**(2) Secretary must give notice to notice group.**--If a group of partners in the aggregate having a 5 percent or more interest in the profits of a partnership so request and designate one of their members to receive the notice, the member so designated shall be treated as a partner to whom subsection (a) applies.

**(c) Information base for Secretary's notices, etc.**--For purposes of this subchapter--

**(1) Information on partnership return.**--Except as provided in paragraphs (2) and (3), the Secretary shall use the names, addresses, and profits interests shown on the partnership return.

**(2) Use of additional information.**--The Secretary shall use additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary.

**(3) Special rule with respect to indirect partners.**--If any information furnished to the Secretary under paragraph (1) or (2)--

**(A)** shows that a person has a profits interest in the partnership by reason of ownership of an interest through 1 or more pass-thru partners, and

**(B)** contains the name, address, and profits interest of such person,

then the Secretary shall use the name, address, and profits interest of such person with respect to such partnership interest (in lieu of the names, addresses, and profits interests of the pass-thru partners).

**(d) Period for mailing notice.**--

**(1) Notice of beginning of proceedings.**--The Secretary shall mail the notice specified in paragraph (1) of subsection (a) to each partner entitled to such notice not later than the 120th

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

day before the day on which the notice specified in paragraph (2) of subsection (a) is mailed to the tax matters partner.

**(2) Notice of final partnership administrative adjustment.**--The Secretary shall mail the notice specified in paragraph (2) of subsection (a) to each partner entitled to such notice not later than the 60th day after the day on which the notice specified in such paragraph (2) was mailed to the tax matters partner.

**(e) Effect of Secretary's failure to provide notice.--**

**(1) Application of subsection.--**

**(A) In general.**--This subsection applies where the Secretary has failed to mail any notice specified in subsection (a) to a partner entitled to such notice within the period specified in subsection (d).

**(B) Special rules for partnerships with more than 100 partners.**--For purposes of subparagraph (A), any partner described in paragraph (1) of subsection (b) shall be treated as entitled to notice specified in subsection (a). The Secretary may provide such notice--

**(i)** except as provided in clause (ii), by mailing notice to the tax matters partner, or

**(ii)** in the case of a member of a notice group which qualifies under paragraph (2) of subsection (b), by mailing notice to the partner designated for such purpose by the group.

**(2) Proceedings finished.**--In any case to which this subsection applies, if at the time the Secretary mails the partner notice of the proceeding--

**(A)** the period within which a petition for review of a final partnership administrative adjustment under section 6226 may be filed has expired and no such petition has been filed, or

**(B)** the decision of a court in an action begun by such a petition has become final,

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

the partner may elect to have such adjustment, such decision, or a settlement agreement described in paragraph (2) of section 6224(c) with respect to the partnership taxable year to which the adjustment relates apply to such partner. If the partner does not make an election under the preceding sentence, the partnership items of the partner for the partnership taxable year to which the proceeding relates shall be treated as nonpartnership items.

**(3) Proceedings still going on.--**In any case to which this subsection applies, if paragraph (2) does not apply, the partner shall be a party to the proceeding unless such partner elects--

**(A)** to have a settlement agreement described in paragraph (2) of section 6224(c) with respect to the partnership taxable year to which the proceeding relates apply to the partner, or

**(B)** to have the partnership items of the partner for the partnership taxable year to which the proceeding relates treated as nonpartnership items.

**(f) Only one notice of final partnership administrative adjustment.**--If the Secretary mails a notice of final partnership administrative adjustment for a partnership taxable year with respect to a partner, the Secretary may not mail another such notice to such partner with respect to the same taxable year of the same partnership in the absence of a showing of fraud, malfeasance, or misrepresentation of a material fact.

**(g) Tax matters partner must keep partners informed of proceedings.**--To the extent and in the manner provided by regulations, the tax matters partner of a partnership shall keep each partner informed of all administrative and judicial proceedings for the adjustment at the partnership level of partnership items.

**(h) Pass-thru partner required to forward notice.--**

**(1) In general.**--If a pass-thru partner receives a notice with respect to a partnership proceeding from the Secretary, the tax matters partner, or another pass-thru partner, the pass-thru partner shall, within 30 days of receiving that notice, forward a copy of that notice to the person or persons holding an interest (through the pass-thru partner) in the profits or losses of the partnership for the partnership taxable year to which the notice relates.

**(2) Partnership as pass-thru partner.--**In the case of a pass-thru partner which is a partnership, the tax matters partner of such partnership shall be responsible for forwarding copies of the notice to the partners of such partnership.

**CREDIT(S)**

(Added Pub.L. 97-248, Title IV, § 402(a), Sept. 3, 1982, 96 Stat. 649.)

26 U.S.C.A. § 6223, 26 USCA § 6223
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 63. Assessment
Subchapter C. Tax Treatment of Partnership Items (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 6226, I.R.C. § 6226

§ 6226. Judicial review of final partnership administrative adjustments

**(a) Petition by tax matters partner.**--Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with--

**(1)** the Tax Court,

**(2)** the district court of the United States for the district in which the partnership's principal place of business is located, or

**(3)** the Court of Federal Claims.

**(b) Petition by partner other than tax matters partner.--**

**(1) In general.**--If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of the partnership items for the taxable year involved with any of the courts described in subsection (a).

**(2) Priority of the Tax Court action.**--If more than 1 action is brought under paragraph (1) with respect to any partnership for any partnership taxable year, the first such action brought in the Tax Court shall go forward.

**(3) Priority outside the Tax Court.**--If more than 1 action is brought under paragraph (1) with respect to any partnership for any taxable year but no such action is brought in the Tax Court, the first such action brought shall go forward.

**(4) Dismissal of other actions.**--If an action is brought under paragraph (1) in addition to the action which goes forward under paragraph (2) or (3), such action shall be dismissed.

**(5) Treatment of premature petitions.**--If--

**(A)** a petition for a readjustment of partnership items for the taxable year involved is filed by a notice partner (or a 5-percent group) during the 90-day period described in subsection (a), and

**(B)** no action is brought under paragraph (1) during the 60-day period described therein with respect to such taxable year which is not dismissed,

such petition shall be treated for purposes of paragraph (1) as filed on the last day of such 60-day period.

**(6) Tax matters partner may intervene.**--The tax matters partner may intervene in any action brought under this subsection.

**(c) Partners treated as parties.**--If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year--

**(1)** each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and

**(2)** the court having jurisdiction of such action shall allow each such person to participate in the action.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(d) Partner must have interest in outcome.--**

**(1) In order to be party to action.**--Subsection (c) shall not apply to a partner after the day on which--

**(A)** the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or

**(B)** the period within which any tax attributable to such partnership items may be assessed against that partner expired.

Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

**(2) To file petition.**--No partner may file a readjustment petition under subsection (b) unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding.

**(e) Jurisdictional requirement for bringing action in district court or Court of Federal Claims.--**

**(1) In general.**--A readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. In the case of a petition filed by a 5-percent group, the requirement of the preceding sentence shall apply to each member of the group. The court may by order provide that the jurisdictional requirements of this paragraph are satisfied

where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected.

**(2) Refund on request.**--If an action brought in a district court of the United States or in the Court of Federal Claims is dismissed by reason of the priority of a Tax Court action under paragraph (2) of subsection (b), the Secretary shall, at the request of the partner who made the deposit, refund the amount deposited under paragraph (1).

**(3) Interest payable.**--Any amount deposited under paragraph (1), while deposited, shall not be treated as a payment of tax for purposes of this title (other than chapter 67).

**(f) Scope of judicial review.**--A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

**(g) Determination of court reviewable.**--Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. With respect to the partnership, only the tax matters partner, a notice partner, or a 5-percent group may seek review of a determination by a court under this section.

**(h) Effect of decision dismissing action.**--If an action brought under this section is dismissed (other than under paragraph (4) of subsection (b)), the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct, and an appropriate order shall be entered in the records of the court.

**CREDIT(S)**

(Added Pub.L. 97-248, Title IV, § 402(a), Sept. 3, 1982, 96 Stat. 653; amended Pub.L. 97-448, Title III, § 306(c)(1)(A), Jan. 12, 1983, 96 Stat. 2406; Pub.L. 102-572, Title IX, § 902(b)(2), Oct. 29, 1992, 106 Stat. 4516; Pub.L. 105-34, Title XII, §§ 1238(b)(1), 1239(b), 1240(a), Aug. 5, 1997, 111 Stat. 1026, 1027, 1028.)

26 U.S.C.A. § 6226, 26 USCA § 6226

Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 63. Assessment
Subchapter C. Tax Treatment of Partnership Items (Refs & Annos)

This section has been updated. Click here for the updated version.

26 U.S.C.A. § 6231, I.R.C. § 6231

§ 6231. Definitions and special rules

**(a) Definitions.**--For purposes of this subchapter--

**(1) Partnership.--**

**(A) In general.**--Except as provided in subparagraph (B), the term "partnership" means any partnership required to file a return under section 6031(a).

**(B) Exception for small partnerships.--**

**(i) In general.**--The term "partnership" shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner. For purposes of the preceding sentence, a husband and wife (and their estates) shall be treated as 1 partner.

**(ii) Election to have subchapter apply.**--A partnership (within the meaning of subparagraph (A)) may for any taxable year elect to have clause (i) not apply. Such election shall apply for such taxable year and all subsequent taxable years unless revoked with the consent of the Secretary.

**(2) Partner.**--The term "partner" means--

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(A)** a partner in the partnership, and

**(B)** any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership.

**(3) Partnership item.--**The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

**(4) Nonpartnership item.--**The term “nonpartnership item” means an item which is (or is treated as) not a partnership item.

**(5) Affected item.--**The term “affected item” means any item to the extent such item is affected by a partnership item.

**(6) Computational adjustment.--**The term “computational adjustment” means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

**(7) Tax matters partner.--**The tax matters partner of any partnership is--

**(A)** the general partner designated as the tax matters partner as provided in regulations, or

**(B)** if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing).

If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner. The Secretary shall, within 30 days of selecting a tax matters partner under the preceding sentence, notify all partners required to receive notice under section 6223(a) of the name and address of the person selected.

**(8) Notice partner.**--The term "notice partner" means a partner who, at the time in question, would be entitled to notice under subsection (a) of section 6223 (determined without regard to subsections (b)(2) and (e)(1)(B) thereof).

**(9) Pass-thru partner.**--The term "pass-thru partner" means a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted.

**(10) Indirect partner.**--The term "indirect partner" means a person holding an interest in a partnership through 1 or more pass-thru partners.

**(11) 5-percent group.**--A 5-percent group is a group of partners who for the partnership taxable year involved had profits interests which aggregated 5 percent or more.

**(12) Husband and wife.**--Except to the extent otherwise provided in regulations, a husband and wife who have a joint interest in a partnership shall be treated as 1 person.

**(b) Items cease to be partnership items in certain cases.--**

**(1) In general.**--For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date--

**(A)** the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items,

**(B)** the partner files suit under section 6228(b) after the Secretary fails to allow an administrative adjustment request with respect to any of such items,

**(C)** the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items, or

**(D)** such change occurs under subsection (e) of section 6223 (relating to effect of Secretary's failure to provide notice) or under subsection (c) of this section.

**(2) Circumstances in which notice is permitted.**--The Secretary may mail the notice referred to in subparagraph (A) of paragraph (1) to a partner with respect to partnership items for a partnership taxable year only if--

**(A)** such partner--

**(i)** has complied with subparagraph (B) of section 6222(b)(1) (relating to notification of inconsistent treatment) with respect to one or more of such items, and

**(ii)** has not, as of the date on which the Secretary mails the notice, filed a request for administrative adjustments which would make the partner's treatment of the item or items with respect to which the partner complied with subparagraph (B) of section 6222(b)(1) consistent with the treatment of such item or items on the partnership return, or

**(B)(i)** such partner has filed a request under section 6227(d) for administrative adjustment of one or more of such items, and

**(ii)** the adjustments requested would not make such partner's treatment of such items consistent with the treatment of such items on the partnership return.

**(3) Notice must be mailed before beginning of partnership proceeding.**--Any notice to a partner under subparagraph (A) of paragraph (1) with respect to partnership items for a partnership taxable year shall be mailed before the day on which the Secretary mails to the tax matters partner a notice of the beginning of an administrative proceeding at the partnership level with respect to such items.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(c) Regulations with respect to certain special enforcement areas.--**

**(1) Applicability of subsection.**--This subsection applies in the case of--

**(A)** assessments under section 6851 (relating to termination assessments of income tax) or section 6861 (relating to jeopardy assessments of income, estate, gift, and certain excise taxes),

**(B)** criminal investigations,

**(C)** indirect methods of proof of income,

**(D)** foreign partnerships, and

**(E)** other areas that the Secretary determines by regulation to present special enforcement considerations.

**(2) Items may be treated as nonpartnership items.**--To the extent that the Secretary determines and provides by regulations that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as nonpartnership items for purposes of this subchapter.

**(3) Special rules.**--The Secretary may prescribe by regulation such special rules as the Secretary determines to be necessary to achieve the purposes of this subchapter in any case described in paragraph (1).

**(d) Time for determining partner's profits interest in partnership.--**

**(1) In general.**--For purposes of section 6223(b) (relating to special rules for partnerships with more than 100 partners) and paragraph (11) of subsection (a) (relating to 5-percent group), the interest of a partner in the profits of a partnership for a partnership taxable year shall be determined--

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(A)** in the case of a partner whose entire interest in the partnership is disposed of during such partnership taxable year, as of the moment immediately before such disposition, or

**(B)** in the case of any other partner, as of the close of the partnership taxable year.

**(2) Indirect partners.**--The Secretary shall prescribe regulations consistent with the principles of paragraph (1) to be applied in the case of indirect partners.

**(e) Effect of judicial decisions in certain proceedings.--**

**(1) Determinations at partner level.**--No judicial determination with respect to the income tax liability of any partner not conducted under this subchapter shall be a bar to any adjustment in such partner's income tax liability resulting from--

**(A)** a proceeding with respect to partnership items under this subchapter, or

**(B)** a proceeding with respect to items which become nonpartnership items--

**(i)** by reason of 1 or more of the events described in subsection (b), and

**(ii)** after the appropriate time for including such items in any other proceeding with respect to nonpartnership items.

**(2) Proceedings under section 6228(a).**--No judicial determination in any proceeding under subsection (a) of section 6228 with respect to any partnership item shall be a bar to any adjustment in any other partnership item.

**(f) Special rule for deductions, losses, and credits of foreign partnerships.**--Except to the extent otherwise provided in regulations, in the case of any partnership the tax matters partner of which resides outside the United States or the books of which are maintained outside the United States, no deduction, loss, or credit shall be allowable to any partner unless section 6031 is complied with

for the partnership's taxable year in which such deduction, loss, or credit arose at such time as the Secretary prescribes by regulations.

**(g) Partnership return to be determinative of whether subchapter applies.--**

**(1) Determination that subchapter applies.**--If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership for such year but such determination is erroneous, then the provisions of this subchapter are hereby extended to such partnership (and its items) for such taxable year and to partners of such partnership.

**(2) Determination that subchapter does not apply.**--If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership.

**CREDIT(S)**

(Added Pub.L. 97-248, Title IV, § 402(a), Sept. 3, 1982, 96 Stat. 663; amended Pub.L. 98-369, Div. A, Title VII, § 714(p)(2)(B)-(D), (I), July 18, 1984, 98 Stat. 964, 965; Pub.L. 105-34, Title XI, § 1141(b), Title XII, §§ 1232(a), 1234(a), Aug. 5, 1997, 111 Stat. 981, 1023, 1024; Pub.L. 105-206, Title III, § 3507(a), July 22, 1998, 112 Stat. 772; Pub.L. 107-147, Title IV, §§ 416(d)(1)(C), 417(19)(C), Mar. 9, 2002, 116 Stat. 55, 57.)

26 U.S.C.A. § 6231, 26 USCA § 6231
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 42. The Public Health and Welfare
Chapter 7. Social Security (Refs & Annos)
Subchapter II. Federal Old-Age, Survivors, and Disability Insurance Benefits (Refs & Annos)

42 U.S.C.A. § 411

§ 411. Definitions relating to self-employment

Currentness

For the purposes of this subchapter--

**(a) Net earnings from self-employment**

The term "net earnings from self-employment" means the gross income, as computed under subtitle A of the Internal Revenue Code of 1986, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under section 702(a)(8) of such Code, from any trade or business carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary net income or loss--

**(1)** There shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares, and including payments under section 3833(2) of Title 16 to individuals receiving benefits under section 402 or 423 of this title), together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant (as determined without regard to any activities

of an agent of such owner or tenant) in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) with respect to any such agricultural or horticultural commodity;

**(2)** There shall be excluded dividends on any share of stock, and interest on any bond, debenture, note, or certificate, or other evidence of indebtedness, issued with interest benefits [1] or in registered form by any corporation (including one issued by a government or political subdivision thereof), unless such dividends and interest are received in the course of a trade or business as a dealer in stocks or securities;

**(3)** There shall be excluded any gain or loss (A) which is considered under subtitle A of the Internal Revenue Code of 1986 as gain or loss from the sale or exchange of a capital asset, (B) from the cutting of timber, or the disposal of timber, coal, or iron ore, if section 631 of the Internal Revenue Code of 1986 applies to such gain or loss, or (C) from the sale, exchange, involuntary conversion, or other disposition of property if such property is neither (i) stock in trade or other property of a kind which would properly be includible in inventory if on hand at the close of the taxable year, nor (ii) property held primarily for sale to customers in the ordinary course of the trade or business;

**(4)** The deduction for net operating losses provided in section 172 of the Internal Revenue Code of 1986 shall not be allowed;

**(5)(A)** If any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the spouse carrying on such trade or business or, if such trade or business is jointly operated, treated as the gross income and deductions of each spouse on the basis of their respective distributive share of the gross income and deductions;

**(B)** If any portion of a partner's distributive share of the ordinary net income or loss from a trade or business carried on by a partnership is community income or loss under the community property laws applicable to such share, all of such distributive share shall be included in computing the net earnings from self-employment of such partner, and no part of such share shall be taken into account in computing the net earnings from self-employment of the spouse of such partner;

**(6)** A resident of the Commonwealth of Puerto Rico shall compute his net earnings from self-employment in the same manner as a citizen of the United States but without regard to the provisions of section 933 of the Internal Revenue Code of 1986;

**(7)** An individual who is a duly ordained, commissioned, or licensed minister of a church or a member of a religious order shall compute his net earnings from self-employment derived from the performance of service described in subsection (c)(4) without regard to section 107 (relating to rental value of parsonages), section 119 (relating to meals and lodging furnished for the convenience of the employer), and section 911 (relating to earned income from sources without the United States) of the Internal Revenue Code of 1986, but shall not include in any such net earnings from self-employment the rental value of any parsonage or any parsonage allowance (whether or not excluded under section 107 of the Internal Revenue Code of 1986) provided after the individual retires, or any other retirement benefit received by such individual from a church plan (as defined in section 414(e) of such Code) after the individual retires;

**(8)** The exclusion from gross income provided by section 931 of the Internal Revenue Code of 1986 shall not apply;

**(9)** There shall be excluded amounts received by a partner pursuant to a written plan of the partnership, which meets such requirements as are prescribed by the Secretary of the Treasury or his delegate, and which provides for payments on account of retirement, on a periodic basis, to partners generally or to a class or classes of partners, such payments to continue at least until such partner's death, if--

**(A)** such partner rendered no services with respect to any trade or business carried on by such partnership (or its successors) during the taxable year of such partnership (or its successors), ending within or with his taxable year, in which such amounts were received, and

**(B)** no obligation exists (as of the close of the partnership's taxable year referred to in subparagraph (A)) from the other partners to such partner except with respect to retirement payments under such plan, and

**(C)** such partner's share, if any, of the capital of the partnership has been paid to him in full before the close of the partnership's taxable year referred to in subparagraph (A);

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(10)** The exclusion from gross income provided by section 911(a)(1) of the Internal Revenue Code of 1986 shall not apply;

**(11)** In lieu of the deduction provided by section 164(f) of the Internal Revenue Code of 1986 (relating to deduction for one-half of self-employment taxes), there shall be allowed a deduction equal to the product of--

**(A)** the taxpayer's net earnings from self-employment for the taxable year (determined without regard to this paragraph), and

**(B)** one-half of the sum of the rates imposed by subsections (a) and (b) of section 1401 of such Code for such year;

**(12)** There shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) of the Internal Revenue Code of 1986 to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services;

**(13)** In the case of church employee income, the special rules of subsection (i)(1) shall apply;

**(14)** There shall be excluded income excluded from taxation under section 7873 of the Internal Revenue Code of 1986 (relating to income derived by Indians from exercise of fishing rights);

**(15)** The deduction under section 162(l) of the Internal Revenue Code of 1986 (relating to health insurance costs of self-employed individuals) shall not be allowed; and

**(16)** Notwithstanding the preceding provisions of this subsection, each spouse's share of income or loss from a qualified joint venture shall be taken into account as provided in section 761(f) of the Internal Revenue Code of 1986 in determining net earnings from self-employment of such spouse.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

If the taxable year of a partner is different from that of the partnership, the distributive share which he is required to include in computing his net earnings from self-employment shall be based upon the ordinary net income or loss of the partnership for any taxable year of the partnership (even though beginning prior to 1951) ending within or with his taxable year. In the case of any trade or business which is carried on by an individual or by a partnership and in which, if such trade or business were carried on exclusively by employees, the major portion of the services would constitute agricultural labor as defined in section 410(f) of this title--

**(i)** in the case of an individual, if the gross income derived by him from such trade or business is not more than the upper limit, the net earnings from self-employment derived by him from such trade or business may, at his option, be deemed to be 66 $^{2}/_{3}$ percent of such gross income; or

**(ii)** in the case of an individual, if the gross income derived by him from such trade or business is more than the upper limit and the net earnings from self-employment derived by him from such trade or business (computed under this subsection without regard to this sentence) are less than the lower limit, the net earnings from self-employment derived by him from such trade or business may, at his option, be deemed to be the lower limit; and

**(iii)** in the case of a member of a partnership, if his distributive share of the gross income of the partnership derived from such trade or business (after such gross income has been reduced by the sum of all payments to which section 707(c) of the Internal Revenue Code of 1986 applies) is not more than the upper limit, his distributive share of income described in section 702(a)(8) of such Code derived from such trade or business may, at his option, be deemed to be an amount equal to 66 $^{2}/_{3}$ percent of his distributive share of such gross income (after such gross income has been so reduced); or

**(iv)** in the case of a member of a partnership, if his distributive share of the gross income of the partnership derived from such trade or business (after such gross income has been reduced by the sum of all payments to which section 707(c) of the Internal Revenue Code of 1986 applies) is more than the upper limit and his distributive share (whether or not distributed) of income described in section 702(a)(8) of such Code derived from such trade or business (computed under this subsection without regard to this sentence) is less than the lower limit, his distributive share of income described in such section 702(a)(8) derived from such trade or business may, at his option, be deemed to be the lower limit.

For purposes of the preceding sentence, gross income means--

**(v)** in the case of any such trade or business in which the income is computed under a cash receipts and disbursements method, the gross receipts from such trade or business reduced by the cost or other basis of property which was purchased and sold in carrying on such trade or business, adjusted (after such reduction) in accordance with the provisions of paragraphs (1) through (6) and paragraph (8) of this subsection; and

**(vi)** in the case of any such trade or business in which the income is computed under an accrual method, the gross income from such trade or business, adjusted in accordance with the provisions of paragraphs (1) through (6) and paragraph (8) of this subsection;

and, for purposes of such sentence, if an individual (including a member of a partnership) derives gross income from more than one such trade or business, such gross income (including his distributive share of the gross income of any partnership derived from any such trade or business) shall be deemed to have been derived from one trade or business.

The preceding sentence and clauses (i) through (iv) of the second preceding sentence shall also apply in the case of any trade or business (other than a trade or business specified in such second preceding sentence) which is carried on by an individual who is self-employed on a regular basis as defined in subsection (g), or by a partnership of which an individual is a member on a regular basis as defined in subsection (g), but only if such individual's net earnings from self-employment in the taxable year as determined without regard to this sentence are less than the lower limit and less than 66 $^{2}/_{3}$ percent of the sum (in such taxable year) of such individual's gross income derived from all trades or businesses carried on by him and his distributive share of the income or loss from all trades or businesses carried on by all the partnerships of which he is a member; except that this sentence shall not apply to more than 5 taxable years in the case of any individual, and in no case in which an individual elects to determine the amount of his net earnings from self-employment for a taxable year under the provisions of the two preceding sentences with respect to a trade or business to which the second preceding sentence applies and with respect to a trade or business to which this sentence applies shall such net earnings for such year exceed the lower limit.

**(b) Self-employment income**

The term “self-employment income” means the net earnings from self-employment derived by an individual (other than a nonresident alien individual, except as provided by an agreement under section 433 of this title) during any taxable year beginning after 1950; except that such term shall not include--

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(1)** That part of the net earnings from self-employment which is in excess of--

**(A)** For any taxable year ending prior to 1955, (i) $3,600, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(B)** For any taxable year ending after 1954 and prior to 1959, (i) $4,200, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(C)** For any taxable year ending after 1958 and prior to 1966, (i) $4,800, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(D)** For any taxable year ending after 1965 and prior to 1968, (i) $6,600, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(E)** For any taxable year ending after 1967 and beginning prior to 1972, (i) $7,800, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(F)** For any taxable year beginning after 1971 and prior to 1973, (i) $9,000, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(G)** For any taxable year beginning after 1972 and prior to 1974, (i) $10,800, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(H)** For any taxable year beginning after 1973 and prior to 1975, (i) $13,200, minus (ii) the amount of the wages paid to such individual during the taxable year; and

**(I)** For any taxable year beginning in any calendar year after 1974, (i) an amount equal to the contribution and benefit base (as determined under section 430 of this title) which is effective for such calendar year, minus (ii) the amount of the wages paid to such individual during such taxable year; or

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(2)** The net earnings from self-employment, if such net earnings for the taxable year are less than $400.

An individual who is not a citizen of the United States but who is a resident of the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa shall not, for the purpose of this subsection, be considered to be a nonresident alien individual. In the case of church employee income, the special rules of subsection (i)(2) shall apply for purposes of paragraph (2).

**(c) Trade or business**

The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 of the Internal Revenue Code of 1986, except that such term shall not include--

**(1)** The performance of the functions of a public office, other than the functions of a public office of a State or a political subdivision thereof with respect to fees received in any period in which the functions are performed in a position compensated solely on a fee basis and in which such functions are not covered under an agreement entered into by such State and the Commissioner of Social Security pursuant to section 418 of this title;

**(2)** The performance of service by an individual as an employee, other than--

**(A)** service described in section 410(a)(14)(B) of this title performed by an individual who has attained the age of eighteen,

**(B)** service described in section 410(a)(16) of this title,

**(C)** service described in section 410(a)(11), (12), or (15) of this title performed in the United States by a citizen of the United States, except service which constitutes "employment" under section 410(r) of this title,

**(D)** service described in paragraph (4) of this subsection,

**(E)** service performed by an individual as an employee of a State or a political subdivision thereof in a position compensated solely on a fee basis with respect to fees received in any period in which such service is not covered under an agreement entered into by such State and the Commissioner of Social Security pursuant to section 418 of this title,

**(F)** service described in section 410(a)(20) of this title, and

**(G)** service described in section 410(a)(8)(B) of this title;

**(3)** The performance of service by an individual as an employee or employee representative as defined in section 3231 of the Internal Revenue Code of 1986;

**(4)** The performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

**(5)** The performance of service by an individual in the exercise of his profession as a Christian Science practitioner; or

**(6)** The performance of service by an individual during the period for which an exemption under section 1402(g) of the Internal Revenue Code of 1986 is effective with respect to him.

The provisions of paragraph (4) or (5) shall not apply to service (other than service performed by a member of a religious order who has taken a vow of poverty as a member of such order) performed by an individual unless an exemption under section 1402(e) of the Internal Revenue Code of 1986 is effective with respect to him.

**(d) Partnership and partner**

The term "partnership" and the term "partner" shall have the same meaning as when used in subchapter K of chapter 1 of the Internal Revenue Code of 1986.

**(e) Taxable year**

The term "taxable year" shall have the same meaning as when used in subtitle A of the Internal Revenue Code of 1986; and the taxable year of any individual shall be a calendar year unless he has a different taxable year for the purposes of subtitle A of such Code, in which case his taxable year for the purposes of this subchapter shall be the same as his taxable year under such subtitle A.

**(f) Partner's taxable year ending as result of death**

In computing a partner's net earnings from self-employment for his taxable year which ends as a result of his death (but only if such taxable year ends within, and not with, the taxable year of the partnership), there shall be included so much of the deceased partner's distributive share of the partnership's ordinary income or loss for the partnership taxable year as is not attributable to an interest in the partnership during any period beginning on or after the first day of the first calendar month following the month in which such partner died. For purposes of this subsection--

**(1)** in determining the portion of the distributive share which is attributable to any period specified in the preceding sentence, the ordinary income or loss of the partnership shall be treated as having been realized or sustained ratably over the partnership taxable year; and

**(2)** the term "deceased partner's distributive share" includes the share of his estate or of any other person succeeding, by reason of his death, to rights with respect to his partnership interest.

**(g) Regular basis**

An individual shall be deemed to be self-employed on a regular basis in a taxable year, or to be a member of a partnership on a regular basis in such year, if he had net earnings from self-employment, as defined in the first sentence of subsection (a), of not less than $400 in at least two of the three consecutive taxable years immediately preceding such taxable year from trades or businesses carried on by such individual or such partnership.

**(h) Option dealers and commodity dealers**

**(1)** In determining the net earnings from self-employment of any options dealer or commodities dealer--


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(A)** notwithstanding subsection (a)(3)(A), there shall not be excluded any gain or loss (in the normal course of the taxpayer's activity of dealing in or trading section 1256 contracts) from section 1256 contracts or property related to such contracts, and

**(B)** the deduction provided by section 1202 of the Internal Revenue Code of 1986 shall not apply.

**(2)** For purposes of this subsection--

**(A)** The term "options dealer" has the meaning given such term by section 1256(g)(8) of such Code.

**(B)** The term "commodities dealer" means a person who is actively engaged in trading section 1256 contracts and is registered with a domestic board of trade which is designated as a contract market by the Commodities Futures Trading Commission.

**(C)** The term "section 1256 contracts" has the meaning given to such term by section 1256(b) of such Code.

**(i) Church employee income**

**(1)** In applying subsection (a)--

**(A)** church employee income shall not be reduced by any deduction;

**(B)** church employee income and deductions attributable to such income shall not be taken into account in determining the amount of other net earnings from self-employment.

**(2)(A)** Subsection (b)(2) shall be applied separately--

**(i)** to church employee income, and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(ii)** to other net earnings from self-employment.

**(B)** In applying subsection (b)(2) to church employee income, "$100" shall be substituted for "$400".

**(3)** Paragraph (1) shall not apply to any amount allowable as a deduction under subsection (a)(11), and paragraph (1) shall be applied before determining the amount so allowable.

**(4)** For purposes of this section, the term "church employee income" means gross income for services which are described in section 410(a)(8)(B) of this title (and are not described in section 410(a)(8)(A) of this title).

**(j) Codification of treatment of certain termination payments received by former insurance salesmen**

Nothing in subsection (a) shall be construed as including in the net earnings from self-employment of an individual any amount received during the taxable year from an insurance company on account of services performed by such individual as an insurance salesman for such company if--

**(1)** such amount is received after termination of such individual's agreement to perform such services for such company,

**(2)** such individual performs no services for such company after such termination and before the close of such taxable year,

**(3)** such individual enters into a covenant not to compete against such company which applies to at least the 1-year period beginning on the date of such termination, and

**(4)** the amount of such payment--

**(A)** depends primarily on policies sold by or credited to the account of such individual during the last year of such agreement or the extent to which such policies remain in force for some period after such termination, or both, and

**(B)** does not depend to any extent on length of service or overall earnings from services performed for such company (without regard to whether eligibility for payment depends on length of service).

**(k) Upper and lower limits**

For purposes of subsection (a)--

**(1)** The lower limit for any taxable year is the sum of the amounts required under section 413(d) of this title for a quarter of coverage in effect with respect to each calendar quarter ending with or within such taxable year.

**(2)** The upper limit for any taxable year is the amount equal to 150 percent of the lower limit for such taxable year.

**CREDIT(S)**

(Aug. 14, 1935, c. 531, Title II, § 211, as added Aug. 28, 1950, c. 809, Title I, § 104(a), 64 Stat. 492, 502; amended Sept. 23, 1950, c. 994, Title II, § 221(j)(2), 64 Stat. 947; Sept. 1, 1954, c. 1206, Title I, §§ 101(d), (g), 104(b), 68 Stat. 1054, 1078; Aug. 1, 1956, c. 836, Title I, §§ 104(c)(2), (3), (d), (h), 106(a), 70 Stat. 824 to 826, 828; Pub.L. 85-239, § 5(a), Aug. 30, 1957, 71 Stat. 523; Pub.L. 85-840, Title I, § 102(b), Title III, § 313(a), Aug. 28, 1958, 72 Stat. 1019, 1036; Pub.L. 86-778, Title I, §§ 103(g), (h), (j)(3), 106(a), Sept. 13, 1960, 74 Stat. 937, 938, 945; Pub.L. 88-272, Title II, § 227(b)(7), Feb. 26, 1964, 78 Stat. 98; Pub.L. 89-97, Title III, §§ 311(a)(1), (2), 312(a), 319(b), 320(a)(2), July 30, 1965, 79 Stat. 380, 381, 391, 393; Pub.L. 90-248, Title I, §§ 108(a)(2), 115(a), 118(b), 122(a), Jan. 2, 1968, 81 Stat. 834, 839, 841, 843; Pub.L. 92-5, Title II, § 203(a)(2), Mar. 17, 1971, 85 Stat. 10; Pub.L. 92-336, Title II, § 203(a)(2), July 1, 1972, 86 Stat. 418; Pub.L. 92-603, Title I, §§ 121(a), 124(a), 140(a), Oct. 30, 1972, 86 Stat. 1353, 1357, 1366; Pub.L. 93-66, Title II, § 203(a)(2), July 9, 1973, 87 Stat. 153; Pub.L. 93-233, § 5(a)(2), Dec. 31, 1973, 87 Stat. 953; Pub.L. 93-368, § 10(a), Aug. 7, 1974, 88 Stat. 422; Pub.L. 94-455, Title XII, § 1207(e)(2)(B), Oct. 4, 1976, 90 Stat. 1707; Pub.L. 95-216, Title III, § 313(a), Dec. 20, 1977, 91 Stat. 1535; Pub.L. 95-600, Title VII, § 703(j)(14)(D), (E), Nov. 6, 1978, 92 Stat. 2942; Pub.L. 98-21, Title I, § 124(c)(3), Title III, §§ 322(b)(1), 323(b)(2), Apr. 20, 1983, 97 Stat. 90, 121; Pub.L. 98-369, Div. A, Title I, § 102(c)(2), Div. B, Title VI, §§ 2603(c)(1), (d)(1), 2663(a)(8), July 18, 1984, 98 Stat. 622, 1129, 1163; Pub.L. 99-514, Title XVIII, §§ 1882(b)(2), 1883(a)(6), Oct. 22, 1986, 100 Stat. 2915, 2916; Pub.L. 100-203, Title IX, §§ 9022(a), 9023(b), Dec. 22, 1987, 101

Stat. 1330-295, 1330-296; Pub.L. 100-647, Title I, § 1011B(b)(4), Title III, § 3043(b), Title VIII, § 8016(a)(2), Nov. 10, 1988, 102 Stat. 3488, 3642, 3792; Pub.L. 101-508, Title V, §§ 5123(a)(1), 5130(a)(2), (3), Nov. 5, 1990, 104 Stat. 1388-284, 1388-289; Pub.L. 103-296, Title I, § 107(a)(4), Title III, §§ 319(b)(2), 321(a)(14), (c)(5), (6)(E) to (G), Aug. 15, 1994, 108 Stat. 1478, 1535, 1536, 1538; Pub.L. 105-34, Title IX, § 922(b), Aug. 5, 1997, 111 Stat. 880; Pub.L. 108-203, Title IV, §§ 422(a), 424(a), 425(a), Mar. 2, 2004, 118 Stat. 536; Pub.L. 110-28, Title VIII, § 8215(b)(2), May 25, 2007, 121 Stat. 194; Pub.L. 110-234, Title IV, § 4115(c)(1)(A)(i), (B)(iii), Title XV, §§ 15301(b), 15352(b)(1), (2), May 22, 2008, 122 Stat. 1109, 1501, 1526; Pub.L. 110-246, § 4(a), Title IV, § 4115(c)(1)(A)(i), (B)(iii), Title XV, §§ 15301(b), 15352(b)(1), (2), June 18, 2008, 122 Stat. 1664, 1870, 2263, 2288.)

## Footnotes

1 So in original. Probably should be "coupons". See 2008 Amendments note set out under this section.

42 U.S.C.A. § 411, 42 USCA § 411

Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
Title 20. Employees' Benefits
Chapter III. Social Security Administration
Part 404. Federal Old–Age, Survivors and Disability Insurance (1950– ) (Refs & Annos)
Subpart K. Employment, Wages, Self–Employment, and Self–Employment Income (Refs & Annos)
Self–Employment Income

20 C.F.R. § 404.1080

§ 404.1080 Net earnings from self-employment.

Currentness

(a) Definition of net earnings from self-employment. If you are self-employed, you must first determine the amount of your net earnings from self-employment before figuring the amount of your earnings that count for social security purposes. Some of your earnings may not be included as net earnings from self-employment even though they are taxable for income tax purposes. If you are an employee but we consider you to be self-employed for social security purposes, you must figure your earnings as though you were actually self-employed unless you work for a church or church-controlled organization that has exempted its employees (see § 404.1068(f)). Subject to the special rules in §§ 404.1081 through 404.1095, the term net earnings from self-employment means—

(1) Your gross income, as figured under subtitle A of the Code, from any trade or business you carried on, less deductions attributed to your trade or business that are allowed by that subtitle; plus

(2) Your distributive share of income (or loss) from a trade or business carried on by a partnership of which you are a member, as described in paragraph (b) of this section.

(b) Income or loss from a partnership.

(1) Your distributive share (whether or not actually distributed) of the income or loss from any trade or business carried on by a partnership of which you are a member, other than as a limited partner, is determined under section 704 of the Code.

(2) If you are a limited partner, your distributive share is included in your net earnings from self-employment if—

(i) The amount is payable to you for services you render to or on behalf of the partnerships; and

(ii) It is a guaranteed payment described in section 707(c) of the Code.

(3) You are a limited partner if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership. Generally, you will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership for the taxable year involved.

(c) Reporting methods. Your gross income from a trade or business includes the gross income you received (under the cash method) or that accrued to you (under the accrual method) from the trade or business in the taxable year. It is immaterial that the income may be attributable in whole or in part to services you rendered or other acts you performed in a prior taxable year.

(d) What is a taxable year.

(1) The term taxable year means—

(i) Your annual accounting period on which you regularly figure your income in keeping your books; or

(ii) A short period resulting from your death before the end of your annual accounting period or from a change of your annual accounting period.

(2) The term annual accounting period means—

(i) A calendar year, consisting of 12 months ending on December 31; or

(ii) A fiscal year, consisting of—

(A) 12 months ending on the last day of any month other than December; or

(B) A period, if elected under section 441 of the Code, that varies from 52 to 53 weeks and always ends on the same day of the week that occurs last in a calendar month or nearest to the last day of the calendar month.

(3) Your taxable year for figuring self-employment income is the same as your taxable year for the purposes of subtitle A of the Code. Your taxable year is a calendar year if—

(i) You keep no books;

(ii) You have no annual accounting period; or

(iii) You have an annual accounting period that differs from the definition of fiscal year as described in paragraph (d)(2)(ii) of this section.

**Credits**

[50 FR 36574, Sept. 9, 1985; 50 FR 38113, Sept. 20, 1985]

SOURCE: 45 FR 20075, Mar. 27, 1980; 52 FR 8249, March 17, 1987; 52 FR 27541, July 22, 1987; 52 FR 29662, Aug. 11, 1987; 52 FR 39635, Oct. 23, 1987; 53 FR 38944, Oct. 4, 1988; 55 FR 7309, March 1, 1990; 57 FR 44098, Sept. 24, 1992; 57 FR 59910, Dec. 17, 1992; 58 FR 64889, Dec. 10, 1993; 61 FR 5941, Feb. 15, 1996; 69 FR 51555, Aug. 20, 2004; 70 FR 41955, July 21, 2005; 76 FR 65108, Oct. 20, 2011; 80 FR 34050, June 15, 2015; 88 FR 67088, Sept. 29, 2023, unless otherwise noted.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

AUTHORITY: 42 U.S.C. 402, 405(a)-(b) and (d)-(h), 416(i), 421(a) and (h)-(j), 422(c), 423, 425, and 902(a)(5)); sec. 211(b), Pub.L. 104–193, 110 Stat. 2105, 2189; sec. 202, Pub.L. 108–203, 118 Stat. 509 (42 U.S.C. 902 note).; Secs. 202(v), 205(a), 209, 210, 211, 229(a), 230, 231, and 702(a)(5) of the Social Security Act (42 U.S.C. 402(v), 405(a), 409, 410, 411, 429(a), 430, 431, and 902(a)(5)) and 48 U.S.C.1801.

Notes of Decisions (9)

Current through July 25, 2025, 90 FR 35240. Some sections may be more current. See credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter A. Income Tax
Part 1. Income Taxes (Refs & Annos)
Normal Taxes and Surtaxes
Partners and Partnerships
Determination of Tax Liability

26 C.F.R. § 1.702–3T, Treas. Reg. § 1.702–3T

§ 1.702–3T 4–Year spread (temporary).

Currentness

**(a) Applicability.** This section applies to a partner in a partnership if—

**(1)** The partnership is required by section 806 of the Tax Reform Act of 1986 (the 1986 Act), Pub.L. 99–514, 100 Stat. 2362, to change its taxable year for the first taxable year beginning after December 31, 1986 (partnership's year of change); and

**(2)** As a result of such change in taxable year, items from more than one taxable year of the partnership would, but for the provisions of this section, be included in the taxable year of the partner with or within which the partnership's year of change ends.

**(b) Partner's treatment of items from the partnership's year of change—(1) In general.** Except as provided in paragraph (c) of this section, if a partner's share of "income items" exceeds the partner's share of "expense items," the partner's share of each and every income and expense item shall be taken into account ratably (and retain its character) over the partner's first 4 taxable years beginning with the partner's taxable year with or within which the partnership's year of change ends.

**(2) Definitions—(i) Income items.** For purposes of this section, the term income items means the sum of—

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

(A) The partner's distributive share of taxable income (exclusive of separately stated items) from the partnership's year of change,

(B) The partner's distributive share of all separately stated income or gain items from the partnership's year of change, and

(C) Any amount includible in the partner's income under section 707(c) on account of payments during the partnership's year of change.

**(ii) Expense items.** For purposes of this section, the term expense items means the sum of—

(A) The partner's distributive share of taxable loss (exclusive of separately stated items) from the partnership's year of change, and

(B) The partner's distributive share of all separately stated items of loss or deduction from the partnership's year of change.

**(c) Electing out of 4–year spread.** A partner may elect out of the rules of paragraph (b) of this section by meeting the requirements of § 301.9100–7T of this chapter (temporary regulations relating to elections under the Tax Reform Act of 1986).

**(d) Special rules for a partner that is a partnership or S corporation—(1) In general.** Except as provided in paragraph (d)(2) of this section, a partner that is a partnership or S corporation may, if otherwise eligible, use the 4–year spread (with respect to partnership interests owned by the partner) described in this section.

**(2) Certain partners prohibited from using 4–year spread—(i) In general.** Except as provided in paragraph (d)(2)(ii) of this section, a partner that is a partnership or S corporation may not use the 4–year spread (with respect to partnership interests owned by the partner) if such partner is also changing its taxable year pursuant to section 806 of the 1986 Act.

**(ii) Exception.** If a partner's year of change does not include any income or expense items with respect to the partnership's year of change, such partner may, if otherwise eligible, use

the 4–year spread (with respect to such partnership interest) described in this section even though the partner is a partnership or S corporation. See examples 13 and 14 in paragraph (h) of this section.

**(e) Basis of partner's interest.** The basis of a partner's interest in a partnership shall be determined as if the partner elected not to spread the partnership items over 4 years, regardless of whether such election was in fact made. Thus, for example, if a partner is eligible for the 4–year spread and does not elect out of the 4–year spread pursuant to paragraph (c) of this section, the partner's basis in the partnership interest will be increased in the first year of the 4–year spread period by an amount equal to the excess of the income items over the expense items. However, the partner's basis will not be increased again, with respect to the unamortized income and expense items, as they are amortized over the 4–year spread period.

**(f) Effect on other provisions of the Code.** Except as provided in paragraph (e) of this section, determinations with respect to a partner, for purposes of other provisions of the Code, must be made with regard to the manner in which partnership items are taken into account under the rules of this section. Thus, for example, a partner who does not elect out of the 4–year spread must take into account, for purposes of determining net earnings from self-employment under section 1402(a) for a taxable year, only the ratable portion of partnership items for that taxable year.

**(g) Treatment of dispositions—(1) In general.** If a partnership interest is disposed of before the last taxable year in the 4–year spread period, unamortized income and expense items that are attributable to the interest disposed of and that would be taken into account by the partner for subsequent taxable years in the 4–year spread period shall be taken into account by the partner as determined under paragraph (g)(2) of this section. For purposes of this section, the term disposed of means any transfer, including (but not limited to) transfers by sale, exchange, gift, and by reason of death.

**(2) Year unamortized items taken into account—(i) In general.** If, at the end of a partner's taxable year, the fraction determined under paragraph (g)(2)(ii) of this section is—

(A) Greater than $^2/_3$, the partner must continue to take the unamortized income and expense items into account ratably over the 4–year spread period;

(B) Greater than ⅓ but less than or equal to $^2/_3$, the partner must, in addition to its ratable amortization, taken into account in such year 50 percent of the income and expense items that would otherwise be unamortized at the end of such year (however, this paragraph (g)(2)(i)(B) is only applied once with respect to a partner's interest in a particular partnership); or

(C) Less than or equal to ⅓, the partner must take into account the entire balance of unamortized income and expense items in such year.

**(ii) Determination of fraction.** For purposes of paragraph (g)(2)(i) of this section, the numerator of the fraction is the partner's proportionate interest in the partnership at the end of the partner's taxable year and the denominator is the partner's proportionate interest in the partnership as of the last day of the partnership's year of change.

**(h) Examples.** The provisions of this section may be illustrated by the following examples.

**Example 1.** Assume that P1, a partnership with a taxable year ending September 30, is required by the 1986 Act to change its taxable year to a calendar year. All of the partners of P1 are individual taxpayers reporting on a calendar year. P1 is required to change to a calendar year for its taxable year beginning October 1, 1987, and to file a return for the short taxable year ending December 31, 1987. Based on the above facts, the partners of P1 are required to include the items from more than one taxable year of P1 in income for their 1987 taxable year. Thus, under paragraph (b) of this section, if a partner's share of income items exceeds the partner's share of expense items, the partner's share of each and every income and expense item shall be taken into account ratably by such partner in each of the partner's first four taxable years beginning with the partner's 1987 taxable year, unless such partner elects under paragraph (c) of this section to include all such amounts in his 1987 taxable year.

**Example 2.** Assume the same facts as in example 1, except P1 is a personal service corporation with all of its employee-owners reporting on a calendar year. Although P1 is required to change to a calendar year for its taxable year beginning October 1, 1987, neither P1 nor its employee-owners obtain the benefits of a 4–year spread. Pursuant to section 806(e)(2)(C) of the 1986 Act, the 4–year spread provision is only applicable to short taxable years of partnerships and S corporations required to change their taxable year under the 1986 Act.

**Example 3.** Assume the same facts as example 1 and that I is one of the individual partners of P1. Further assume that I's distributive share of P1's taxable income for the short taxable year ended

December 31, 1987 (*i.e.,* P1's year of change), is $10,000. In addition, I has $8,000 of separately stated expense from P1's year of change. Since I's income items (*i.e.,* $10,000 of taxable income) exceed I's expense items (*i.e.,* $8,000 of separately stated expense) attributable to P1's year of change, I is eligible for the 4–year spread provided by this section. If I does not elect out of the 4–year spread, I will recognize $2,500 of taxable income and $2,000 of separately stated expense in his 1987 calendar year return. Assuming I does not dispose of his partnership interest in P1 by December 31, 1989, the remaining $7,500 of taxable income and $6,000 of separately stated expense will be amortized (and retain its character) over I's next three taxable years (*i.e.,* 1988, 1989 and 1990).

**Example 4.** Assume the same facts as example 3, except that I disposes of his entire interest in P1 during 1988. Pursuant to paragraph (g) of this section, I would recognize $7,500 of taxable income and $6,000 of separately stated expense in his 1988 calendar year return.

**Example 5.** Assume the same facts as in example 3, except that I disposes of 50 percent of his interest in P1 during 1989. Pursuant to paragraph (g) of this section, I would recognize $3,750 of taxable income in his 1989 calendar year return ($2,500 ratable portion for 1989 plus 50 percent of the $2,500 of income items that would otherwise be unamortized at the end of 1989). I would also recognize $3,000 of separately stated expense items in 1989 ($2,000 ratable portion for 1989 plus 50 percent of the $2,000 of separately stated expense items that would otherwise be unamortized at the end of 1989).

**Example 6.** Assume the same facts as in example 1, except that X, a personal service corporation as defined in section 441(i), is a partner of P1. X is a calendar year taxpayer, and thus is not required to change its taxable year under the 1986 Act. The same result occurs as in example 1 (*i.e.,* unless X elects to the contrary, X is required to include one fourth of its share of income and expense items from P1's year of change in the first four taxable years of X beginning with the 1987 taxable year).

**Example 7.** Assume the same facts as in example 6, except that X is a fiscal year personal service corporation with a taxable year ending September 30. X is required under the 1986 Act to change to a calendar year for its taxable year beginning October 1, 1987, and to file a return for its short year ending December 31, 1987. Based on the above facts, X is not required to include the items from more than one taxable year of P1 in any one taxable year of X. Thus, the provisions of this section do not apply to X, and X is required to include the full amount of income and expense items from P1's year of change in X's taxable income for X's short year ending December 31. Under section 443 of the Code, X is required to annualize the taxable income for its short year ending December 31, 1987.

**Example 8.** Assume that P2 is a partnership with a taxable year ending September 30. Under the 1986 Act, P2 would have been required to change its taxable year to a calendar year, effective

for the taxable year beginning October 1, 1987. However, P2 properly changed its taxable year to a calendar year for the year beginning October 1, 1986, and filed a return for the short period ending December 31, 1986. The provisions of the 1986 Act do not apply to P2 because the short year ending December 31, 1986, was not required by the amendments made by section 806 of the 1986 Act. Thus, the partners of P2 are required to take all items of income and expense for the short taxable year ending December 31, 1986, into account for the taxable year with or within which such short year ends.

**Example 9.** Assume that P3 is a partnership with a taxable year ending March 31 and I, a calendar year individual, is a partner in P3. Under the 1986 Act, P3 would have been required to change its taxable year to a calendar year. However, under Rev.Proc. 87–32, P3 establishes and changes to a natural business year beginning with the taxable year ending June 30, 1987. Thus, P3 is required to change its taxable year under section 806 of the 1986 Act, and I is required to include items from more than one taxable year of P3 in one of her taxable years. Furthermore, I's share of P3's income items exceeds her share of P3's expense items for the short period April 1, 1987 through June 30, 1987. Accordingly, under this section, unless I elects to the contrary, I is required to take one fourth of her share of items of income and expense from P3's short taxable year ending June 30, 1987 into account for her taxable year ending December 31, 1987.

**Example 10.** Assume that P4 is a partnership with a taxable year ending March 31. Y, a C corporation, owns a 51 percent interest in the profits and capital of P4. Y reports its income on the basis of a taxable year ending March 31. P4 establishes and changes to a natural business year beginning with the taxable year ending June 30, 1987, under Rev.Proc. 87–32. Under the above facts, P4 is not required to change its taxable year because its March 31 taxable year was the taxable year of Y, the partner owning a majority of the partnership's profits and capital. Therefore, the remaining partners of P4 owning 49 percent of the profits and capital are not permitted the 4–year spread of the items of income and expense with respect to the short year, even though they may be required to include their distributive share of P4's items from more than one taxable year in one of their years.

**Example 11.** Assume that X and Y are C corporations with taxable years ending June 30. Each owns a 50–percent interest in the profits and capital of partnership P5. P5 has a taxable year ending March 31. Assume that P5 cannot establish a business purpose in order to retain a taxable year ending March 31, and thus P5 must change to a June 30 taxable year, the taxable year of its partners. Furthermore, assume that X's share of P5's income items exceeds its share of P5's expense items for P5's short taxable year ending June 30, 1987. Unless X elects out of the 4–year spread, the taxable year ending June 30, 1987, is the first of the four taxable years in which X must take into account its share of the items of income and expense resulting from P5's short taxable year ending June 30, 1987.

**Example 12.** Assume that I, an individual who reports income on the basis of the calendar year, is a partner in two partnerships, P6 and P7. Both partnerships have a taxable year ending September 30. Neither partnership can establish a business purpose for retaining its taxable year. Consequently, each partnership will change its taxable year to December 31, for the taxable year beginning October 1, 1987. The election to avoid a 4–year spread is made at the partner level; in addition, a partner may make such elections on a partnership-by-partnership basis. Thus, assuming I is eligible to obtain the 4–year spread with respect to income and expense items from partnerships P6 and P7, I may use the 4–year spread with respect to items from P6, while not using the 4–year spread with respect to items from P7.

**Example 13.** I, an individual taxpayer using a calendar year, owns an interest in P8, a partnership using a taxable year ending June 30. Furthermore, P8 owns an interest in P9, a partnership with a taxable year ending March 31. Under section 806 of the 1986 Act, P8 will be required to change to a taxable year ending December 31, while P9 will be required to change to a taxable year ending June 30. As a result, P8's year of change will be July 1 through December 31, 1987, while P9's year of change will be from April 1 through June 30, 1987. Since P9's year of change does not end with or within P8's year of change, paragraph (d)(2) of this section does not prevent P8 from obtaining a 4–year spread with respect to its interest in P9.

**Example 14.** The facts are the same as in example 13, except that P9 has a taxable year ending September 30, and under the 1986 Act P9 is required to change to a taxable year ending December 31. Therefore, P9's year of change will be from October 1, 1987 through December 31, 1987. Although P8's year of change from July 1, 1987 through December 31, 1987 includes two taxable years of P9 (*i.e.,* October 1, 1986 through September 30, 1987 and October 1, 1987 through December 31, 1987), paragraph (d)(2) of this section prohibits P8 from using the 4–year spread with respect to its interest in P9, because P9's year of change ends with or within P8's year of change.

**Credits**

[T.D. 8167, 52 FR 48530, Dec. 23, 1987; T.D. 8435, 57 FR 43896, Sept. 23, 1992]

SOURCE: T.D. 6500, 25 FR 11402, Nov. 26, 1960; 25 FR 14021, Dec. 31, 1960, unless otherwise noted.

AUTHORITY: Section 1.1411–10 also issued under 26 U.S.C. 367.

## HISTORICAL NOTES

### Effective and Applicability Notes

September 23, 1992.

Notes of Decisions (38)

Current through July 25, 2025, 90 FR 35240. Some sections may be more current. See credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

26 C.F.R. § 301.6231(a)(3)–1, Treas. Reg. § 301.6231(a)(3)–1

§ 301.6231(a)(3)–1 Partnership items.

Currentness

**(a) In general.** For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

**(1)** The partnership aggregate and each partner's share of each of the following:

**(i)** Items of income, gain loss, deduction, or credit of the partnership;

**(ii)** Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

**(iii)** Items of the partnership which may be tax preference items under section 57(a) for any partner;

**(iv)** Income of the partnership exempt from tax;

**(v)** Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(vi)** Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine—

(A) The investment credit determined under section 46(a);

(B) Recapture under section 47 of the investment credit;

(C) Amounts at risk in any activity to which section 465 applies;

(D) The depletion allowance under section 613A with respect to oil and gas wells; and

(E) The application of section 751 (a) and (b);

**(2)** Guaranteed payments;

**(3)** Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and

**(4)** Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

**(i)** Contributions to the partnership;

**(ii)** Distributions from the partnership; and

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**(iii)** Transactions to which section 707(a) applies (including the application of section 707(b)).

**(b) Factors that affect the determination of partnership items.** The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.

**(c) Illustrations—(1) In general.** This paragraph (c) illustrates the provisions of paragraph (a)(4) of this section. The determinations illustrated in this paragraph (c) that the partnership is required to make are not exhaustive; there may be additional determinations that the partnership is required to make which relate to a transaction listed in paragraph (a)(4) of this section. The critical element is that the partnership needs to make a determination with respect to a matter for the purposes stated; failure by the partnership actually to make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a partnership item.

**(2) Contributions.** For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

**(i)** The character of the amount received from a partner (for example, whether it is a contribution, a loan, or a repayment of a loan);

**(ii)** The amount of money contributed by a partner;

**(iii)** The applicability of the investment company rules of section 721(b) with respect to a contribution; and

**(iv)** The basis to the partnership of contributed property (including necessary preliminary determinations, such as the partner's basis in the contributed property).

To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. For example, it may be necessary to determine whether contribution of the property causes recapture by the contributing partner of the investment credit under section 47 in certain circumstances in which that determination is irrelevant to the partnership.

**(3) Distributions.** For purposes of its books and records, or for purposes of furnishing information to a partner, the partnership needs to determine:

**(i)** The character of the amount transferred to a partner (for example, whether it is a distribution, a loan, or a repayment of a loan);

**(ii)** The amount of money distributed to a partner;

**(iii)** The adjusted basis to the partnership of distributed property; and

**(iv)** The character of partnership property (for example, whether an item is inventory or a capital asset).

To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. Such other information would include those factors used in determining the partner's basis for the partnership interest that are not themselves partnership items, such as the amount that the partner paid to acquire the partnership interest from a transferor partner if that transfer was not covered by an election under section 754.

**(4) Transactions to which section 707 (a) applies.** For purposes of its books and records, the partnership needs to determine:

**(i)** The amount transferred from the partnership to a partner or from a partner to the partnership in any transaction to which section 707(a) applies;

**(ii)** The character of such an amount (for example, whether or not it is a loan; in the case of amounts paid over time for the purchase of an asset, what portion is interest); and

**(iii)** The percentage of the capital interests and profits interests in the partnership owned by each partner.

To the extent that a determination of an item relating to a transaction to which section 707(a) applies can be made from these and similar determinations that the partnership is required to make, therefore, that item is a partnership item. To the extent that that determination requires other information, however, that item is not a partnership item. An example of such other information is the cost to the partner of goods sold to the partnership.

**(d) Effective date.** This section shall apply with respect to partnership taxable years beginning after September 3, 1982. This section shall also apply with respect to any partnership taxable year ending after September 3, 1982, if with respect to that year there is an agreement entered into pursuant to section 407(a)(3) of the Tax Equity and Fiscal Responsibility Act of 1982.

**Credits**

[T.D. 8082, 51 FR 13214, April 18, 1986; 51 FR 19062, May 27, 1986]

SOURCE: 32 FR 15241, Nov. 3, 1967; T.D. 9610, 78 FR 5994, Jan. 28, 2013; T.D. 9628, 78 FR 49369, Aug. 14, 2013; T.D. 9679, 79 FR 41891, July 18, 2014; T.D. 9687, 79 FR 47264, Aug. 12, 2014; T.D. 9764, 81 FR 25334, April 28, 2016; T.D. 9768, 81 FR 27322, May 6, 2016; T.D. 9780, 81 FR 51797, Aug. 5, 2016; T.D. 9844, 84 FR 6530, Feb. 27, 2019; T.D. 9849, 84 FR 9239, March 14, 2019; T.D. 9860, 84 FR 24382, May 28, 2019; T.D. 9922, 85 FR 72074, Nov. 12, 2020; T.D. 9940, 85 FR 83447, Dec. 22, 2020; T.D. 9964, 87 FR 50244, Aug. 16, 2022; T.D. 9969, 87 FR 75489, Dec. 9, 2022; T.D. 9972, 88 FR 11766, Feb. 23, 2023; T.D. 9988, 89 FR 17595, March 11, 2024; T.D. 9995, 37774, May 6, 2024; T.D. 10011, 89 FR 87785, Nov. 5, 2024; T.D. 10013, 89 FR 93175, Nov. 26, 2024; T.D. 10017, 89 FR 104422, Dec. 23, 2024; T.D. 10026, 90 FR 3021, Jan. 14, 2025; T.D. 10030, 90 FR 3662, Jan. 15, 2025, unless otherwise noted.

AUTHORITY: 26 U.S.C. 7805.; Section 301.1474–1 also issued under 26 U.S.C. 1474(f).; Section 301.6011–2 also issued under 26 U.S.C. 6011(e).; Section 301.6011–3 also issued under 26 U.S.C. 6011.; Section 301.6011–5 also issued under 26 U.S.C. 6011.; Section 301.6011–6 also issued under 26 U.S.C. 6011(a).; Section 301.6011–7 also issued under 26 U.S.C. 6011(e).; Section 301.6011–10 also issued under 26 U.S.C. 6011.; Section 301.6011–11 also issued under 26 U.S.C.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

6011.; Section 301.6011–12 also issued under 26 U.S.C. 6011.; Section 301.6011–13 also issued under 26 U.S.C. 6011.; Section 301.6011–14 also issued under 26 U.S.C. 6011.; Section 301.6011–15 also issued under 26 U.S.C. 6011.; Section 301.6012–2 also issued under 26 U.S.C. 6012.; Section 301.6033–4 also issued under 26 U.S.C. 6033.; Section 301.6036–1 also issued under 26 U.S.C. 6036.; Section 301.6037–2 also issued under 26 U.S.C. 6037.; Section 301.6039E–1 also issued under 26 U.S.C. 6039E.; Section 301.6050M–1 also issued under 26 U.S.C. 6050M.; Section 301.6057–3 also issued under 26 U.S.C. 6011 and 6057.; Section 301.6058–2 also issued under 26 U.S.C. 6011 and 6058.; Section 301.6059–2 also issued under 26 U.S.C. 6011 and 6059.; Section 301.6061–1 also issued under 26 U.S.C. 6061.; Section 301.6081–2 also issued under 26 U.S.C. 6081(a).; Section 301.6103(c)–1 also issued under 26 U.S.C. 6103(c).; Section 301.6103(h)(4)–1 also issued under 26 U.S.C. 6103(h)(4) and 26 U.S.C. 6103(q).; Section 301.6103(j)(1)–1 also issued under 26 U.S.C. 6103(j)(1) and 6103(q).; Section 301.6103(j)(5)–1 also issued under 26 U.S.C. 6103(j)(5).; Section 301.6103(k)(6)–1 also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(6)–1T also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(9)–1 also issued under 26 U.S.C. 6103(k)(9) and 26 U.S.C. 6103(q).; Section 301.6103(l)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(l)(14)–1 also issued under 26 U.S.C. 6103(l)(14).; Section 301.6103(l)(21)–(1) also issued under 26 U.S.C. 6103(l)(21) and 6103(q).; Section 301.6103(m)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(n)–1 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(q).; Section 301.6103(p)(2)(B)–1 also issued under 26 U.S.C. 6103(p)(2).; Section 301.6103(p)(2)(B)–1T also issued under 26 U.S.C. 6103(p)(2).; Sections 301.6103(p)(4)–1 and 301.6103(p)(7)–1T also issued under 26 U.S.C. 6103(p)(4) and (7) and (q).; Section 301.6104(a)–6(d) is also issued under 5 U.S.C. 552.; Section 301.6104(b)–1(d)(4) is also issued under 5 U.S.C. 552.; Section 301.6104(c)–1 also issued under 26 U.S.C. 6104(c).; Section 301.6104(d)–1(d)(3)(i) is also issued under 5 U.S.C. 552.; Section 301.6104(d)–2 also issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–3 also issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–4 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6104(d)–5 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6109–1 also issued under 26 U.S.C. 6109 (a), (c), and (d).

Section 301.6109–3 also issued under 26 U.S.C. 6109.; Section 301.6111–1T also issued under 26 U.S.C. 6111.; Section 301.6111–2T also issued under 26 U.S.C. 6111(f)(4).; Section 301.6111–3 also issued under 26 U.S.C. 6111.; Section 301.6111–3T also issued under 26 U.S.C. 6111.; Section 301.6112–1T also issued under 26 U.S.C. 6112.; Section 301.6114–1 also issued under 26 U.S.C. 6114.; Section 301.6213–2 also issued under 26 U.S.C. 6213.; Section 301.6221(a)–1 also issued under 26 U.S.C. 6221.; Section 301.6221(b)–1 also issued under sections 6221 and 6241.; Section 301.6222–1 also issued under 26 U.S.C. 6222 and 6223.; Section 301.6222(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(a)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(a)–2T

also issued under 26 U.S.C. 6230(k).; Section 301.6223(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6223(c)–1T also issued under 26 U.S.C. 6223(c) and 6230 (i) and (k).; Section 301.6223(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(e)–2T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(g)–1T also issued under 26 U.S.C. 6223(g) and 6230 (i) and (k).; Section 301.6223(h)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6224(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6224(c)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6225–1 also issued under 26 U.S.C. 6225.; Section 301.6225–2 also issued under 26 U.S.C. 6223 and 6225.; Section 301.6225–3 also issued under 26 U.S.C. 6225.; Section 301.6226–1 also issued under 26 U.S.C. 6223 and 6226.; Section 301.6226–2 also issued under 26 U.S.C. 6226.; Section 301.6226–3 also issued under 26 U.S.C. 6226.; Section 301.6226(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6227–1 also issued under 26 U.S.C. 6223 and 6227.; Section 301.6227–2 also issued under 26 U.S.C. 6227.; Section 301.6227–3 also issued under 26 U.S.C. 6227.; Section 301.6229(c)(2)–1 is also issued under 26 U.S.C. 6230(k).; Section 301.6229(c)(2)–1T is also issued under 26 U.S.C. § 6230(k).; Section 301.6231–1 also issued under 26 U.S.C. 6231.; Section 301.6231(a)(6)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(a)(7)–1 also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6231(a)(7)–2 also issued under 26 U.S.C. 6230 (i) and (k).

Section 301.6231(a)(12)–1T also issued under 26 U.S.C. 6230(k) and 6231(a)(12).; Section 301.6231(c)–1 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–2 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–3T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–4T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–5T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–6T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–7T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–8T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(d)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6231(f)–1T also issued under 26 U.S.C. 6230 (i) and (k) and 6231(f).; Section 301.6232–1 also issued under 26 U.S.C. 6232.; Section 301.6233–1T also issued under 26 U.S.C. 6230(k) and 6233.; Section 301.6233(a)–1 also issued under 26 U.S.C. 6233.; Section 301.6233(b)–1 also issued under 26 U.S.C. 6233.; Section 301.6234–1 also issued under 26 U.S.C. 6234.; Section 301.6235–1 also issued under 26 U.S.C. 6235.; Section 301.6241–1 also issued under sections 48D(d), 6241, and 6417.; Section 301.6241–2 also issued under 26 U.S.C. 6241.; Section 301.6241–3 also issued under 26 U.S.C. 6241.; Section 301.6241–4 also issued under 26 U.S.C. 6241.; Section 301.6241–5 also issued under 26 U.S.C. 6241.; Section 301.6241–6

also issued under 26 U.S.C. 6241.; Section 301.6241–7 also issued under sections 48D(d), 6241, and 6417.; Section 301.6311–2 also issued under 26 U.S.C. 6311.; Section 301.6323(f)–(1)(c) also issued under 26 U.S.C. 6323(f)(3).; Section 301.6325–1T also issued under 26 U.S.C. 6326.; Section 301.6335–1 also issued under 26 U.S.C. 6335(e)(2).; Section 301.6343–1 also issued under 26 U.S.C. 6343.; Section 301.6343–2 also issued under 26 U.S.C. 6343.; Section 301.6402–2(g) also issued under 26 U.S.C. 6402(n).; Section 301.6402–3 also issued under 95 Stat. 357 amending 88 Stat. 2351.; Section 301.6402–7 also issued under 26 U.S.C. 6402(i) and 6411(c).; Section 301.6404–2 also issued under 26 U.S.C. 6404.; Section 301.6404–3 also issued under 26 U.S.C. 6404(f)(3).; Section 301.6621–1 also issued under 26 U.S.C. 6230(k).; Section 301.6689–1 also issued under 26 U.S.C. 6689(a), 26 U.S.C. 6227(d), and 26 U.S.C. 6241(11).; Section 301.6689–1T also issued under 26 U.S.C. 6689(a).; Section 301.6708–1 also issued under 26 U.S.C. 6708.; Section 301.6721–1 also issued under 26 U.S.C. 6011 and 6721.; Section 301.6751(b)–1(a)(4) also issued under 26 U.S.C. 6751(b)(1).; Section 301.7216–2, paragraphs (o) and (p) also issued under 26 U.S.C. 7216(b)(3).; Section 301.7502–1 also issued under 26 U.S.C. 7502.; Section 301.7502–2 also issued under 26 U.S.C. 7502.; Section 301.7507–1 also issued under 26 U.S.C. 597.; Section 301.7507–9 also issued under 26 U.S.C. 597.; Section 301.7508–1 also issued under 26 U.S.C. 7508(a)(1)(K).; Section 301.7508A–1 also issued under 26 U.S.C. 7508(a)(1)(K) and 7508A(a).

Section 301.7605–1 also issued under Section 6228(b) of the Technical and Miscellaneous Revenue Act of 1988.; Sections 301.7623–1 through 301.7623–4 also issued under 26 U.S.C. 7623.; Section 301.7624–1 also issued under 26 U.S.C. 7624.; Section 301.7701–2 also issued under 26 U.S.C. 7701.; Sections 301.7701(b)–1 through 301.7701(b)–9 also issued under 26 U.S.C. 7701(b)(11).; Section 301.7701(i)–1(g)(1) also issued under 26 U.S.C. 7701(i)(2)(D).; Section 301.7701(i)–4(b) also issued under 26 U.S.C. 7701(i)(3).; Section 301.7705–1 also issued under 26 U.S.C. 7705(h).; Section 301.7705–2 also issued under 26 U.S.C. 7705(h).; Section 301.7803–2 is also issued under 26 U.S.C. 7803(e).; Section 301.7803–3 is also issued under 26 U.S.C. 7803(e).; Section 301.9000–1 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–2 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–3 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–4 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–5 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–6 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9100–1T also issued under 26 U.S.C. 6081.; Section 301.9100–2T also issued under 26 U.S.C. 6081.; Section 301.9100–3T also issued under 26 U.S.C. 6081.; Section 301.9100–4T also issued under 26 U.S.C. 168(f)(8)(G).; Section 301.9100–7T also issued under 26 U.S.C. 42, 48, 56, 83, 141, 142, 143, 145, 147, 165, 168, 216, 263, 263A, 448, 453C, 468B, 469, 474, 585, 616, 617, 1059, 2632, 2652, 3121, 4982, 7701; and under the Tax Reform Act of 1986, 100 Stat. 2746, sections 203, 204, 243, 311, 646, 801, 806, 905, 1704, 1801, 1802, and 1804.; Section 301.9100–8 also issued under 26 U.S.C. 1(i)(7), 41(h), 42(b)(2)(A)(ii), 42(d)(3), 42(f)(1), 42(g)(3), 42(i)(2)(B), 42(j)(5)(B), 121(d)(9), 142(i)(2), 165(l), 168(b)(2), 219(g)(4), 245(a)(10), 263A(d)(1), 263A(d)(3)(B), 263A(h), 460(b)(3), 643(g)

(2), 831(b)(2)(A), 835(a), 865(f), 865(g)(3), 865(h)(2), 904(g)(10), 2056(b)(7)(c)(ii), 2056A(d), 2523(f)(6)(B), 3127, and 7520(a); the Technical and Miscellaneous Revenue Act of 1988, 102 Stat. 3324 [So in original; probably should read "102 Stat. 3342".], sections 1002(a)(23)(B), 1005(c)(11), 1006(d)(15), 1006(j)(1)(C), 1006(t)(18)(B), 1012(n)(3), 1014(c)(1), 1014(c)(2), 2004(j)(1), 2004(m)(5), 5012(e)(4), 6181(c)(2), and 6277; and under the Tax Reform Act of 1986, 100 Stat. 2746, section 905(a).; Sections 301.9100–9T, 301.9100–10T and 301.9100–11T also issued under 26 U.S.C. 1103 (g) and (h) and 6158(a).; Sections 301.9100–13T, 301.9100–14T and 301.9100–15T also issued under 26 U.S.C. 108(d)(8) and 1017(b)(3)(E).; Section 301.9100–16T also issued under 26 U.S.C. 463(d).; Section 301.9100–22T is also issued under section 1101(g)(4) of Public Law 114–74.

## HISTORICAL NOTES

### Effective and Applicability Notes

The regulations shall apply with respect to partnership taxable years beginning after September 3, 1982. However, if a partnership and the Service agree to accelerate the effective date for the consolidated proceedings pursuant to section 407(a)(3) of the Tax Equity and Fiscal Responsibility Act of 1982, the regulations shall apply with respect to that partnership for any partnership taxable year ending after September 3, 1982.

Notes of Decisions (44)

Current through July 25, 2025, 90 FR 35240. Some sections may be more current. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.