No. 25-1349

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

DENHAM CAPITAL MANAGEMENT LP, DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER,

*Petitioners-Appellants*,

v.

SCOTT BESSENT, ACTING COMMISSIONER, INTERNAL REVENUE SERVICE,

*Respondent-Appellee.*

On Appeal from the United States Tax Court
Case No. 9973-23

## BRIEF FOR *AMICUS CURIAE* TAX LAW CENTER AT NYU LAW IN SUPPORT OF RESPONDENT-APPELLEE

JULIE CIAMPORCERO AVETTA
1st Cir. Bar No. 1141701
Tax Law Center at NYU Law
110 West 3rd Street #204
New York, NY 10012
(212) 998-6002
julie.avetta@nyu.edu

December 3, 2025                     *Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Appellate Procedure 26.1, *amicus curiae* the Tax Law Center at NYU Law states that it is a non-profit, tax-exempt organization at New York University School of Law. The Tax Law Center has no parent corporation or publicly owned corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

Table of Contents ........................................................................... i

Table of Authorities ...................................................................... ii

Interest of *Amicus Curiae* and Summary of Argument ........................... 1

Argument ...................................................................................... 3

    I.    The text, structure, logic, and history of §1402(a)(13) show that its exemption for "limited partners" applies only to those who function as passive investors. ...................... 3

        A.    In 1977, the term "limited partner" was commonly understood to refer to a passive investor ........................ 4

        B.    The statute's surrounding text and structure confirm that its drafters intended "limited partner" to mean a passive investor. ............................ 12

        C.    Historical context further confirms that "limited partner" was meant as a proxy for "passive investor." ................................................................. 19

    II.    Courts have long rejected attempts to apply the federal tax code based on state-law labels "in the absence of statutory language" requiring such an approach. .................. 22

Conclusion ................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Adams v. United States*,
218 F.3d 383 (5th Cir. 2000) ................................................................9

*Auerbach Shoe Co. v. Commissioner*,
216 F.2d 693 (1st Cir. 1954)................................................................29

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .............................................................................5

*Burk-Waggoner Oil Ass'n v. Hopkins*,
269 U.S. 110 (1925) ...........................................................................23

*Burnet v. Harmel*,
287 U.S. 103 (1932) ..................................................................... passim

*Carriage Square, Inc. v. Commissioner*,
69 T.C. 119, 133 (1977)........................................................................9

*Commissioner v. Tower*,
327 U.S. 280 (1946) ...........................................................................23

*Draper's Estate v. Commissioner*,
536 F.2d 944 (1st Cir. 1976)...............................................................23

*Estate of Meyer v. Commissioner*,
503 F.2d 556 (9th Cir. 1974) ................................................................9

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ...........................................................................12

*Garnett v. Commissioner*,
132 T.C. 368 (2009)..............................................................................6

*Gitlitz v. Commissioner*,
531 U.S. 206 (2001) ...........................................................................32

*Goodman v. Epstein*,
582 F.2d 388 (7th Cir. 1978), *cert. denied*, 440 U.S. 939 (1979)............9

*Greenough v. Commissioner*,
74 F.2d 25 (1st Cir. 1934)...................................................................22

*Hassett v. Associated Hospital Service Corp. of Mass.*,
125 F.2d 611 (1st Cir. 1942), *cert. denied*, 316 U.S. 672 (1942) ..........24

ii

*Klebanow v. New York Produce Exchange*,
  344 F.2d 294 (2d Cir. 1965) ......................................................................10

*Laney v. Commissioner*,
  674 F.2d 342 (5th Cir. 1982) .....................................................................10

*Life Care Centers of America, Inc. v. Charles Town Associates Limited Partnership*,
  79 F.3d 496 (6th Cir. 1996) .......................................................................11

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ...................................................................................19

*Lyeth v. Hoey*,
  305 U.S. 188 (1938) .............................................................................22, 24

*Morgan v. Commissioner*,
  309 U.S. 78 (1940) .....................................................................................23

*New Prime Inc. v. Oliveira*,
  586 U.S. 105 (2019) ................................................................5, 9, 12, 24

*Obduskey v. McCarthy & Holthus LLP*,
  586 U.S. 466 (2019) ...................................................................................19

*Plasteel Prods. Corp. v. Eisenberg*,
  170 F. Supp. 100 (D. Mass. 1959), *aff'd sub nom. Plasteel Prods. Corp. v. Helman*, 271 F.2d 354 (1st Cir. 1959) ...........................................10

*Public Interest Legal Foundation, Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024) ........................................................................12

*Renkemeyer, Campbell & Weaver, LLP v. Commissioner*,
  136 T.C. 137 (2011) ..............................................................................9, 21

*Soroban Capital Partners LP v. Commissioner*,
  161 T.C. 310, 317 (2023) ..........................................................................21

*Soroban Capital Partners LP v. Commissioner*,
  T.C. Memo. 2025-52, T.C. Docket No. 16217-22 (May 28, 2025) (Order and Decision) ............................................................................................31

*Southwest Airlines Co. v. Saxon*,
  596 U.S. 450 (2022) ................................................................................4, 5

*Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund,*
943 F.3d 49 (1st Cir. 2019), *cert. denied,* 141 S. Ct. 372 (2020) ..........23

*United States v. Kennedy Constr. Co. of NSB,*
572 F.2d 492 (5th Cir. 1978) ..............................................................24

*United States v. Pelzer,*
312 U.S. 399 (1941) ...........................................................................29

## Statutes

26 U.S.C. §448 ...................................................................................17

26 U.S.C. §461(k) (2025)....................................................................26

26 U.S.C. §469 ........................................................................17, 18, 26

26 U.S.C. §469(h)(2)...........................................................................18

26 U.S.C. §512(b)(13)(B) (1958) ........................................................25

26 U.S.C. §581 ...................................................................................25

26 U.S.C. §706 ...................................................................................14

26 U.S.C. §1256...................................................................................17

26 U.S.C. §1256(e)(3)..........................................................................17

26 U.S.C. §1256(e)(3)(B). ..............................................................17, 26

26 U.S.C. §1256(e)(3)(C)(i). ...............................................................17

26 U.S.C. §1258...................................................................................17

26 U.S.C. §1401(a) ...............................................................................3

26 U.S.C. §1401(b) ...............................................................................3

26 U.S.C. §1402(a) .......................................................................passim

26 U.S.C. §1402(a)(1)..........................................................................15

26 U.S.C. §1402(a)(2)..........................................................................15

26 U.S.C. §1402(a)(3)..........................................................................15

26 U.S.C. §1402(a)(10)...................................................................13, 15

26 U.S.C. §1402(a)(13)...................................................................passim

26 U.S.C. §1402(a)(17) ............................................................ 15

26 U.S.C. §1411 ...................................................................... 19

26 U.S.C. §7701(a) ................................................................. 25

An Act to amend section 512 of the Internal Revenue Code of 1954, Pub. L. 85-367, 72 Stat. 80 (1958) ..................................................... 25

Del. Code. Ann. Tit. 6, §1707(a)-(b) (1974) ............................... 29

Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, §503(a), 95 Stat. 172, 327–30 (1981) ................................................................ 17

Nev. Rev. Stat. §88.080 (1973) ................................................ 29

Tax Reform Act of 1976, Pub. L. No. 94-455, §207(a)(1), 90 Stat. 1520, 1536-37 (1976). ................................................................... 26

Tax Reform Act of 1986, Pub. L. 99-514, §501(a), 100 Stat. 2085, 2233-41 (1986) .......................................................................... 18

## Treasury Regulations (26 C.F.R.)

§1.1256(e)-2(c) ....................................................................... 17

§301.7701-1(c) (1977) ............................................................. 28

§301.7701-2 (1977) ................................................................. 27

§301.7701-2(c)(4) (1960) ......................................................... 28

§301.7701-2(d)(2) (1960) ......................................................... 26

## Legislative Materials

H.R. Rep. No. 95-702, pt. I (1977) ...................................... 20, 21

Staff of Joint Comm. on Internal Revenue Tax'n, Tax Shelters, Use of Limited Partnerships, Etc.: Prepared for the Use of the Committee on Ways and Means, JCS-29-75 (Comm. Print 1975) .............................. 27

Staff of Joint Comm. on Tax'n, 99th Cong., General Explanation of the Tax Reform Act of 1986, JCS-10-87 (Comm. Print 1987) .................... 18

## Other Authorities

68 C.J.S. Partnership § 579 (May 2025)................................................10

Alan R. Bromberg, *Crane & Bromberg on Partnership* (1968)...........8, 12

ALI-ABA Course of Study, *Partnerships: UPA, ULPA, Securities, Taxation, and Bankruptcy, Substantive Partnership Law: Limited Partnerships* (Mar. 3, 1977). .................................................................6

*Black's Law Dictionary* (4th ed. 1968).....................................................7

Christine Hurt, D. Gordon Smith, Alan R. Bromberg, Larry E. Ribstein, 3 Bromberg & Ribstein, *Partnership* (1988)...........................................9

David W. Mayo & Rebecca C. Freeland, *Delimiting Limited Partners: Self-Employment Tax of Limited Partners*, 66 Tax Law. 391 (2013)...6, 17, 28, 29

F. Hodge O'Neal, *Comments on Recent Developments in Limited Partnership Law*, 1978 Wash. Univ. L. Q. 669 (1979)..........................30

FY2025 IRS Cong. Budget Justification & Ann. Performance Rep. and Plan 38, IRS Publication 4450 ..............................................................31

George K. Yin, *The Future Taxation of Private Business Firms*, 4 Fla. Tax Rev. 141 (1999) ...............................................................................27

Heather M. Field, *Checking in on Check the Box*, 42 Loy. L.A. L. Rev. 451 (2009)..............................................................................................18

J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice, § 13.3 (2025 ed.) ......................................................................................................11

Jeffrey D. Sperling & Lawrence Lokken, *The Limited Partnership Tax Shelter: An Investment Vehicle Under Attack*, 29 Fla. L. Rev. 1 (1976) ...........................................................................................................27

John R. Marquis, *Current Status of Limited Liability Companies and the Self-Employment Income Tax*, 77 Mich. Bar J. 440 (May 1998) .....7

Karen C. Burke, *Exploiting the Medicare Tax Loophole*, 21 Fla. Tax Rev. 570 (2018) ...................................................................................7

Miles Johnson et al., Brief Redux: Further Analysis on "Limited Partner" in Self-Employment Tax Cases, Tax Law Center (2025)28, 29

New York State Bar Association Tax Section, Comments on Proposed Regulations Relating to Definition of Limited Partner for Self-Employment Tax Purposes, Report No. 896 (Mar. 11, 1997) .............. 10

New York State Bar Association Tax Section, Comments on the Application of Employment Taxes to Partners and on the Interaction of the Section 1401 Tax with the New Section 1411, Report No. 1247 (2011) ................................................................................. 19, 21

*Oxford English Dictionary on Historical Principles* (1973) .................... 11

Revised Uniform Limited Partnership Act §303(a), 6B U.L.A. 180 (1976) ............................................................................................... 8

Revised Uniform Partnership Act §405 (1997) ...................................... 10

Rowley & Scott, *Rowley on Partnership including a Full Consideration of Joint Adventures, Limited Partnerships, Bankruptcy, and All Matters Collateral to the Law of Partnership* (1960) ............................ 8

Sheldon I. Banoff, *Tax Distinctions between Limited and General Partners: An Operational Approach*, 35 Tax L. Rev. 1 (Fall 1979) ....... 8

T.D. 6503, 1960-2 CB 409, 25 Fed. Reg. 10928 (November 17, 1960) .... 27

## INTEREST OF *AMICUS CURIAE* AND SUMMARY OF ARGUMENT[1]

The Tax Law Center at NYU Law is a nonpartisan, nonprofit center dedicated to improving the integrity of the federal tax system. Its staff comprises tax law experts with experience in policymaking and administration as well as practice of tax law on behalf of clients. The Center aims to protect and preserve tax revenues, advance equity through the tax system, and improve tax administration. Drawing on its expertise in partnership taxation, the Center submits this brief on the meaning of 26 U.S.C. §1402(a)(13) and the implications of this case for the federal tax system.

Section 1402(a)(13) exempts from the self-employment tax "the distributive share of any item of income or loss of a limited partner, as such." This brief addresses one of two legal questions on appeal: what the term "limited partner" meant when Congress enacted this statute in 1977. As the government explains, and this brief expands upon, in 1977, "limited partner" was commonly understood to refer to a passive investor

---

[1] This brief does not represent the views, if any, of NYU School of Law. No counsel for a party authored any part of this brief, no one other than *amicus curiae* paid for its preparation or submission, and all parties have consented to its filing.

1

in a partnership, rather than someone who actively conducted the partnership's business. By limiting the exemption to the distributive share received by a "limited partner, as such," Congress sought to exclude from the self-employment tax only passive investment income and not earnings from work.

The statute's text, structure, logic, and history confirm this reading. Congress's intent, throughout §1402(a), was to distinguish between *active* income derived from labor (which is subject to the self-employment tax) and *passive* income *not* derived from labor (which is not subject to the tax). Congress drew this line in §1402(a)(13). It exempted a limited partner's "pass-through" share of partnership income, received in the capacity of an investor in the partnership, but not any "guaranteed payments" received for actual services provided. This understanding of the statute is the only one that makes sense given its historical context. Congress enacted §1402(a)(13) to prevent passive investments in partnerships from generating Social Security benefits by triggering self-employment tax, so it limited the tax to earnings from work. In doing so, it did not seek to create a new federal tax break for business owners who might someday qualify as "limited partners" under local law.

2

Yet that is appellants' position. Rather than apply the ordinary meaning of "limited partner" at the time of the statute's enactment, appellants would have §1402(a)(13) incorporate the evolving patchwork of state-law labels. But state-law labels do not determine the result under federal tax law unless Congress says so "by express language or necessary implication." *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). Congress did neither here.

No statutory text directs the application of state-law labels, and applying the common meaning of "limited partner" in 1977 is consistent with—indeed, better accords with—the statute's text, structure, logic, and history. Allowing state-law labels to control would divorce the statute from its original purpose and enshrine an incorrect reading that has far-reaching negative impacts on the federal tax system as a whole. This Court should reject that reading.

## ARGUMENT

**I.    The text, structure, logic, and history of §1402(a)(13) show that its exemption for "limited partners" applies only to those who function as passive investors.**

Self-employment income is subject to Social Security and Medicare tax. 26 U.S.C. §§1401(a)-(b). For members of a partnership, the tax code defines self-employment income to generally include their distributive

3

share of income derived from the partnership's trade or business. 26 U.S.C. §1402(a). However, §1402(a)(13) excludes from self-employment income "the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in §707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services." 26 U.S.C. §1402(a)(13). Congress's decision to confine this exemption to income of "a limited partner, as such," is best read to limit it to income from passive investment (that is, income from capital), as opposed to income earned from controlling and conducting the partnership's business (that is, income from labor). That's because, when this provision was enacted in 1977, the term "limited partner" was commonly understood to refer to a passive investor, as distinct from a general partner. The statute's text, structure, logic, and history confirm that Congress used the term "limited partner" in this provision as a proxy for passive investor.

### A.   In 1977, the term "limited partner" was commonly understood to refer to a passive investor.

As always, statutory analysis "begin[s] with the text." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). In parsing the text, courts do not

4

ask how it might be understood by a "modern" reader, or how it might strike "lawyerly ears today." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). Instead, courts must give words in a statute their "ordinary, contemporary, common meaning[,]" *Saxon*, 596 U.S. at 455, as understood by "the ordinary public ... at the time of [] enactment[.]" *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654-55 (2020). Judges cannot "freely invest old statutory terms with new meanings[.]" *New Prime*, 586 U.S. at 113.

"[S]o, we orient ourselves to the time of the statute's adoption ... and begin by examining the key statutory terms," *Bostock,* 590 U.S. at 655, focusing on what they "usually meant" at that time, *New Prime*, 586 U.S. at 114. And "to discern that ordinary meaning, those words must be read and interpreted in their context, not in isolation." *Saxon*, 596 U.S. at 455 (cleaned up). The relevant question here is what "most people" in 1977 would have understood the key terms in §1402(a)(13) to mean in their context. *New Prime*, 586 U.S. at 114. In 1977, when Congress excluded from self-employment tax the income of "a limited partner, as such," those words were commonly understood to refer to the status of being a passive investor in a partnership.

5

**1.** In 1977, the ordinary meaning of "limited partner" was a passive investor in a partnership. As materials published in 1977 by leading legal organizations explained, a limited partner was "a partner in all respects like any other partner, except that to obtain the privilege of a limitation on his liability, he has conformed to the statutory requirements" by "refraining from participation in the conduct of the business." ALI-ABA Course of Study, *Partnerships: UPA, ULPA, Securities, Taxation, and Bankruptcy, Substantive Partnership Law: Limited Partnerships* (Mar. 3, 1977). Today, it is common for members of limited liability companies (LLCs) and limited liability partnerships (LLPs), entities typically treated as partnerships for federal-income-tax purposes, to participate in the entities' business. But in 1977, LLCs barely existed—only Wyoming had an LLC statute—and LLPs did not exist until 1991. *See Garnett v. Commissioner*, 132 T.C. 368, 374 (2009). Before LLCs and LLPs (which gradually took hold over several decades), *see* David W. Mayo & Rebecca C. Freeland, *Delimiting Limited Partners: Self-Employment Tax of Limited Partners*, 66 Tax Law. 391, 398-403 (2013), limited partners generally did not participate actively in the partnership's business.

Indeed, in 1977, state laws generally prevented limited partners from participating in a partnership's business. Karen C. Burke, *Exploiting the Medicare Tax Loophole*, 21 Fla. Tax Rev. 570, 578 (2018); *see also* John R. Marquis, *Current Status of Limited Liability Companies and the Self-Employment Income Tax*, 77 Mich. Bar J. 440, 440 (May 1998) (state law in 1977 "penalized a limited partner for excessive participation in the partnership's business affairs by taking away his or her limited liability"; consequently, Congress based the §1402(a)(13) exception "on the fundamental assumption that a limited partner does not participate to any significant degree in the management of the partnership"). *Black's Law Dictionary* reflected this understanding, distinguishing between "general partners" of a limited partnership, "by whom the business is conducted," and "special partners," who simply contribute capital and "are not liable for the debts of the partnership beyond the fund[s] so contributed." *Limited Partnership*, *Black's Law Dictionary* (4th ed. 1968). A well-known treatise on partnership law similarly explained that "the limited partner plays a negligible role in the partnership[:] He may not take part in control; his contributions may not be services." Alan R. Bromberg, *Crane & Bromberg on Partnership* 148

7

(1968); *see also* Rowley & Scott, *Rowley on Partnership including a Full Consideration of Joint Adventures, Limited Partnerships, Bankruptcy, and All Matters Collateral to the Law of Partnership* §53.0 (1960) (describing limited partners as akin to corporate shareholders because "management and control of the business … are restricted to the general partners"); Sheldon I. Banoff, *Tax Distinctions between Limited and General Partners: An Operational Approach*, 35 Tax L. Rev. 1, 10 (Fall 1979) ("A limited partner is, by design at least, a passive investor who does not take part in the management of the partnership's business[.]").

Even if limited partners were not categorically "barred from performing services for some compensation other than a share of profits, … doing so raise[d] the question whether [they were] taking part in control" of the business. Bromberg, *supra*, at 148, n.44. Any limited partner that could be viewed as "taking part in control" of the partnership risked losing limited-partner status, and thus limited liability. Revised Unif. Ltd. P'ship Act §303(a), 6B U.L.A. 180 (1976).

This fundamental understanding of limited partner status persisted for many years. Over a decade after §1402(a)(13) was enacted, a "leading treatise on partnership law," *Adams v. United States*, 218 F.3d

383, 389 (5th Cir. 2000), continued to recognize that "the interest of a limited partner in a limited partnership is generally akin to that of a passive investor," Christine Hurt, D. Gordon Smith, Alan R. Bromberg, Larry E. Ribstein, 3 Bromberg & Ribstein, *Partnership*, §12.01(a) (1988).

"What the dictionaries [and treatises] suggest, legal authorities confirm." *New Prime*, 586 U.S. at 115. The same year §1402(a)(13) was enacted, a Tax Court judge recognized that, "[i]n the usual limited partnership, the limited partners contribute substantial sums needed to earn the income and the general partner performs services." *Carriage Square, Inc. v. Commissioner*, 69 T.C. 119, 133 (1977) (Goffe, J., concurring); *see also Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137, 150 (2011) (in 1977, "individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations [] was the archetype of limited partners"). Circuit courts at the time also understood that, generally, a limited partner "may not actively participate in running the business[.]" *Est. of Meyer v. Commissioner*, 503 F.2d 556, 558 (9th Cir. 1974); *Goodman v. Epstein*, 582 F.2d 388, 407 n.51 (7th Cir. 1978), *cert. denied*, 440 U.S. 939 (1979) (because "a limited partner may not take part in the

9

control of the business[,] he must remain a passive investor"); *Laney v. Commissioner*, 674 F.2d 342, 348 (5th Cir. 1982) (noting general "requirement that a limited partner be a passive actor"); *see also Plasteel Prods. Corp. v. Eisenberg*, 170 F. Supp. 100, 102-3 (D. Mass. 1959), *aff'd sub nom. Plasteel Prods. Corp. v. Helman*, 271 F.2d 354 (1st Cir. 1959) ("The contributions of limited partners cannot be services."); *Klebanow v. New York Produce Exchange*, 344 F.2d 294, 297 (2d Cir. 1965).

In sum, §1402(a)(13) was "enacted at a time when state partnership laws required limited partners to be almost entirely passive investors." N.Y. State Bar Ass'n ("NYSBA") Tax Section, Comments on Proposed Regulations Relating to Definition of Limited Partner for Self-Employment Tax Purposes 2, Report No. 896 (Mar. 11, 1997). This is how the term was (and in many cases still is)[2] understood throughout the legal landscape.

---

[2] *See, e.g.*, 68 C.J.S. Partnership §579 (May 2025) ("Limited partners are presumed to be passive investors and accordingly enjoy limited liability similar to that of shareholders in a corporation. To the extent that a limited partner exceeds the role of a passive investor and exercises control over the business, protection as a limited partner may be forfeited because the rationale for insulation from liability no longer applies."); Revised Unif. P'ship Act §405, comment 2 (1997) ("Since

10

**2.** Nor did Congress use the term "limited partner" loosely. To ensure that the exemption served its purpose of excluding only passive investors from the self-employment tax, Congress specified that the exemption wouldn't apply to the entire distributive share of any "limited partner." Rather, the exemption would apply only to the extent that a partner *acts* as a "limited partner"—*i.e.*, as a passive investor. The statute restricts the exemption to a "limited partner, as such[.]" Thus, to qualify for the exemption, a limited partner must receive their "distributive share" of the partnership's income, 26 U.S.C. §1402(a)(13), "in the manner" of a limited partner. *Oxford English Dictionary on Historical Principles* (1973) (defining "as such" as "in the manner that"). The statute looks to whether someone receives their distributive share as a "limited partner" under the ordinary understanding of that term in

---

general partners are not passive investors like limited partners, RUPA does not authorize derivative actions, as does RULPA Section 1001."); J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice, §13.3 (2025 ed.) ("[L]imited partners are passive investors who have an expectation of profits derived solely from the general partners' efforts[.]"); *Life Care Centers of America, Inc. v. Charles Town Associates Limited Partnership*, 79 F.3d 496, 503 (6th Cir. 1996).

11

1977. It does not consider whether the subsequently enacted law of a particular state may define "limited partner" in some other way.

### B. The statute's surrounding text and structure confirm that its drafters intended "limited partner" to mean a passive investor.

If the phrase "limited partner, as such" didn't sufficiently establish that §1402(a)(13)'s exemption applies only to those who function as passive investors, "[m]ore confirmation yet comes from … [the rest of] the statutory text." *New Prime*, 586 U.S. at 116. "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36, 45 (1st Cir. 2024) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

**1.** The second half of §1402(a)(13) reinforces that the exemption applies only to the income that limited partners receive in their capacity as passive investors. A limited partner's ability to perform services for the partnership was tightly constrained in 1977 to ensure that they were not functioning as a general partner. *See* Bromberg, *supra*, at 148. In certain narrow cases, however, limited partners were permitted to

12

"perform[] services for some compensation other than a share of profits." *Id.* To focus the §1402(a)(13) exemption on income earned as a passive investor, Congress clarified that it would apply only to their "distributive share," earned in their capacity as a limited partner, and would not extend to any "guaranteed payments" paid to them for "services actually rendered[.]" 26 U.S.C. §1402(a)(13). The income from those services, unlike investment income, is income from work that falls outside the exemption. Thus, even when services were not enough to transform a limited partner into a general partner under 1977 state law, Congress made certain the compensation received for such services would be self-employment income.

The carve-out for "guaranteed payments" thus also reflects that §1402(a)(13) does not require an "all-or-nothing" approach to the level of activity required for limited-partner treatment. Congress could have required limited partners to provide "no services" to the partnership, as it did in §1402(a)(10) (exempting certain retirement payments), but it

13

sensibly chose not to. *See* U.S. Br. 60–62.[3] Instead, Congress employed a pre-existing term, "limited partner," that captured the purpose of the exemption.[4]

**2.** Section 1402(a)'s broader structure also confirms this reading. Section 1402(a) provides the general rule that income subject to self-employment tax includes income from "any trade or business carried on" by an individual, as well as the "distributive share … from any trade or

---

[3] In addition, the use of the phrase "other than" in §1402(a)(13) indicates that Congress may have been concerned that, but for the carve-out, guaranteed payments could have been treated as part of a limited partner's "distributive share" and therefore exempt from self-employment tax. 26 U.S.C. §1402(a)(13). Guaranteed payments are essentially treated the same as distributive share for certain tax purposes, *see, e.g.*, 26 U.S.C. §706(a), so Congress sensibly sought to clarify that they would *not* be treated as distributive share for this purpose.

[4] Appellants (at 39) argue that a passive-investor test that allows a "limited partner" to perform some services for the partnership "erases the line that Congress drew with the guaranteed-payments carveout," under which guaranteed payments and the distributive share of a "limited partner" are treated differently. But this conflates two separate questions: (1) who qualifies as a "limited partner" and (2) what portion of the income of a "limited partner" is subject to self-employment tax. So long as a partner is a "limited partner" under the functional test (which may occur even where the partner receives some guaranteed payments), the limited partner's guaranteed payments and distributive share are treated differently. A state-law limited partner's distributive share will only be subject to self-employment tax—and thus treated the same as any guaranteed payments—if the state-law limited partner fails to meet the functional test for "limited partner" status.

14

business carried on by a partnership of which [the individual] is a member." Subsections (a)(1) through (a)(17) modify this general rule through adjustments and exclusions. Several of these modifications (including the one at issue here) simply identify income types excluded from the self-employment tax even if they would otherwise satisfy §1402(a)'s general rule. *See* 26 U.S.C. §§1402(a)(1), (a)(2), (a)(3), (a)(10).

Notably, all these exclusions identify either investment-type income or income not otherwise derived from the provision of services. Rental income, dividends, and interest are all excluded—but only when not earned in a "trade or business[.]" 26 U.S.C. §1402(a)(1), (2). Gain from property dispositions is excluded if the property is held for investment— but not if it is "stock in trade" or inventory. *Id.* §1402(a)(3). Retirement payments are likewise excluded—but only if not derived from current services. *Id.* §1402(a)(10). And a limited partner's passive investment income is excluded—but not the compensation received for services they performed. *Id.* §1402(a)(13).

Congress carefully scoped the self-employment tax to apply to income from work. Under this framework, the self-employment tax applies by default to a partner's distributive share of partnership income

15

because partners are generally deemed, under §1402(a), to earn their share of partnership income in carrying on the partnership's business. However, certain partnership income that is not income from a trade or business is exempt because it is income from capital, not labor. Section 1402(a)(13) was drafted to serve the self-employment tax's broad purpose: to tax partnership income if and only if it qualifies, substantively, as self-employment income. Using the term "limited partner" allowed Congress to avoid a strict "no services" test (which would include too much capital income in the self-employment tax base) while still including in the base income appropriately treated as labor income. But to fulfill the statute's purpose, "limited partner" in §1402(a)(13) must mean a partner who does not *actually* carry on the partnership's business, *i.e.*, a partner whose activities are sufficiently passive for the partner to be deemed to earn their distributive share from capital rather than labor.

**3.** The use of "limited partner" in §1402(a)(13) as a proxy for "passive investor" was not an isolated example, but rather Congress's common practice. After 1977, Congress continued to use "limited partner" elsewhere in the tax code "as a proxy for being a passive investor in a

16

business—or just a passive investor[.]" Mayo & Freeland, *supra*, at 425; *see also id.* at 414–19 (analyzing a wide range of tax provisions that use the term "limited partner," including 26 U.S.C. §§448, 469, 1256, and 1258).

Take, for example, 26 U.S.C. §1256's mark-to-market rules, enacted in 1981. Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, §503(a), 95 Stat. 172, 327–30 (1981). Section 1256(e)(3) applies mark-to-market accounting to certain transactions entered into by "syndicates." Whether an entity is a syndicate then depends on the percentage of losses "allocable to limited partners or limited entrepreneurs[.]" 26 U.S.C. §1256(e)(3)(B). The statute excludes from "limited partner" status anyone "who actively participates … in the management" of the partnership. *Id.* §1256(e)(3)(C)(i). An example in the regulations clarifies that someone who "provides all of the goods and services" in an entity's business is not a limited partner, whereas someone that "does not participate in [the entity]'s business" is a limited partner. Treasury Regulation (Treas. Reg.) §1.1256(e)-2(c) (26 C.F.R.). Section 1256 and its accompanying rules therefore reflect Congress's understanding that a

17

partner's "limited" status is determined by reference to their level of activity in the underlying business.

In 1986, Congress applied this understanding to 26 U.S.C. §469's rules on passive activity losses. Tax Reform Act of 1986, Pub. L. 99-514, §501(a), 100 Stat. 2085, 2233-41 (1986). Like §1402(a)(13), §469 generally predates the steep rise in popularity of LLCs and similar entities and the ensuing evolution in state partnership law. *See* Heather M. Field, *Checking in on Check the Box*, 42 Loy. L.A. L. Rev. 451, 462 (2009). §469 presumes a "limited partner" does not "materially participate[]" in the business except as provided in regulations. 26 U.S.C. §469(h)(2). This presumption was appropriate because, "[i]n general, under relevant State laws, a limited partnership interest is characterized by limited liability, and in order to maintain limited liability status, a limited partner, as such, cannot be active in the partnership's business." Staff of Joint Comm. on Tax'n, 99th Cong., General Explanation of the Tax Reform Act of 1986, JCS-10-87, at 236 (Comm. Print 1987). Thus, a decade after enacting §1402(a)(13), Congress continued to write statutes

18

with the understanding that limited partners did not participate significantly in partnership business.[5]

These statutes, and related Congressional statements, further emphasize that Congress has, over a period of time that includes the enactment of §1402(a)(13), understood "limited partner" to refer to a passive investor. This has been true even where the tax code allows a "limited partner" to provide some minimal level of services—as §1402(a)(13) does.

### C.    Historical context further confirms that "limited partner" was meant as a proxy for "passive investor."

The statute's historical context further reinforces this reading. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 393 (2024) (invoking the APA's history to "underscore[]" its "plain meaning"); *Obduskey v. McCarthy & Holthus LLP,* 586 U.S. 466, 477 (2019). As the government

---

[5] The enactment of the Net Investment Income Tax (NIIT), 26 U.S.C. §1411, in 2011 underscored Congress' understanding that, for self-employment tax purposes, "limited partner" means a passive investor. The NIIT was framed as a tax on "income that is exempt from [self-employment tax] because it is not sufficiently linked to a trade or business to be 'earned income' (i.e., is passive income)." NYSBA Tax Section, Comments on the Application of Employment Taxes to Partners and on the Interaction of the Section 1401 Tax with the New Section 1411 38, Report No. 1247 (2011) (hereinafter "NYSBA 2011").

19

explains (at 35–36), Congress enacted §1402(a)(13) to prevent passive investments in partnership businesses from generating Social Security benefits by triggering the self-employment tax. Congress sought to exclude income earned as a passive investor from the self-employment tax base, and thus from generating Social Security benefits, by limiting the tax to "earnings from work." *See* H.R. Rep. No. 95-702, pt. I, at 40-41 (1977). As discussed above, that basic distinction—between investment income and earnings from work—runs through the statute, explaining both the distinction between a "limited partner" and a general partner (as understood at the time) and the carve-out for "guaranteed payments" received for services. 26 U.S.C. §1402(a)(13).

Before the statute's enactment, Congress "bec[a]me increasingly concerned about situations in which certain business organizations solicit[ed] investments in limited partnerships as a means for an investor to become insured for social security benefits." H.R. Rep. No. 95-702, pt. I, at 40-41 (1977). Because the income fell within the self-employment tax base, the investments generated Social Security benefits. "In these situations, the investor in the limited partnership performs no services for the partnership and the social security coverage which results is, in

20

fact, based on income from an investment." *Id.* at 41. These arrangements were thus inconsistent with the Social Security program's design to "partially replace lost earnings from work." *Id.*

In keeping with §1402(a)'s other exclusions, Congress was clear that it added subsection (a)(13) to ensure that the self-employment tax would apply just to "earnings from work"—and therefore that Social Security would benefit workers and not mere investors. *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310, 317 (2023); *see also* NYSBA 2011, *supra*, at 8; *Renkemeyer*, 136 T.C. at 150. By using the term "limited partner" and combining it with a carve-out for guaranteed payments, Congress drew a line between investment income and "earnings from work." *Id.*

Effectuating this line-drawing demands a functional test, not a bright-line rule. *Contra* Appellants' Br. 46-47. When a state-law limited partner is highly active (indeed, instrumental) in operating the partnership's business, that partner's distributive share will, as a matter of substance, represent income from services rather than from investment. Accordingly, just like the distributive share of a general

21

partner, it is properly included in the Social Security benefit wage base—and the self-employment tax base.

## II. Courts have long rejected attempts to apply the federal tax code based on state-law labels "in the absence of statutory language" requiring such an approach.

Appellants assert that Congress intended the meaning of "limited partner" in §1402(a)(13) to depend on determinations made under state law—*i.e.*, that a limited partner is a partner of a state-law limited partnership with limited liability. *See* Appellants' Br. 22-23, 25-26. Thus, appellants argue that the meaning of §1402(a)(13) depends on the ever-changing patchwork of state-law labels. But "in the absence of language evidencing a different purpose," the Supreme Court has advised that a provision of the Internal Revenue Code should be read "so as to give a uniform application to a nationwide scheme of taxation." *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938) (quoting *Burnet*, 287 U.S. at 110); *see also, e.g.*, *Greenough v. Commissioner*, 74 F.2d 25, 26 (1st Cir. 1934). There is no reason, based on the statutory text or otherwise, to diverge from that general command here. To the contrary, applying state-law labels would undermine the purpose of the provision and the uniformity of federal taxation.

22

For more than 90 years, the Supreme Court has been clear that in interpreting "a statute enacted by Congress in the exercise of its plenary power under the constitution, to tax income, … [i]t is the will of Congress which controls." *Burnet*, 287 U.S. at 110. "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." *Id.*

That clear, longstanding instruction makes good sense. Congress's customary choice not to adopt state-law labels allows the federal government to attach federal tax consequences separate from the choices that individual states have made about distinctions between entity forms. *See, e.g.*, *Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*, 943 F.3d 49, 57-59 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 372 (Mem.) (2020) (citing *Commissioner v. Tower*, 327 U.S. 280, 287-88 (1946)); *Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 113-14 (1925). While state law determines the types of business entities and benefits available to their owners, "[i]t is axiomatic that federal law determines" how those owners are taxed. *Draper's Estate v. Commissioner*, 536 F.2d 944, 949 (1st Cir. 1976); *see also Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940); *Hassett v. Associated Hospital*

23

*Service Corp. of Mass.*, 125 F.2d 611, 616 (1st Cir. 1942), *cert. denied*, 316 U.S. 672 (1942).[6] Appellants' contrary approach, applying state-law labels to determine the meaning of federal tax provisions, "would yield as many results as there are local jurisdictions." *United States v. Kennedy Constr. Co. of NSB*, 572 F.2d 492, 495 (5th Cir. 1978); *Lyeth*, 305 U.S. at 194.

Section 1402(a)(13) "neither says nor implies that the determination of '[limited partner]' is to be controlled by state law." *Burnet*, 287 U.S. at 110. State laws in 1977 did constrict the activities of a limited partner, and it was because of these restrictions that income earned by a state-law limited partner in 1977 was generally income from a passive investment. But just because the usual meaning of the term "limited partner" in 1977 was *informed by* state law does not mean that Congress, by using that term, intended to incorporate the disparate and evolving laws of 50 different states to determine federal tax treatment. *See New Prime*, 586 U.S. at 114 (statutory terms mean what they

---

[6] Accordingly, a state-law limited partnership and its state-law limited partners will have the rights that state law gives them, including limited liability if applicable. But the federal tax liability resulting from these rights is determined by federal law.

24

"usually meant" "at the time of [their] adoption"). However, that appears to be the result appellants urge. *See* Appellants' Br. 37.

Congress knows how to expressly incorporate state law definitions in federal tax statutes when it wishes to. *E.g.*, An Act to amend section 512 of the Internal Revenue Code of 1954, Pub. L. 85-367, 72 Stat. 80 (1958) (codified at 26 U.S.C. §512(b)(13)(B) (1958)) (creating rule as to certain trusts that were "limited partner[s] in a partnership created under the laws of a State [] providing for the creation of limited partnerships[.]"); 26 U.S.C. §581 (defining "bank" for certain tax purposes in part by explicit reference to state-law requirements); 26 U.S.C. §7701(a) (specifically incorporating state-law requirements in defining certain organizations). If Congress meant here to define "limited partner" as a partner in a "partnership formed under state law with both general and limited partners" (Appellants' Br. 26), it could have used similar language. But there is no reference to state law in §1402(a)(13), let alone "express language" directing its application. *Burnet*, 287 U.S. at 110.

Nor is there any "necessary implication" that state-law labels are dispositive for "limited partner" status. Congress has demonstrated that it can give "limited partner" meaning without deferring to state law. *See*

25

Section I.B.3, *supra*.[7]   More broadly, there was, in 1977, a commonly understood, uniform, functional meaning of "limited partner" that did not depend on state law. The statutory structure, logic, and history of §1402(a)(13) all support applying that meaning.

Further, there is no justification for importing state-law labels by another name. Appellants argue (at 22-23, 37) that a "limited partner" for the purposes of §1402(a)(13) is a "partner of a limited partnership—a state-law entity with general and limited partners—whose liability for partnership obligations is limited to his partnership investment." But this definition plainly relies on state-law labels, which Congress declined to do. *See* U.S. Br. at 58 n.10. Moreover, federal tax law as of 1977 did not fully defer to state law to determine whether a partner had limited liability, *see* Treas. Reg. §301.7701-2(d)(2) (1960), let alone whether a partner was a "limited partner."[8] Thus, appellants' definition neither

---

[7] *See also* Tax Reform Act of 1976, Pub. L. No. 94-455, §207(a)(1), 90 Stat. 1520, 1536-37 (1976) (enacting precursor of §461(k) (2025)). *Contra* Appellants' Br. at 40-41. In enacting the precursor of current §461(k), Congress chose to deviate to some extent from the common understanding of a "limited partner" as a passive investor but set a federal standard for what level of activity precludes treatment as a "limited partner" under this subsection.

[8] At most, limited liability under state law was necessary—but not sufficient—to be a "limited partner" for federal-tax purposes.

represents the ordinary meaning of "limited partner" nor the necessary implication of its usage in §1402(a)(13).

Indeed, federal tax law, including the entity classification regulations, overrode state-law labels when the labels conflicted with the meaning and purpose of applicable federal tax laws. *See* Treas. Reg. §301.7701-2 (1977); T.D. 6503, 1960-2 CB 409, 25 Fed. Reg. 10928 (Nov. 17, 1960); Staff of Joint Comm. on Internal Revenue Tax'n, Tax Shelters, Use of Limited Partnerships, Etc.: Prepared for the Use of the Committee on Ways and Means, JCS-29-75, at 4 (Comm. Print 1975); *see also* Jeffrey D. Sperling & Lawrence Lokken, *The Limited Partnership Tax Shelter: An Investment Vehicle Under Attack*, 29 Fla. L. Rev. 1, 2 (1976) (observing in 1976 that the IRS was increasingly contesting whether a state-law limited partnership qualified as a partnership for federal-tax purposes).[9] The regulations provided rules for when a state-law limited partnership was ineligible for pass-through treatment.  §301.7701-1(c) (1977). The regulations did not defer to state-law labels in making such

---

[9] Current entity classification regulations, while flexible, continue to reject classification based on state-law labels. *See* George K. Yin, *The Future Taxation of Private Business Firms*, 4 Fla. Tax Rev. 141, 153 & n.36 (1999).

determinations. *See* Treas. Reg. §301.7701-2(c)(4) (1960); *cf.* Miles Johnson et al., Brief Redux: Further Analysis on "Limited Partner" in Self-Employment Tax Cases 10 & n.41, Tax Law Center (2025), https://taxlawcenter.org/files/Brief-Redux-Further-Analysis-on-Limited-Partner-in-Self-Employment-Tax-Cases-2.4.2025_508.pdf (discussing litigation over these regulations).

Section 1402(a)(13)'s purpose further underlines why Congress adopted a uniform, functional definition, rather than one turning on state-law labels. Congress passed §1402(a)(13) to achieve a uniform result: to exclude passive-investment income from Social Security and, correspondingly, the self-employment tax base. But while state law supported a general understanding of "limited partner" as a functionally passive investor in 1977, state laws varied even then on exactly how much a state-law limited partner could participate while retaining limited liability. *See* Mayo & Freeland, *Delimiting Limited Partners*, *supra*, at 397–98 (explaining New York's and Delaware's different limitations on participation). Partners who stepped over the line (as defined by state laws) into the role of a general partner lost limited liability to various extents. *See id.* at 394–95. Thus, tying the meaning of

28

"limited partner" under §1402(a)(13) to specific state-law labels would have, even in 1977, resulted in different federal income tax consequences for the same behavior in different states.  Thus, tying the meaning of "limited partner" under §1402(a)(13) to specific state-law labels would have, even in 1977, resulted in different federal income tax consequences for the same behavior in different states. This would have created a nonuniform application of §1402(a)(13), inconsistent with Congress's goals.[10]

Not only did the specifics of state laws vary in 1977, but Congress would have been aware that states might change criteria for state-law "limited partner" status in the future. Some states amended their limited partnership laws in the years immediately prior to §1402(a)(13)'s enactment. *See, e.g.*, Nev. Rev. Stat. §88.080 (1973); Del. Code. Ann. Tit. 6, §1707(a)-(b) (1974). The Revised Uniform Limited Partnership Act of 1976 had been proposed, but no states had yet adopted it. F. Hodge

---

[10] As explained above, uniformity is a rule of construction, not a mere policy goal. *See, e.g.*, *Auerbach Shoe Co. v. Commissioner*, 216 F.2d 693, 697 (1st Cir. 1954) (quoting *United States v. Pelzer*, 312 U.S. 399, 402-3 (1941)); Johnson et al., *supra*, at 10-11.

O'Neal, *Comments on Recent Developments in Limited Partnership Law*, 1978 Wash. Univ. L. Q. 669, 670–71 (1979).

It would therefore have made little sense for Congress to design §1402(a)(13) to depend on state-law labels. The provision's meaning could easily become divorced, as state law evolved, from its focus on functional results. Additionally, it would make self-employment taxes essentially elective for many businesses. If, as appellants suggest, *current* state-law labels apply, any individual who organizes a business—whether it be a law firm, consulting firm, accounting firm, or private equity firm—as a state-law limited partnership could avoid self-employment taxes for potentially all the income from such work. Indeed, prior to *Soroban*'s clarification of "limited partner" status, tax advisors routinely advised businesses to organize as state-law limited partnerships rather than LLCs under the theory that this allowed partners to "elect out" of self-employment tax on their share of partnership income. Appellants' approach would bless this formalistic circumvention of the tax laws.[11]

---

[11] It would, accordingly, allow taxpayers to rely on state-law entity forms to shelter potentially billions of dollars of income per year from self-employment tax (and Social Security and Medicare taxes more

Deference to current state-law treatment would likely create other unintended and anomalous results. For example, an individual that is the sole owner and operator of a business could elect largely (if not completely) out of self-employment tax on income from that business, in a manner entirely at odds with §1402(a), simply by organizing the business as a state-law limited partnership in a jurisdiction that affords limited liability.[12] Unintended or incorrect results may be insufficient to

_____

broadly). Individual cases can represent significant amounts—the taxpayers in *Soroban*, for example, were found to have understated self-employment income by $77 million in 2016 alone. *See Soroban Capital Partners LP v. Commissioner*, T.C. Memo. 2025-52, T.C. Docket No. 16217-22 (May 28, 2025) (Order and Decision). And the issue is widespread—as of early 2024, the IRS had "more than 80 audits" underway on improper claims of "limited partner" status. FY2025 IRS Cong. Budget Justification & Ann. Performance Rep. and Plan 38, IRS Publication 4450. While the amount of income in *Soroban* may not be representative, the number of audits as of 2024 likely far understates the true number of active partners with limited-partner status under state law who take the position that they qualify as "limited partners" for the purposes of §1402(a)(13).

[12] Appellants' reading would apparently allow an individual business owner to do this by forming a wholly owned corporate entity (such as an S corporation) to hold a small general partner interest in the business. The individual could potentially even accomplish this result while causing the state-law limited partnership to be disregarded for federal-income-tax purposes—in such a case the individual would effectively be (from a federal-income-tax perspective) a sole proprietor, but would nevertheless seem to qualify, in appellants' words, as "a

override the best reading of a statute. *See Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001). Here, however, avoiding such results merely bolsters the reading otherwise plain from the statute's text, structure, logic, and history. Because the statute supports reading "limited partner" to refer to a partner who functions as a passive investor, there is no basis on which to adopt appellants' reading. Doing so would undermine the statute's purpose, create an inexplicable loophole in federal tax law, and contravene precedent.

## CONCLUSION

This Court should affirm the Tax Court's decision below.

Respectfully submitted,

*/s/ Julie Ciamporcero Avetta*
JULIE CIAMPORCERO AVETTA
1st Cir. Bar No. 1141701
TAX LAW CENTER AT NYU LAW
110 West 3rd Street #204
New York, NY 10012
(212) 998-6002
julie.avetta@nyu.edu

December 3, 2025                              *Counsel for Amicus Curiae*

---

partnership formed under state law with both general and limited partners—whose liability is limited to his partnership investment." *See* Appellants' Br. 22-23.

32

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 6,496 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

_/s/ Julie Ciamporcero Avetta_
Julie Ciamporcero Avetta
Counsel for _Amicus Curiae_

## CERTIFICATE OF SERVICE

I certify that on December 3, 2025, a true and correct copy of the foregoing brief was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants, resulting in service upon all counsel of record.

*/s/ Julie Ciamporcero Avetta*
Julie Ciamporcero Avetta
Counsel for *Amicus Curiae*