No. 25-1349

# United States Court of Appeals for the First Circuit

DENHAM CAPITAL MANAGEMENT LP; DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER,

*Petitioners-Appellants*,

v.

SCOTT BESSENT,
ACTING COMMISSIONER, INTERNAL REVENUE SERVICE,

*Respondent-Appellee*.

On Appeal from the United States Tax Court
Case No. 9973-23
Hon. Kathleen Kerrigan

**REPLY BRIEF OF PETITIONERS-APPELLANTS DENHAM CAPITAL MANAGEMENT LP; DENHAM CAPITAL MANAGEMENT GP LLC, TAX MATTERS PARTNER**


Brian C. McManus
Shannon C. Fiedler
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Eric J. Konopka
Elizabeth A. Kanyer
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Petitioners-Appellants Denham Capital Management LP; Denham Capital Management GP LLC, Tax Matters Partner*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. NET EARNINGS FROM SELF-EMPLOYMENT ARE NOT A PARTNERSHIP ITEM ........ 2

A. No Provision Of Subtitle A Of The Internal Revenue Code Requires Partnerships To Take Net Earnings From Self-Employment Into Account For Their Taxable Year ........ 3

B. No Treasury Regulation Provides That Net Earnings From Self-Employment Are More Appropriately Determined At The Partnership Level ........ 7

C. The Commissioner's Criticism Of The Entire-Partnership Rule Is Both Odd And Off-Base ........ 10

II. THE LIMITED-PARTNER EXCEPTION APPLIES ........ 12

A. The "Fundamental [P]rinciples" Cited By The Commissioner Do Not Favor The Passive-Investor Test ........ 13

B. The Passive-Investor Test Is Wrong ........ 17

1. Dictionaries And Definitions ........ 17

2. Statutory Context ........ 20

3. Regulatory Interpretations ........ 24

4. Legislative History And Purpose ........ 26

CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008) .......... 23

*Bedrosian v. Commissioner*,
940 F.3d 467 (9th Cir. 2019) .......... 10

*Benenson v. Commissioner*,
887 F.3d 511 (1st Cir. 2018) .......... 14

*Burke-Waggoner Oil Association v. Hopkins*,
269 U.S. 110 (1925) .......... 14

*Carriage Square, Inc. v. Commissioner*,
69 T.C. 119 (1977) .......... 17

*Keener v. United States*,
551 F.3d 1358 (Fed. Cir. 2009) .......... 10

*Morgan v. Commissioner*,
309 U.S. 78 (1940) .......... 14, 15

*Morissette v. United States*,
342 U.S. 246 (1952) .......... 16

*Morrissey v. Commissioner*,
296 U.S. 344 (1935) .......... 16

*SEC v. Arcturus Corp.*,
928 F.3d 400 (5th Cir. 2019) .......... 18

*Soroban Capital Partners LP v. Commissioner*,
161 T.C. 310 (2023) .......... 17

*Summa Holdings, Inc. v. Commissioner*,
848 F.3d 779 (6th Cir. 2017) .......... 14

*Weiner v. United States*,
389 F.3d 152 (5th Cir. 2004) .......... 10

**Page(s)**

## FEDERAL STATUTES


26 U.S.C. § 63(a) ....................9

26 U.S.C. § 469(c)(1)....................23

26 U.S.C. § 469(h)(2)....................22, 23

26 U.S.C. § 702(a)(8)....................9

26 U.S.C. § 703(a) ....................9

26 U.S.C. § 707(c) ....................21

26 U.S.C. § 751(a) ....................11

26 U.S.C. § 1256(e)(3)....................22

26 U.S.C. § 1401(a) ....................9

26 U.S.C. § 1401(b) ....................9

26 U.S.C. § 1402(a) ....................3, 4, 5, 8, 9

26 U.S.C. § 1402(a)(1)....................23

26 U.S.C. § 1402(a)(2)....................20

26 U.S.C. § 1402(a)(3)(A) ....................20

26 U.S.C. § 1402(a)(10)....................23

26 U.S.C. § 1402(a)(13)....................2, 13, 21, 27

26 U.S.C. § 1402(b) ....................9

26 U.S.C. § 6226(f)....................2

26 U.S.C. § 6231(a)(3)....................1, 3, 5, 7, 8

26 U.S.C. § 6231(a)(5)....................5, 6

42 U.S.C. § 411(a)(12)....................13

**Page(s)**

## REGULATIONS


20 C.F.R. § 404.1080(b)(3)....................24, 25

26 C.F.R. § 1.1402(a)-2(d)....................7

26 C.F.R. § 301.6231(a)(3)-1(a)....................8

26 C.F.R. § 301.6231(a)(3)-1(a)(1)....................8

26 C.F.R. § 301.6231(a)(3)-1(b)....................8


## STATE STATUTES


La. Civ. Code art. 2837....................14


## OTHER AUTHORITIES


Berkshire Hathaway Inc., Proxy Statement (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/1067983/000119312525054877/d812428ddef14a.htm....................28

*Black's Law Dictionary* (2d ed. 1910)....................17

43 Fed. Reg. 25422 (June 13, 1978)....................25

61 Fed. Reg. 21989 (May 13, 1996)....................16

61 Fed. Reg. 66584 (Dec. 18, 1996)....................16

Rev. Unif. Ltd. P'ship Act (1976)....................19

Social Security Administration, *Program Operation Manual System (POMS): RS 01802.304* (rev. Sept. 15, 1997), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802304....................26

Social Security Administration, *Program Operation Manual System (POMS): RS 01802.330* (rev. Oct. 24, 2002), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802330....................26

## INTRODUCTION

On both issues in this appeal, the responses by the Commissioner and his amicus fall far wide of the mark.

With respect to jurisdiction, the Commissioner has not come close to meeting either prong of the TEFRA "partnership item" test. At the first prong, he needs a provision of subtitle A of the Internal Revenue Code requiring partnerships to "take[]" net earnings from self-employment "into account for [their] taxable year." 26 U.S.C. § 6231(a)(3).[1] Yet the subtitle A provision on which he relies makes that demand of *individuals* rather than partnerships. At the second prong, the Commissioner needs a regulation providing that net earnings from self-employment are "more appropriately determined at the partnership level." *Id.* His entire argument *presumes* net earnings from self-employment should be determined at the partnership level, however, and such bootstrapping is no substitute for what the partnership-item test actually requires. That test thus dictates the only sensible result: Net earnings from self-employment—which affect only individual partners and admittedly depend on "partner-specific facts," Comm'r-Br.31—should be determined in partner-level proceedings, not partnership-level proceedings.

[1] Unless otherwise noted, references to title 26 of the U.S. Code and title 26 of the Code of Federal Regulations are to the statutes and regulations in effect for the 2016 and 2017 tax years.

With respect to the merits, the Commissioner and his amicus likewise whiff. They both proffer what they claim are tax-law principles that favor adopting their test for a "limited partner" over Denham's. 26 U.S.C. § 1402(a)(13). But those supposed principles are a wash: Denham's position fares at least as well because Denham also offers a uniform federal rule, based on limited liability, that has economic substance and is much more than a "state-law label." *E.g.*, Comm'r-Br.44; NYU-Br.22. The Commissioner's and his amicus's efforts to distract from the central inquiry—the meaning of "limited partner"—also betray the weakness of their position. Their passive-investor test at most describes common features of limited partners; it does not define limited partners or distinguish them from general partners. Moreover, they have no persuasive answer to the guaranteed-payment carveout, the treatment of dual-status partners, or other statutory indicators, which show Congress did not adopt a passive-investor test.

Whether for lack of jurisdiction or for lack of merit, the Tax Court's decision cannot stand.

## ARGUMENT

### I. NET EARNINGS FROM SELF-EMPLOYMENT ARE NOT A PARTNERSHIP ITEM

It is undisputed that the Tax Court had jurisdiction over this TEFRA partnership-level proceeding only if net earnings from self-employment are a "partnership item[]." 26 U.S.C. § 6226(f); *see* Comm'r-Br.18-20. The applicable

test is also undisputed: Something is a "partnership item" if (1) it is "required to be taken into account for the partnership's taxable year under any provision of subtitle A" of the Internal Revenue Code and (2) Treasury Regulations "provide that" it "is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3); *see* Comm'r-Br.20. *Both* prongs must be met. Yet net earnings from self-employment meet *neither* prong. *See* Opening-Br.47-52. The Commissioner fails to show otherwise.

### A. No Provision Of Subtitle A Of The Internal Revenue Code Requires Partnerships To Take Net Earnings From Self-Employment Into Account For Their Taxable Year

As to the first prong, no subtitle A provision requires partnerships to take net earnings from self-employment into account for their taxable year. Quite the opposite. The only subtitle A provision to which the Commissioner points (at 23) is section 1402(a), and it is centered on individuals, not partnerships.

Section 1402(a) is expressly tied to the individual. It defines "'net earnings from self-employment'" as "the gross income derived by *an individual* from any trade or business carried on by *such individual*, . . . plus *his* distributive share . . . of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which *he* is a member." 26 U.S.C. § 1402(a) (emphases added). And it makes clear that, when an individual is a partner in a partnership, net earnings from self-employment are calculated for *his* taxable year, not the

partnership's: "[T]he distributive share which *he* is required to include in computing *his* net earnings from self-employment shall be based on the ordinary income or loss of the partnership for any taxable year of the partnership ending within or with *his* taxable year." *Id.* (flush language) (emphases added).

The statute thus sets up a straightforward process. Suppose an individual runs a business as a sole proprietor and is also a member of three different partnerships. In preparing his tax return, he would compute his net earnings from self-employment by adding the income from his sole proprietorship for his own taxable year to his distributive share of each partnership's trade-or-business income for the partnership's taxable year that ended within his taxable year (all subject to the exceptions in section 1402(a)). *Id.* That is, the individual's distributive shares are *inputs* into his net earnings from self-employment. While those distributive shares may be partnership items for the respective partnerships, *see* Comm'r-Br.23-24, net earnings from self-employment are separate, calculated at the individual level, and *not* a partnership item.

Rather, in the TEFRA framework, net earnings from self-employment may be an affected item. For example, if the IRS audits a partnership and disallows a business deduction, that increases the partnership's trade-or-business income and each partner's distributive share of that income. "[T]o the extent" a partner's net earnings from self-employment are "affected by" the increase in his distributive

share, his net earnings from self-employment are an "'affected item'" and adjustable as such. 26 U.S.C. § 6231(a)(5); *see* Opening-Br.11 (explaining treatment of affected items). But in no event are net earnings from self-employment a partnership item.

Although the Commissioner resists this conclusion, not one of his counterarguments is persuasive.

*First*, the Commissioner posits (at 21) the "location" of section 1402(a) and the definition of net earnings from self-employment "in subtitle A removes any doubt that they fit with items that Congress envisioned would fall under partnership proceedings." That position is incompatible with the statutory text. TEFRA does not focus on location alone. It is more specific, making something a partnership item only if a subtitle A provision *requires partnerships to take it into account for their taxable year*. 26 U.S.C. § 6231(a)(3). And neither section 1402(a) nor any other subtitle A provision does that for net earnings from self-employment. As discussed, section 1402(a) requires individuals, not partnerships, to compute net earnings from self-employment for their taxable year. *See* 26 U.S.C. § 1402(a) (flush language) ("[T]he distributive share which [a partner] is required to include in computing his net earnings from self-employment shall be based on the ordinary income or loss of the partnership for any taxable

year of the partnership ending within or with his taxable year.”). Notably, the Commissioner does not mention, let alone grapple with, this text.

It also makes no sense to treat the mere fact of being located within subtitle A as dispositive. Subtitle A covers the entire income tax. And it includes provisions applicable only to resident and nonresident individuals, domestic and foreign corporations, so-called “S” corporations (which, like partnerships, pass through income to their owners), banks, insurance companies, and so on. Surely Congress did not “envision[]” all of these provisions—many of which, by their terms, apply only to individuals or corporations—“would fall under partnership proceedings.” Comm’r-Br.21.

*Second*, the Commissioner observes (at 22) section 1402(a) “makes net earnings from self-employment contingent on the partnership’s activities,” specifically on the “*partnership*-level determination” of “whether the *partnership* is engaged in a trade or business.” True, but irrelevant. Under TEFRA, something is not a partnership item merely because it is contingent on a partnership-level determination. After all, an “‘affected item’” is by definition “affected by a partnership item.” 26 U.S.C. § 6231(a)(5).

*Third*, the Commissioner claims (at 23) section 1402(a) “directs partnerships to compute their partners’ net earnings from self-employment, including by applying any relevant exceptions.” But that is pure *ipse dixit*. He points to no

language in section 1402(a) that directs partnerships to do anything at all. The closest he comes is to recite (at 23-24) other provisions that direct partnerships to compute each partner's distributive share of partnership trade-or-business income, which may in turn affect the partner's net earnings from self-employment.[2] But those provisions hammer home that net earnings from self-employment may be an *affected item* under TEFRA. They do not require partnerships to take net earnings from self-employment into account for their taxable year, and so do not make net earnings from self-employment a partnership item. *Id.* § 6231(a)(3).

### B. No Treasury Regulation Provides That Net Earnings From Self-Employment Are More Appropriately Determined At The Partnership Level

Given that net earnings from self-employment do not satisfy the first prong of the partnership-item test, there is no need to reach the second. But net earnings

---

[2] The Commissioner also mischaracterizes 26 C.F.R. § 1.1402(a)-2(d). He contends this regulation requires "'[a]n individual's distributive share of' net earnings from self-employment '[to] be determined as provided in section 704.'" Comm'r-Br.24 (quoting 26 C.F.R. § 1.1402(a)-2(d)). But the regulation does not say that. It repeats section 1402(a)'s directive that net earnings from self-employment include an individual's "distributive share of the income or loss, described in section 702(a)([8]), from any trade or business carried on by each partnership of which he is a member." 26 C.F.R. § 1.1402(a)-2(d). The regulation goes on to make clear "[a]n individual's distributive share of such income or loss of a partnership shall be determined as provided in section 704." *Id.* In that sentence, "such income" refers to "the income or loss, described in section 702(a)([8])." *Id.* So the regulation provides that the section 702(a)(8) taxable income or loss—*not* net earnings from self-employment—should be determined as provided in section 704. *Id.*

from self-employment do not satisfy that prong either because Treasury Regulations nowhere provide that net earnings from self-employment are "more appropriately determined at the partnership level than at the partner level." *Id.*

As the Commissioner concedes (at 26), the relevant Treasury Regulations do not address net earnings from self-employment specifically. *See* 26 C.F.R. § 301.6231(a)(3)-1(a). He instead tries (at 26-27) to shoehorn net earnings from self-employment into two more general regulatory provisions. The first provides that "[t]he partnership aggregate and each partner's share of . . . [i]tems of income, gain[,] loss, deduction, or credit of the partnership" are partnership items. *Id.* § 301.6231(a)(3)-1(a)(1). The second provides that "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." are partnership items. *Id.* § 301.6231(a)(3)-1(b). These regulations do not do the work the Commissioner needs them to do.

The central problem for the Commissioner is that no statute or regulation requires partnerships to calculate aggregate net earnings from self-employment or partners' distributive shares of net earnings from self-employment. The partnership need only compute its own aggregate *trade-or-business income* and each partner's distributive share of that income. *See* 26 U.S.C. § 1402(a). Each partner's distributive share of partnership trade-or-business income automatically

flows into his own net earnings from self-employment calculated at the individual level—subject only to the exceptions in section 1402(a), all of which can also be applied at the individual level. *See* Opening-Br.51. There is no need for any "'characterization' of the partnership's income" as net earnings from self-employment, Comm'r-Br.27 (citation omitted), and thus no role for these regulations to play.

The Commissioner disagrees, claiming (at 29) "net earnings from self-employment . . . affect the computation of partnership taxable income." But he has things backwards. A partnership computes its "taxable income . . . in the same manner as in the case of an individual," without considering net earnings from self-employment. 26 U.S.C. § 703(a); *see id.* § 63(a) (defining "taxable income").[3] It then determines each partner's "distributive share of the partnership's . . . taxable income or loss," *id.* § 702(a)(8), which is an input into that partner's net earnings from self-employment, *see id.* § 1402(a) (including a partner's "distributive share . . . of income or loss described in section 702(a)(8)"). In short, partnership

[3] As the Commissioner observes (at 29), self-employment tax is assessed and collected as part of income tax. But it is an additional tax calculated based on an individual's self-employment income—which is generally equivalent to net earnings from self-employment, subject to limitations determined at the individual level—not based on the taxable income subject to income tax. *See* 26 U.S.C. §§ 1401(a)-(b), 1402(b); Opening-Br.6.

taxable income affects the computation of net earnings from self-employment, not the other way around. *See supra* at 3-4.

Nor are net earnings from self-employment like "[t]he period of limitations for assessing tax attributable to partnership items." Comm'r-Br.27-28. As the Commissioner's own cases (at 28) show, courts have interpreted that limitations period as a partnership item because it "affects the partnership as a whole." *Weiner v. United States*, 389 F.3d 152, 156-57 (5th Cir. 2004); *accord, e.g.*, *Bedrosian v. Commissioner*, 940 F.3d 467, 471 (9th Cir. 2019) (agreeing with the Commissioner that "this limitations argument is a partnership item in the sense that it affects the tax treatment of the entire partnership").[4] The same is not true of net earnings from self-employment, and the Commissioner does not argue otherwise.

### C. The Commissioner's Criticism Of The Entire-Partnership Rule Is Both Odd And Off-Base

It is curious that the Commissioner criticizes (at 30) "Denham's 'entire-partnership' rule"—which actually comes from the Supreme Court and other

---

[4] The cases the Commissioner cites were not "grounded . . . in the regulation's instruction to include among partnership items 'the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.'" Comm'r-Br.28 (emphasis omitted) (quoting *Keener v. United States*, 551 F.3d 1358, 1362 (Fed. Cir. 2009)). In *Keener*, the applicability of the regulation was "not dispute[d]." 551 F.3d at 1362. And the *Weiner* court first grounded its decision in the "'entire-partnership' rule"—which the Commissioner disavows (at 29-32)—before citing the regulation as additional support. *See* 389 F.3d at 156-57.

courts, not Denham, *see* Opening-Br.49-50 (citing cases)—given that his own cases invoke it. And his brief remarks about that rule are unavailing.

*First*, he suggests (at 31) some partnership items are not relevant to the partnership as a whole. But the examples he gives do not help him. Both items he mentions are necessarily determined *at the partnership level* and must be separately reported by the partnership so that partners can properly apply the special rules applicable to them.[5] Net earnings from self-employment are different because they are determined at the individual level—taking into account the individual's distributive share of partnership trade-or-business income, which is a partnership item, as necessary—not the partnership level. *See supra* at 3-7.

*Second*, the Commissioner suggests (at 31) "the net-earnings-from-self-employment characterization"—including the application of the limited-partner exception in section 1402(a)(13)—"is not partner-centric." But each individual must compute his own net earnings from self-employment, and the limited-partner exception and other exceptions admittedly depend on "partner-specific facts." Comm'r-Br.31. What matters for the entire-partnership rule is whether one

---

[5] The section 212 nonbusiness expenses the Commissioner references are incurred *by the partnership*, and the partnership must separately state each partner's distributive share so that each partner can properly account for his share of those expenses under the special rules applicable to them. *See also* Opening-Br.54 & n.7. The section 751(a) gain the Commissioner references depends on the partnership's basis in the relevant assets, which is information the partnership, not the partner, possesses. *See* 26 U.S.C. § 751(a).

partner's net earnings from self-employment affect the partnership or other partners, and they do not. *See* Opening-Br.51-52.

*Finally*, the Commissioner makes a plea for efficiency, contending (at 32) that because the facts for each of Denham's limited partners are similar, the applicability of the limited-partner exception should be determined as to all of them in one fell swoop. But the rule he wants is nonsensical. He would require 100 limited partners to litigate the applicability of the limited-partner exception in a single partnership-level proceeding—even if the facts as to each partner differ. That is not what TEFRA had in mind.

In the end, though, the Commissioner is right (at 30) that TEFRA's definition of "partnership item" controls over the "'entire-partnership' rule" found in case law. But, for all the reasons explained, the Commissioner is wrong about how that definition shakes out here. Net earnings from self-employment are not a partnership item, and this Court can and should vacate the Tax Court's decision with instructions to dismiss for lack of jurisdiction.

## II. THE LIMITED-PARTNER EXCEPTION APPLIES

If the Court reaches the merits, it should reverse because the limited-partner exception in section 1402(a)(13) applies.

Section 1402(a)(13) excludes from net earnings from self-employment "the distributive share of any item of income or loss of a limited partner, as such, other

than [certain] guaranteed payments described in section 707(c)." 26 U.S.C. § 1402(a)(13); *accord* 42 U.S.C. § 411(a)(12). The phrase "limited partner" had a settled definition when this exception was enacted in 1977: A limited partner was a partner of a limited partnership—i.e., a state-law partnership with both general and limited partners—with limited liability for the partnership's debts. Opening-Br.22-26. Indeed, both the IRS and the SSA adopted that definition. *Id.* at 26-30. And under that definition, Denham's limited partners are so clearly entitled to the limited-partner exception that the Commissioner does not even try to argue otherwise. *Id.* at 30-32; *see* Comm'r-Br.33-72.

The Commissioner (at 45) and his amicus (at 6) do not seriously dispute that limited liability under state law is the defining characteristic of limited partners. Instead, they look to second-order characteristics—what they perceive to be common features of partners with limited liability under state law in 1977. *See* Comm'r-Br.45-51; NYU-Br.4-10. But their justifications for making that move are ill-founded, as is the passive-investor test they prefer.

### A. The "Fundamental [P]rinciples" Cited By The Commissioner Do Not Favor The Passive-Investor Test

The Commissioner starts (at 36-44), and his amicus ends (at 22-32), with certain principles that, they say, counsel against Denham's position and in favor of the passive-investor test adopted by the Tax Court. But these supposed principles misstate Denham's position and do not move the needle for the Commissioner.

To start with one critical point: Contrary to what the Commissioner and his amicus repeatedly assert, Denham's definition of "limited partner" is not about a "state-law label." Comm'r-Br.16-17, 37-42, 44, 58; NYU-Br.3, 22-30. It does not matter whether state law *calls* someone a "limited partner." Limited partners used to be called "special partners," *see, e.g.*, Comm'r-Br.47, and in Louisiana, they are called "partners in commendam," *see* La. Civ. Code art. 2837. Any of these partners—limited, special, in commendam, or whatever—can be limited partners within the meaning of the limited-partner exception if they have limited liability, regardless of the label state law attaches to them. *See Morgan v. Commissioner*, 309 U.S. 78, 81 (1940) ("[T]he federal law must prevail no matter what name is given to the interest or right by state law.").[6]

The Commissioner and his amicus seem to view that definition as prioritizing form over substance. *See, e.g.*, Comm'r-Br.41-42; NYU-Br.21.[7] Wrong again. There is a reason why people have formed corporations and other limited-liability entities for centuries. Having limited liability, or not, comes with

[6] This principle from *Morgan* is all the entity-classification cases the Commissioner cites (at 39-40) stand for. *See, e.g.*, *Burke-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 114 (1925) (entity treated as a corporation under federal tax law even though state law classified it as a partnership).

[7] That is not to say tax law invariably prioritizes substance over form. *Contra* Comm'r-Br.41-42. Sometimes tax law is "all form and no substance." *Benenson v. Commissioner*, 887 F.3d 511, 518 (1st Cir. 2018) (quoting *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 786 (6th Cir. 2017)).

real consequences. *See, e.g.*, Opening-Br.31 (discussing testimony regarding why Denham's limited partners cared about limited liability). A test that looks to a partner's limited liability is thus fully grounded in "objective economic realities"—even if they differ from those on which the Commissioner focuses. Comm'r-Br.41 (citation omitted).

Such a test also provides a "uniform" federal standard. *Id.* at 42 (citation omitted); *see id.* at 37-40, 42-44; NYU-Br.22-32. A partner with limited liability can be a limited partner anywhere in the country. True, the circumstances in which a partner has limited liability may change depending on the relevant state law.[8] But that is common in tax law. In *Morgan*, for example, the Supreme Court recognized that the term "general power of appointment" in a federal tax statute must be defined by federal law, but that whether a power of appointment is "general" or "special" turns on features of state law that could vary. 309 U.S. at 80-83; *see* Opening-Br.35-37 (discussing *Morgan* and explaining the interplay between federal and state law). A federal definition of "limited partner" that considers whether a partner has limited liability under state law is no different. *Cf.*

---

[8] The degree to which results will vary in different states is greatly exaggerated, however, since states have overwhelmingly adopted uniform laws. *See* Opening-Br.24; RER-Br.18.

*Morrissey v. Commissioner*, 296 U.S. 344, 360 (1935) (considering "limited liability" when determining that a trust should be taxed as a corporation).[9]

If Congress had to do anything special to incorporate state law into the limited-partner exception, *see* NYU-Br.23-26, it did so by using the phrase "limited partner." Under a key canon of statutory interpretation—which the Commissioner and his amicus ignore—"where Congress borrows terms of art . . . , it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Morissette v. United States*, 342 U.S. 246, 263 (1952). The concept of a limited partner comes from, and is tethered to, state law, so it makes perfect sense that Congress would piggyback on state law. *See* Opening-Br.23-26.

The Commissioner and his amici do not really contend otherwise. They also look to the features of limited partners under state law; they just emphasize certain control features they admit had been "softened" long before the limited-partner exception was enacted in 1977. Comm'r-Br.49; *see, e.g.*, *id.* at 47-49; NYU-Br.6-9. So their own understanding of a limited partner is shaped by state law. They are wrong to skip past the *sine qua non* of a limited partner—limited liability—to certain secondary characteristics that did not define a limited partner in 1977.

---

[9] In the entity-classification context, the IRS recognized that "differences under local law" often drove whether a particular entity was classified as a partnership or as a corporation. 61 Fed. Reg. 21989, 21989-90 (May 13, 1996). The IRS eventually promulgated regulations to make entity classification largely "elective." 61 Fed. Reg. 66584, 66584 (Dec. 18, 1996).

### B. The Passive-Investor Test Is Wrong

That brings us to the arguments raised by the Commissioner and his amicus about the passive-investor test, which are flawed for numerous reasons.

#### 1. Dictionaries And Definitions

Initially, the Tax Court agreed the phrase "limited partner" in section 1402(a)(13), standing alone, focuses on limited liability and does not incorporate a passive-investor test. *See* Opening-Br.32-33 (discussing *Soroban Cap. Partners LP v. Commissioner*, 161 T.C. 310, 320 (2023)). For the Tax Court, the next two words in section 1402(a)(13)—"as such"—were the game-changer that gave rise to the passive-investor test. *Id.* at 33. Yet the Commissioner and his amicus do not go there. Which makes sense, because the words "as such" cannot bear the weight the Tax Court placed on them. *Id.* at 32-35.

Moreover, as the Commissioner's own dictionaries and other authorities show, the Tax Court's understanding of the standalone phrase "limited partner" aligns with the customary definition. *See, e.g.*, Comm'r-Br.47 (limited or special partners "are not liable for the debts of the partnership beyond the fund so contributed" (quoting *Black's Law Dictionary* 877 (2d ed. 1910)); *see also* Opening-Br.23-26 (citing sources). A concurring opinion cited by the Commissioner's amicus (at 9) also states the point well: The "limited liability of . . . limited partners . . . is *definitional*." *Carriage Square, Inc. v. Commissioner*,

69 T.C. 119, 130 (1977) (Goffe, J., concurring) (emphasis added).[10] To extract a passive-investor test out of the definition of "limited partner," the Commissioner and his amicus make three significant errors.

*First*, they focus on the wrong timeframe. It may be that in "the Middle Ages," limited partners had to be absolutely passive investors or else sacrifice their limited liability. Comm'r-Br.45. That may even have been true in 1877. But by 1977—when the limited-partner exception was enacted—that no longer held true. In the decades leading up to 1977, state law allowed limited partners to "actively engage in the partnership without losing their limited liability protections," and so did not require them to be passive investors. RER-Br.13; *see id.* at 13-17 (discussing cases); *see also* Comm'r-Br.48 (acknowledging these cases without refuting them). And the Revised Uniform Limited Partnership Act promulgated in 1976, the year before the limited-partner exception's enactment, undisputedly permitted limited partners to actively participate in the partnership's business. *See* Comm'r-Br.49.

*Second*, the Commissioner and his amicus conflate control and participation. Under both the 1916 Uniform Limited Partnership Act and the 1976 Revised

---

[10] A more recent case cited by the Commissioner (at 51) also corroborates the point, since the first thing it says is that limited partners' "liability for the partnership is limited to the amount of their investment." *SEC v. Arcturus Corp.*, 928 F.3d 400, 410 (5th Cir. 2019) (citation omitted).

Uniform Limited Partnership Act, a limited partner could not "control" a limited partnership without opening himself up to liability for the partnership's debts. *Id.* at 48-49 (citations omitted). But by 1976 it was clear that participation in the partnership's business is not tantamount to control. *See* Rev. Unif. Ltd. P'ship Act § 303(b)(1) (1976) (APP86) ("A limited partner does not participate in the control of the business . . . solely by . . . being a contractor for, or an agent or employee of, the limited partnership or of a general partner . . . .").[11] The ability to actively participate in the partnership's business precludes the passive-investor test.

*Third*, the Commissioner and his amicus confuse the descriptive with the prescriptive. It is one thing to say that limited partners usually *do not* actively participate in the partnership's business; it is another to say that limited partners *cannot* actively participate in the partnership's business and must be passive investors. By 1977, it was clear that limited partners could and did actively participate—even if many were passive investors. The passive-investor test does not work because it is, at best, a loose characterization of limited partners, not a test to distinguish limited partners from general partners.

To bolster the passive-investor test, the Commissioner analogizes (at 50) limited partners to corporate shareholders. But that analogy cuts the other way.

---

[11] Of course, Denham's limited partners have always been careful to merely participate in Denham's business, and never to control Denham, to foreclose the possibility of losing their limited liability. *See* Opening-Br.31.

Shareholders can be, and often are, full-time employees and executives as well. Shareholders are not required to be passive investors, so a passive-investor test cannot separate shareholders from non-shareholders. Same for limited partners.

### 2. Statutory Context

The statutory context described by the Commissioner and his amicus is equally unconvincing. Their main argument seems to be that other exceptions in section 1402(a) are about "income from passive investment" rather than "income from active efforts in a business," so the limited-partner exception should be construed the same way. Comm'r-Br.54; *see* NYU-Br.14-16. But that argument ignores what a limited partner's distributive share represents and the guaranteed-payment carveout.

A limited partner's distributive share of the partnership's trade-or-business income is of an investment nature. A limited partner is an owner of the partnership, and the partnership's income comes from the "active efforts" of *all* of the partnership's personnel. Comm'r-Br.54. During 2016 and 2017, for example, Denham had roughly 80 personnel, only five of whom were limited partners. ADD2, 5. Denham's income—and the limited partners' distributive shares of that income—came from everyone's combined efforts, not solely from the limited partners' efforts. Those distributive shares were much like the dividends and capital gains a shareholder-employee would earn from a corporation. *Cf.* 26

U.S.C. § 1402(a)(2)-(3)(A) (excluding dividends and capital gains from net earnings from self-employment).

The position espoused by the Commissioner and his amicus also runs headlong into the guaranteed-payment carveout. That carveout specifies exactly when Congress intended a limited partner's partnership income to be subject to self-employment taxes: only when payments are (1) "guaranteed," (2) "for services actually rendered to or on behalf of the partnership," and (3) "established to be in the nature of remuneration for those services." *Id.* § 1402(a)(13); *see id.* § 707(c). Congress therefore deemed those payments to be a limited partner's "income from active efforts" in the partnership's business, and any other distributive share of the partnership's trade-or-business income to be "income from passive investment." Comm'r-Br.54. The Commissioner's and his amicus's responses, *see id.* at 60-62; NYU-Br.12-14, merely rehash the flawed reasoning Denham already debunked, *see* Opening-Br.38-43.

The Commissioner and his amicus also have no answer to dual-status partners. As Denham explained, the phrase "as such" in section 1402(a)(13) recognizes that one person can serve as both a general partner and a limited partner of the same partnership and excludes only the distributive share he receives as a limited partner. *See* Opening-Br.34-35. The Commissioner (at 45-47, 62-63) admits that, in 1977, general partners were normally active in the partnership's

business and could also be limited partners. Those admissions preclude the passive-investor test: A dual-status partner active in the partnership's business cannot be a mere passive investor, yet his distributive share as a limited partner is excluded from his net earnings from self-employment, so "limited partner" cannot mean "passive investor." *See* Opening-Br.34-35, 38-39. Notably, the Commissioner's only response (at 62-63) is that, given developments in state law, "it is unclear why" any partner would "still have dual status." But that is a non sequitur. As the Commissioner concedes (at 44-45), the meaning of "limited partner" in 1977 controls, and the treatment of dual-status partners unquestionably shows that, in 1977, Congress understood limited partners could also be general partners and thus did not need to be passive investors.

The other statutes to which the Commissioner's amicus points undermine its position. The fact that other statutes expressly exclude those who "actively" or "materially" participate in a partnership's business from the definition of "limited partner" shows Congress understood a limited partner can actively or materially participate. NYU-Br.17-18 (quoting 26 U.S.C. §§ 469(h)(2), 1256(e)(3)). If the general definition of "limited partner" already excluded them, the express exclusions would have been superfluous. *See also* Opening-Br.40-41 (discussing other statutes).

Other statutes enacted before and after the limited-partner exception also show how Congress could have written that exception if it had wanted to incorporate a passive-investor test. *See, e.g.*, *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 227 (2008) (rejecting limit on statute when Congress "easily could have written" the statute to incorporate that limit). Rental income is generally excluded from net earnings from self-employment, but in 1956, Congress added a carveout for certain agricultural and horticultural activities in which "there is material participation" by the taxpayer. 26 U.S.C. § 1402(a)(1). In 1967, Congress added an exclusion from net earnings from self-employment for retired partners who provide "no services" to the partnership. *Id.* § 1402(a)(10). And in 1986, Congress added a general income-tax provision on passive-activity losses, which defines a "passive activity" as a trade or business in which the taxpayer "does not materially participate." *Id.* § 469(c)(1); *see id.* § 469(h)(2). If Congress had enacted an exception from net earnings from self-employment for partners who do not materially participate in, or provide no services to, the partnership—something it has considered, *see* MFA-Br.21-23—this might be a different case. But Congress enacted the limited-partner exception instead, and that exception as written must be given effect.

### 3. Regulatory Interpretations

Next, the Commissioner brazenly contends "IRS and SSA publications align with [his] position." Comm'r-Br.66 (heading). Nothing could be further from the truth. Every indication in published regulations and guidance is that the IRS and the SSA understood, all the way back to 1977, that a limited partner is defined as a partner whose "financial liability for the obligations of the partnership is limited to the amount of [his] financial investment in the partnership." 20 C.F.R. § 404.1080(b)(3); *see* Opening-Br.26-28; MFA-Br.14-18.

The Commissioner's view contorts the regulations and other guidance. Although he obliquely acknowledges (at 67) IRS instructions have long defined a limited partner by reference to limited liability, he nonetheless claims those instructions are not "inconsistent with [his] position." His view (*id.*) is that "[a]n individual having pervasive involvement in the conduct and management of the [partnership's] business potentially would *not* have limited liability and thus would *not* be a 'limited partner' under § 1402(a)(13)," so the instructions "simply refer to a limited partner who does not have that level of involvement and thus *is* a limited partner under § 1402(a)(13)." That view might have some merit if the instructions said anything about a partner's "pervasive involvement." But they don't. They refer to limited liability under state law, and there is no hint anywhere they use

limited liability as shorthand for a lack of pervasive involvement in the partnership's business. *See* Opening-Br.27-28.

Nor do "the SSA's regulations support the Commissioner's position." Comm'r-Br.67. He emphasizes (at 68) the second sentence of 20 C.F.R. § 404.1080(b)(3), which states that "[g]enerally, you"—referring to a person who may be self-employed—"will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership." But as the sentence makes clear, it is merely describing certain characteristics that limited partners often have. *See supra* at 17-19; MFA-Br.16 n.9. It is not defining the term "limited partner." That is the office of the first sentence, which is tied exclusively to limited liability, and has been since the beginning. *See* 20 C.F.R. § 404.1080(b)(3); 43 Fed. Reg. 25422, 25422-23 (June 13, 1978).

The Commissioner's remaining points also cannot sustain his skewed understanding of the regulatory guidance.

He first states (at 68) he is "unaware of any case where the SSA denied Social Security benefits because a partner who paid self-employment taxes is still a limited partner entitled to benefits." That statement is odd, because limited partners were paying self-employment taxes on partnership income with the aim of securing Social Security benefits—and Congress enacted the limited-partner exception to end that practice. *See* Opening-Br.7-8; Comm'r-Br.33-36.

The Commissioner next alludes (at 69) to a "Partnership Questionnaire" used by the SSA. But the SSA uses that form to determine whether a partnership exists and an individual is a partner, not to discern whether an individual is a limited partner or a general partner. *See* Social Sec. Admin., *Program Operation Manual System (POMS): RS 01802.330* (rev. Oct. 24, 2002), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802330.

Finally, the Commissioner minimizes (at 69) SSA guidance noting a "limited partner" is "not the same" as a "'silent partner'" or an "'inactive partner.'" Social Sec. Admin., *Program Operation Manual System (POMS): RS 01802.304* (rev. Sept. 15, 1997), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802304. But this guidance shows the SSA knows partners can have varying degrees of activity in the partnership's business—and yet has always tied its definition of "limited partner" to limited liability, not to level of activity. *See* MFA-Br.18. That is because the SSA has correctly interpreted the limited-partner exception.

**4. Legislative History And Purpose**

The last move the Commissioner and his amicus make is to resort to legislative history and their view of statutory purpose. They view a passive-investor test as necessary to effectuate Congress's overall purpose to impose employment and self-employment taxes on "income from work," but not "income from investment." Comm'r-Br.53; *see id.* at 51-56; NYU-Br.19-22. Not so.

When it enacted the limited-partner exception, Congress wanted to keep limited-partner income *out of* net earnings from self-employment, and it drew a bright line to that end. *See* Opening-Br.7-8, 46-47. There is only a single carveout from the limited-partner exception, and Congress carefully calibrated it to capture only "guaranteed payments" that "are established to be in the nature of remuneration" for "services actually rendered to or on behalf of the partnership." 26 U.S.C. § 1402(a)(13). That is the line Congress drew between "income from work" and "income from investment" when it comes to limited partners.

What is more, the position espoused by the Commissioner and his amicus would lead to including *too much* partnership income in net earnings from self-employment. As discussed, a limited partner's distributive share of partnership trade-or-business income is attributable to the efforts of the whole enterprise, not his personal services. *See supra* at 20-21. Construing the limited-partner exception the way the Commissioner and his amicus do would thus include limited partners' investment-type income in net earnings from self-employment—exactly the opposite of what Congress wanted.

In fact, the Commissioner never tried to prove the value of the services Denham's limited partners provided during 2016 and 2017, instead claiming every dollar they earned from Denham should be treated as net earnings from self-employment. He insinuates (at 61-62) his blunderbuss approach is appropriate

because some Denham employees earned salaries higher than the limited partners' guaranteed payments. Again, including the limited partners' *non*-guaranteed payments in net earnings from self-employment would erase the line Congress drew. And the Commissioner's insinuation is based on the premise that underlings should earn less than their superiors. To see that premise is false, just consider Warren Buffett: Nobody is more closely associated with Berkshire Hathaway than he is, and Berkshire Hathaway paid him "annual compensation [of] $100,000 for more than 40 years"—even as it paid tens of millions of dollars a year to his lieutenants. Berkshire Hathaway Inc., Proxy Statement 7-8 (Sch. 14A) (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/1067983/000119312525054877/d812428ddef14a.htm. There is no problem with that arrangement, nor is there a basis to recast the hundreds of billions of dollars of dividends and capital gains Buffett received from Berkshire Hathaway over the years as income from work for employment-tax purposes.

Finally, the Commissioner plainly does not take his own passive-investor test that seriously. If he did, then he would agree a partner who has *unlimited* liability for the partnership's debts—i.e., a general partner under state law—but is not active in the partnership's business would be entitled to the limited-partner exception. After all, such a partner is a passive investor who provides no services to the partnership and earns no income from working for the partnership. But the

Commissioner has taken the exact opposite position, both in proposed regulations and in litigation. *See* Opening-Br.28-29, 44-45. That he is unwilling to accept the consequences of his own passive-investor test shows it cannot possibly be right.

## CONCLUSION

This Court should vacate the Tax Court's decision for lack of jurisdiction or reverse on the merits.

Date: January 16, 2026

Respectfully submitted,

/s/ *Eric J. Konopka*


Eric J. Konopka
Elizabeth A. Kanyer
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
eric.konopka@lw.com

Brian C. McManus
Shannon C. Fiedler
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

*Counsel for Petitioners-Appellants Denham Capital Management LP; Denham Capital Management GP LLC, Tax Matters Partner*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,479 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I hereby certify that the foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Eric J. Konopka*
Eric J. Konopka

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Eric J. Konopka*
Eric J. Konopka