**U.S. Department of Justice**
**Civil Division**
**Tax Litigation Branch**

*Telephone No.(202) 514-3361*
*Facsimile No. (202) 514-8456*
*Appellate.Taxcivil@usdoj.gov*

*Please reply to: Appellate Section*
*P.O. Box 502*
*Washington, D.C. 20044*

BAS:FMU:SPJones
DJ# 5-25301
CMN 2025100630

August 14, 2026

Anastasia Dubrovsky, Clerk of Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re: Denham Cap. Mgmt. LP v. Commissioner
(1st Cir. – No. 25-1349)

Dear Ms. Dubrovsky:

Pursuant to Fed. R. App. P. 28(j), we write to inform the Court of the Fifth Circuit's opinion in *K Alain, L.L.L.P. v. Commissioner*, No. 24-60240 (5th Cir. Aug. 12, 2026)[1] ("Op."; attached), which addresses the meaning of "limited partner" under I.R.C. §1402(a)(13)—a primary issue here.

The Fifth Circuit granted the Commissioner's petition for rehearing and withdrew its prior opinion, *Sirius Solutions, L.L.L.P. v. Commissioner*, 165 F.4th 374 (5th Cir. 2026), which had held that a limited partner is "a partner in a limited partnership that has limited liability." The Fifth Circuit's revised opinion now holds—consistent with the Commissioner's position here—that a limited partner "is a partner who plays no significant role in managing or running a business." (Op.1.)

The Fifth Circuit grounded its holding in "[t]wo principles": (1) "tax law is federal law"; and (2) the federal-law meaning of "limited partner" must be "consistent with the[] ordinary meaning" of the term "at the time Congress enacted" §1402(a)(13) (1977). (Op.7 (citation modified); *accord* Ans.-Br.37–51.) On the latter point, the Fifth Circuit surveyed "[c]ontemporaneous legal dictionaries," past and present legal dictionaries, the Uniform Limited

[1] K Alain, L.L.L.P. was formerly Sirius Solutions, L.L.L.P. (Op.3 n.1.)

Partnership Acts, and "[c]ontemporaneous treatises," all of which "point[ed] towards the same result": "in 1977, the ordinary public meaning of 'limited partner' included a partner who did not play a significant role in managing or running the business." (Op.5–7, 9.)

The Fifth Circuit also approvingly cited this Court's decision in *Plasteel Prods. Corp. v. Helman*, 271 F.2d 354, 356 (1st Cir. 1959) for the proposition that, while "*some* participation" in partnership affairs is allowed, "a partner who control[s] partnership affairs, … [is] no longer functioning as a limited partner." (Op.7 (emphasis in original); *see* Ans.-Br.48 (citing *Helman*).)

Denham does not contest the Tax Court's finding that its limited partners "controlled nearly every aspect of" its affairs. (Ans.-Br.57.) Under both the Fifth Circuit's limited-partner standard and the Tax Court's standard here, the result is the same: Denham's limited partners are not "limited partner[s]" under §1402(a)(13).

Sincerely yours,
/s/ *Samuel P. Jones*
SAMUEL P. JONES
Attorney, Appellate Section

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 12, 2026

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding: Fifth Circuit Statement on Petitions for Rehearing or Rehearing En Banc

No. 24-60240 K Alain v. CIR
Tax Court No. 11587-20
Tax Court No. 30118-21

Enclosed is a copy of the court's decision. The court has entered judgment under Fed. R. App. P. 36. (However, the opinion may yet contain typographical or printing errors which are subject to correction.)

Fed. R. App. P. 39 through 41, and Fed. R. App. P. 39, 40, and 41 govern costs, rehearings, and mandates. **Fed. R. App. P. 40 require you to attach to your petition for panel rehearing or rehearing en banc an unmarked copy of the court's opinion or order.** Please read carefully the Internal Operating Procedures (IOP's) following Fed. R. App. P. 40 for a discussion of when a rehearing may be appropriate, the legal standards applied and sanctions which may be imposed if you make a nonmeritorious petition for rehearing en banc.

Direct Criminal Appeals. Fed. R. App. P. 41 provides that a motion for a stay of mandate under Fed. R. App. P. 41 will not be granted simply upon request. The petition must set forth good cause for a stay or clearly demonstrate that a substantial question will be presented to the Supreme Court. Otherwise, this court may deny the motion and issue the mandate immediately.

Pro Se Cases. If you were unsuccessful in the district court and/or on appeal, and are considering filing a petition for certiorari in the United States Supreme Court, you do not need to file a motion for stay of mandate under Fed. R. App. P. 41. The issuance of the mandate does not affect the time, or your right, to file with the Supreme Court.

Court Appointed Counsel. Court appointed counsel is responsible for filing petition(s) for rehearing(s) (panel and/or en banc) and writ(s) of certiorari to the U.S. Supreme Court, unless relieved of your obligation by court order. If it is your intention to file a motion to withdraw as counsel, you should notify your client promptly, **and advise them of the time limits for filing for rehearing and certiorari**. Additionally, you MUST confirm that this information was given to your client, within the body of your motion to withdraw as counsel.

Each party bear its own costs on appeal.

Sincerely,

LYLE W. CAYCE, Clerk



By: ____________________________
Dantrell L. Johnson, Deputy Clerk
504-310-7689

Enclosure(s)

Mrs. Ellen Page DelSole
Mr. David William Foster
Mr. David A. Hubbert
Mr. Richard Allen Husseini
Mr. Samuel Patrick Jones
Ms. Jennifer Meghan McCaig
Ms. Mary A. McNulty
Mrs. Leonora Meyercord
Mrs. JoAnne Mulder Nagjee
Mr. William M. Paul
Mr. Richard Barrett Phillips, Jr.
Mr. Mark Popovsky
Mr. David Rein
Mr. David Spitzer
Mr. Jonathan Taylor
Ms. Francesca Ugolini
Mr. Isaac Wheeler

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 12, 2026
Lyle W. Cayce
Clerk

No. 24-60240

K Alain, L.L.L.P.; K Alain GP, L.L.C.; Tax Matters Partner,

*Petitioners—Appellants*,

*versus*

Commissioner of Internal Revenue,

*Respondent—Appellee*.

Appeal from the United States Tax Court
Nos. 11587-20, 30118-21

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:

The petition for rehearing en banc is DENIED. Treating the petition for rehearing en banc as a petition for rehearing, the petition for rehearing is GRANTED. We withdraw our prior opinion, *Sirius Solutions, L.L.L.P. v. Commissioner of Internal Revenue*, 165 F.4th 374 (5th Cir. 2026), and substitute the following.

This case concerns the meaning of the term "limited partner" in 26 U.S.C. § 1402(1)(13). Today, we hold its original public meaning is a partner who plays no significant role in managing or running a business. Thus, we

VACATE and REMAND so the Commissioner may consider whether the partners at issue fall within that meaning of § 1402(1)(13).

I

A

The Internal Revenue Code imposes a Social Security and Medicare tax based on every individual's earnings. SOCIAL SECURITY ADMINISTRATION, UNDERSTANDING THE BENEFITS 3 (2025). This applies to the income of those who are employed by another, *see* 26 U.S.C. § 3101, as well as "the self-employment income of every individual," *id.* § 1401(a). This case concerns the self-employment tax liability of limited partners.

The term "self-employment income" is defined as "the net earnings from self-employment derived by an individual . . . during any taxable year." *Id.* § 1402(b). And "net earnings from self-employment" includes, as relevant here, an individual's "distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member." *Id.* § 1402(a).

This case turns on an exception "in computing . . . such distributive share" for limited partners. *Ibid.* The Code provides:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

*Id.* § 1402(a)(13). Putting these provisions together, a limited partner's pass-through share of partnership income (or loss) is exempt from the Social Security and Medicare tax imposed in § 1401. This tax exception for limited partners has remained unchanged since its adoption as part of the Social

Security Amendments of 1977. *See* An Act to Amend the Social Security Act and the Internal Revenue Code of 1954 to Strengthen the Financing of the Social Security System, and for Other Purposes, Pub. L. No. 95-216, § 313(b), 91 Stat. 1509, 1536.

So, to review, payments to limited partners for "services actually rendered" to the partnership are subject to Social Security and Medicare taxation. But the pass-through share of partnership income of a "limited partner, as such" is not.

B

Sirius Solutions, L.L.L.P. ("Sirius") is a limited liability limited partnership formed under Delaware state law.[1] Sirius operates a business consulting firm based in Houston, Texas, with additional offices in Dallas, Texas, and London, England. Sirius Solutions GP, L.L.C. ("Sirius GP"), also formed under Delaware law, is the tax matters partner ("TMP") of Sirius. *See* 26 U.S.C. § 6231(a)(7) (defining tax matters partner).

This appeal concerns Sirius's federal tax returns from 2014, 2015, and 2016. In 2014, Sirius was owned by nine limited partners and one general partner, Sirius GP. At the time, Sirius GP held a .6457% interest in the partnership. Four limited partners sold their partnership interests in 2014, so in 2015 and 2016, there were five limited partners alongside Sirius GP, the general partner. During those latter two years, Sirius GP held a .7529% interest in the partnership.

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. Sirius allocated all that income

---

[1] Sirius Solutions, L.L.L.P. is now called K Alain L.L.L.P. For the sake of clarity, we refer to the K Alain entities by their prior names.

to its limited partners. Relying on the limited partnership tax exception, Sirius excluded the limited partners's distributive shares of partnership income (or loss) from its calculation of net earnings from self-employment during those years. So it reported $0 of net earnings from self-employment.

In June 2020, following an audit of Sirius's 2014 tax returns, the Commissioner of Internal Revenue issued to Sirius GP a Notice of Final Partnership Administrative Adjustment ("FPAA") concerning the 2014 return. The IRS determined that the distributive share exception in § 1402(a)(13) did not apply because none of Sirius's limited partners counted as "limited partners" for purposes of the statutory exception. So the IRS adjusted Sirius's net earnings from self-employment reported on the 2014 tax return from $0 to $5,915,918. In September 2020, Sirius petitioned the Tax Court for readjustment of its 2014 tax return.

The IRS also audited Sirius's 2015 and 2016 tax returns. In June 2021, the IRS issued more FPAAs to Sirius GP. These adjusted the net earnings from self-employment from $0 to $7,372,756 and –$490,291 respectively. In September 2021, Sirius filed a second petition to the Tax Court seeking readjustment for the 2015 and 2016 tax returns. The two cases were consolidated.

On February 20, 2024, the Tax Court rejected Sirius's challenges and upheld the adjustments. It reasoned that it was bound by a recent Tax Court decision, *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023). In that decision, the Tax Court held that for purposes of § 1402(a)(13), the term "limited partners" only "refer[s] to passive investors." *Soroban*, 161 T.C. at 320. Sirius timely appealed to this court.

## II

The sole question on appeal is what "limited partner" means in § 1402(a)(13). We hold the ordinary public meaning of this phrase is a partner who plays no significant role in managing or running a business.

### A

Two principles guide our inquiry. First, tax law is federal law. Once "it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute,] state law is inoperative." *United States v. Bess*, 357 U.S. 51, 55 (1958); *see also Burnet v. Harmel*, 287 U.S. 103, 110 (1932). Second, the Tax Code's phrase "limited partner" is undefined. Thus, our job is determining what, as a matter of federal law, the phrase "limited partner" in § 1402(a)(13) means. To do so, we "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Contemporaneous legal dictionaries defined a "limited partnership" as a partnership with general partners "who manage business" and limited partners who "contribute capital and share in profits but . . . take no part in running business." *Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979); *see also Limited Partnership*, BLACK'S LAW DICTIONARY (4th ed. [rev.] 1968) (similar). Such definitions are probative of original meaning. *See Belt v. EmCare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006) ("[W]e routinely consult dictionaries as a principal source of ordinary meaning . . . .").

These dictionaries are not outliers. Indeed, for more than one hundred years, lexicographers have captured similar definitions of "limited" partnerships. *See, e.g.*, S. RAPALJE & R.L. LAWRENCE, DICTIONARY OF AMERICAN AND ENGLISH LAW 932 (1888) (explaining a "particular (limited or special) partnership" features "general partners . . . by whom the

business is conducted . . . and one or more special partners, who contribute in cash a specific sum as capital . . . and who are not liable for the debts of the partnership"); *Limited Partnership*, Black's Law Dictionary (12th ed. 2024) (defining a "limited partner" as "one or more persons who contribute capital and share profits but who cannot manage the business and are liable only for the amount of their contribution"). While such texts are not dispositive of the original public meaning, they reveal a common, mainstream definition of "limited partner" that turns on the role partners played in the enterprise.

Dictionaries are not the only source from which we draw our interpretation. Consider the context in which Congress enacted the relevant provision. In 1916, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Limited Partnership Act ("ULPA"), which was adopted in various forms by nearly all American States. Leonard Charles Schwartz, *The Uniform Limited Partnership Act: Are the Recent Changes Improvements?*, 93 Dick. L. Rev. 555, 555–56 (1989). The ULPA stated that a "limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Uniform Limited Partnership Act: Drafted by the National Conference of Commissioners on Uniform State Laws and by it Approved and Recommended for Enactment in all the States at its Conference at Chicago, Illinois 11 (1916). In 1976, the Conference's revised version of that 1916 law, the Revised Uniform Limited Partnership Act, carried over the same test. Uniform Limited Partnership Act (1976), 85 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting 171, 185 (1976). While States had not adopted the revised uniform law by the time

Congress amended the relevant section of the Tax Code, the 1916 definition and the ratification of that definition in the 1976 changes provide key insight into the ordinary understanding of "limited partner" in 1977. *See* Mary E. Brumder, Comment, *Investor Protection and the Revised Uniform Limited Partnership Act*, 56 WASH. L. REV. 99, 100–01 (1980).

Contemporaneous treatises point towards the same result. One treatise explained that limited partners "are members of statutory limited partnerships, typically sharing profits, immune from personal liability for firm debts, and not participating in management." A.R. BROMBERG, CRANE AND BROMBERG ON PARTNERSHIP 141 (1968). Another treatise explained that "it has always been difficult to justify immunity from a debt that was incurred by one of the actual managers or directors of an enterprise, and thus the limited partners, in return for immunity, must refrain from any participation in the management or control the business, to include control over any of the managing partners." H.G. REUSCHLEIN & W.A. GREGORY, HANDBOOK ON THE LAW OF AGENCY AND PARTNERSHIP 435 (1979).

While it does not appear that our court passed on the definition of "limited partner" around the time the relevant statute was enacted, at least one of our sister circuits did. *See Plasteel Prods. Corp. v. Helman*, 271 F.2d 354, 356 (1st Cir. 1959). The *Plasteel* court recognized that if a partner controlled partnership affairs, the partner was no longer functioning as a limited partner. *Ibid.* But it suggested a limited partner could have lesser involvement. *Ibid.* For example, it noted that a limited partner could sign the partnership agreement as a general partner without losing his limited-partner status. *Ibid.* (citing *Rathke v. Griffith*, 218 P.2d 757, 757 (Wash. 1950)). While *Plasteel* turned on state law, not federal tax law, it nonetheless formed part of the backdrop against which Congress enacted § 1402(a)(13) in 1977. And that backdrop suggests *some* participation is allowed, so long as the partners do

not exercise *control* over the business. *Contra post*, at 23 (arguing that *Plasteel* does not allow for such a distinction).

Because the plain text of the statute points towards this conclusion, we are unmoved by the dissent's citation to Tax Court and circuit precedent interpreting different statutes. *See post*, at 16–19, 23–24. With due respect to the Tax Court, federal courts decide relevant questions of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024). And even "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506 (5th Cir. 2026). What's more, as to the dissent's circuit authority, neither out-of-circuit nor in-circuit precedent about securities law (and other non-§ 1402 topics) can overcome the plain text of a duly enacted statute. *Contra post*, at 23–24.[2]

Likewise, we are unconvinced by the dissent's parade of horribles. *Id.* at 15. This critique hypothesizes that our rule will result in bad policy consequences. *Ibid.* But this court's job is to "discern and apply the law's plain meaning as faithfully as we can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief.'" *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 246 (2021) (quoting *Lewis v.*

[2] Even worse for the dissent, many of its cases support the idea that limited partners may play a small role in a company. *See, e.g.*, *Marin TV Servs. Partners, Ltd. v. FCC*, 993 F.2d 261, 262, 264 (D.C. Cir. 1993) (focusing on active participation and "material" participation); *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 152 (3d Cir. 1997) (allowing for nominal or limited responsibilities); *Masel v. Villarreal*, 924 F.3d 734, 744 (5th Cir. 2019) ("Nonetheless, even a limited partnership interest may not be a security when limited partners *are given such managerial control* that it can no longer be said that the limited partners are dependent on the entrepreneurial skills of the promoter or a third party." (emphasis added)).

*Chicago*, 560 U.S. 205, 217 (2010)). Here, we apply the plain text. Nothing more.

At bottom, all relevant sources suggest that, in 1977, the ordinary public meaning of "limited partner" included a partner who did not play a significant role in managing or running the business.

B

In adopting this reading, we reject the Tax Court's *Soroban* decision. In *Soroban*, the Tax Court selected a rule divorced from statutory text and that appears to prohibit even the most minor involvement in corporate affairs. The Tax Court held that the term "limited partner" could refer only to "passive investors." *Soroban*, 161 T.C. at 321. With just a few sentences of operative analysis—citing *no* contemporary textual authority—the Tax Court insisted that "limited partner, *as such*" somehow denoted more than limited liability. *Id.* at 320 (emphasis added). The Tax Court then said, without significant analysis, that this required a "passive investor" rule. *Ibid.* The Tax Court made no attempt to ground its rule in the original public meaning of "limited partner" in 1977.[3]

In our view, that was erroneous. An informed reader of the English language in 1977 would have understood that a "limited partner" could not *manage* the partnership, *see Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979), but perhaps could participate in certain *non-managerial* aspects of the business, *see Plasteel*, 271 F.2d at 356. That is a different and more refined analysis than the one the Tax Court offered in *Soroban*. And most importantly, the managerial/non-managerial distinction

---

[3] Given our interpretation of the Tax Code's plain text rejects *Soroban* and thus decides the issue on appeal, we need not discuss additional Tax Court precedents like *Renkemeyer, Campbell & Weaver v. Commissioner*, 136 T.C. 137 (2011). *Contra post*, at 26.

is one that is rooted in the legal sources that existed in 1977 when Congress adopted § 1402(a)(13).

What's more, the *Soroban* decision cannot be squared with decades of IRS-approved guidance insisting that what mattered was limited liability alone. In 1978, the first year in which the "limited partner" exception was implemented, the IRS issued partnership tax return instructions that defined "Limited Partner" as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." INTERNAL REVENUE SERVICE, PACKAGE X: INFORMATIONAL COPIES OF FEDERAL INCOME TAX FORMS 137 (1978). Thus, parties were led to believe that what mattered was liability, not control. One looks in vain for a control test in the relevant sections of the IRS guidelines, whether in the two years preceding the 1977 revision or in the forty years following them. *See* INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 30 (1976); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 149 (1977); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2015) (explaining a limited partner is "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership."); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2016) (same); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2017) (same).

The Commission's position in this case is that it can change the meaning of "limited partner" from (A) "limited liability alone," which was the pre-*Soroban* standard, to (B) *Soroban*'s "passive investor" standard—with zero action from Congress to amend § 1402(a)(13)'s text. Perhaps that level of administrative control over billions or trillions of dollars in tax liability is

permissible as a general matter. But at a minimum, even assuming the Commissioner can unilaterally effectuate such changes through tax instructions, its instructions must comport with the original public meaning of the text enacted by Congress in 1977.

The Tax Court did not attempt that task. We therefore VACATE its judgment and REMAND the case for further proceedings consistent with this opinion.

James E. Graves, Jr., *Circuit Judge*, dissenting.

Because the text and structure of 26 U.S.C. § 1402(a)(13) are clear that its tax exemption for limited partners applies only to those functioning as passive investors, I would affirm the Tax Court's decision upholding the adjustments to Sirius Solutions' federal tax returns for 2014, 2015, and 2016. Thus, I respectfully dissent.

I.

Sirius Solutions L.L.L.P. (Sirius) is a limited liability limited partnership under the state law of Delaware that operates as a business-consulting firm based in Houston, with additional offices in Dallas and London.[1] Sirius is treated as a partnership for federal income tax purposes. In 2002, each of Sirius' individual partners signed its Statement of Qualifications as "General Partner." Sirius Solutions GP, L.L.C. (Sirius GP), also formed under the state law of Delaware, is the tax matters partner (TMP) of Sirius, as defined in 26 U.S.C. § 6231(a)(7) (2014).[2] Sirius GP is the general partner of Sirius. This appeal concerns Sirius' federal tax returns for 2014, 2015 and 2016.

In 2014, Sirius had two classes of partnership interests, Class A Units and Class B Units, and was owned by nine individual partners and the general partner, Sirius GP.[3] Sirius GP held a 0.6457% interest. Four individual partners sold their partnership interests in 2014, with two of them becoming employees of the partnership. Thus, in 2015 and 2016, there were five

---

[1] *See* Del. Code Ann. tit. 6, §§ 17-101(8)-(9), 17-301(a)(2) (2014).

[2] K Alain GP, L.L.C., is now the TMP. However, I continue using Sirius to avoid confusion.

[3] Class A units were purchased from the Partnership in exchange for a five-year installment note payable to the partnership.

individual partners and Sirius GP, which held a 0.7529% interest. The individual partners were allocated a share of Sirius' income or loss during the relevant years.

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. None of that income was allocated to Sirius GP. Instead, that income was allocated to the individual partners. However, Sirius did not report any net earnings from self-employment to any of the individual partners.[4]

On June 12, 2020, the Commissioner of Internal Revenue issued a TMP Notice of Final Partnership Administrative Adjustment (FPAA) to Sirius GP, as tax matters partner for Sirius (collectively referred to as "Sirius" in the singular). The Commissioner determined that an adjustment was appropriate to the amount Sirius reported on its 2014 federal tax return as net earnings from self-employment. Of particular relevance here, the adjustment notice said:

> (2) Net earnings (loss) from self-employment
>
> It is determined that your ordinary income from business consulting services is included in net earnings from self-employment for which your individual partners are liable for the self-employment tax imposed by IRC § 1401. It is further determined that your individual partners are not "limited partners" within the meaning of IRC § 1402(a)(13), and thus their distributive shares of the partnership's ordinary business income are not excluded from their net earnings from self-employment. Therefore, the net earnings from self-employment is $5,915,918.00 rather than $0.00 as shown on

---

[4] The Internal Revenue Code (IRC) imposes Social Security and Medicare taxes on net earnings from self-employment. 26 U.S.C. § 1402(b). The meaning of "net earnings from self-employment" is defined by statute and includes various exceptions. 26 U.S.C. § 1402(a).

> your return. Accordingly, the net earnings from self-employment is increased by $5,915,918.00.

On September 4, 2020, Sirius petitioned the Tax Court for readjustment of the FPAA adjustment, asserting that the Commissioner erred in determining that the individual partners were not "limited partners" for purposes of section 1402(a)(13). *See* 26 U.S.C. § 6226(a) (2014). The Commissioner responded on November 20, 2020.

On June 21, 2021, the IRS issued FPAAs to Sirius determining similar adjustments to Sirius' 2015 and 2016 net earnings from self-employment. For 2015, the Commissioner determined that the net earnings from self-employment should be increased from $0.00 to $7,372,756.00. For 2016, the Commissioner determined that the net earnings from self-employment should be decreased by $490,291.00. On September 17, 2021, Sirius filed a second Tax Court petition seeking readjustment of the 2015 and 2016 adjustments. The two petitions were consolidated for consideration.[5]

On November 28, 2023, the Tax Court issued the precedential opinion of *Soroban Capital Partners, LP v. Commissioner*, 161 T.C. 310 (2023), which effectively resolved the issue here.[6] The parties filed multiple stipulations of fact and issues both before and after *Soroban* was decided. Following *Soroban*, the parties stipulated that Sirius' partners are not limited partners if evaluated under a functional analysis test, as discussed later

---

[5] As Sirius acknowledges, the adjustments do not represent the amount of taxes that would be owed. The adjustments would be allocated to each partner for purposes of determining the partner's net earnings from self-employment subject to taxation.

[6] As discussed herein, the Tax Court also reaffirmed its *Soroban* decision in the similar challenge of *Denham Capital Management LP v. Commissioner*, T.C.M. 2024-114, 2024 WL 5200039 (Dec. 23, 2024). *See also Soroban Capital Partners LP v. Commissioner*, T.C.M. 2025-52, 2025 WL 1517432 ( May 28, 2025).

herein. However, Sirius maintained that *Soroban* was incorrectly decided, arguing that the proper test under § 1402(a)(13) was whether the partners are limited partners under the applicable state law. As a result, Sirius asked the Tax Court to enter a decision under Tax Court Rule 251 in favor of the Commissioner so that it could appeal the holding in *Soroban*. On February 20, 2024, the Tax Court issued decisions upholding the adjustments. The Tax Court also denied each party's pending summary judgment motions as moot. Sirius appealed. The panel majority vacated and remanded, while I dissented. *See Sirius Sols., L.L.L.P. v. Comm'r of Internal Revenue*, 165 F.4th 374 (5th Cir. 2026). The panel majority now withdraws that prior opinion on rehearing but still vacates and remands. Again, I dissent. This opinion tracks portions of my previous dissent because the majority partially corrected course. *See id.* at 388 (Graves, J., dissenting).

## II.

This court reviews a decision of the Tax Court under the same standard that is applied to district court decisions. *Green v. C.I.R.*, 507 F.3d 857, 866 (5th Cir. 2007). "Findings of fact are reviewed for clear error and issues of law are reviewed de novo. Clear error exists when this court is left with the definite and firm conviction that a mistake has been made." *Id.* (internal citation omitted).

## III.

The issue on appeal is whether the Tax Court erred in its interpretation of "limited partner, as such" in 26 U.S.C. § 1402(a)(13),

which was enacted in 1977. Section 1402(a)(13) excludes from net earnings of self-employment[7] the following:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

26 U.S.C. § 1402(a)(13).

Section 707(c) states:

> To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

26 U.S.C. § 707(c). Section 61(a) generally defines gross income. 26 U.S.C. § 61(a). Section 162(a) sets out allowable deductions for ordinary and necessary trade or business expenses. 26 U.S.C. § 162(a). Section 263 states which capital expenditure deductions are not allowed. 26 U.S.C. § 263.

The Tax Court previously considered the application of § 1402(a)(13) in the context of other entities.[8] In *Renkemeyer*, *Campbell & Weaver v.*

---

[7] Section 1402(a) also defines net earnings from self-employment. 26 U.S.C. § 1402(a).

[8] The majority fails to discuss or distinguish any of these cases preceding *Soroban* or the impact of this decision on those cases. Regardless of the entity, the meaning of "limited partner, as such" pursuant to § 1402(a)(13) applied by the Tax Court has not changed since *Renkemeyer* in 2011. Presumably, the majority is somehow "rejecting" all of these cases as well.

*Commissioner*, 136 T.C. 137 (2011), the Tax Court considered the issue of whether income allocated to partners of a law firm organized as a limited liability partnership (LLP) under the laws of Kansas was subject to self-employment tax.[9] 136 T.C. at 138. In doing so, the court explained the history behind § 1402(a)(13) and applied the principles of statutory construction to ascertain Congress' intent. *Id.* at 148-150. Because the statute does not define "limited partner," the Tax Court looked to its ordinary meaning and legislative history. *Id.* at 149-150. The court concluded that:

> The insight provided reveals that the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and *who were not actively participating in the partnership's business operations* (which was the archetype of limited partners at the time) would not receive credits toward Social Security coverage. The legislative history of section 1402(a)(13) does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes.

*Id*. at 150 (emphasis added). The Tax Court also concluded that the LLP partners were not "limited partners" for purposes of § 1402(a)(13) because it was "clear that the partners' distributive shares of the law firm's income did not arise as a return on the partners' investment and were not 'earnings which are basically of an investment nature.'" *Id*. The court instead found that "the distributive shares arose from legal services they performed on behalf of the law firm" and that they were "subject to self-employment taxes." *Id.*

---

[9] Interestingly, the firm's practice emphasized Federal tax law. 136 T.C. at 138.

About six years later, the Tax Court considered the case of *Hardy v. Commissioner*, 113 T.C.M. (CCH) 1070 (Jan. 17, 2017). Dr. Stephen P. Hardy was a plastic surgeon who owned a minority interest in one of several surgery centers in which he performed surgeries. *Id.* at * 1, 4-7. However, Hardy had no day-to-day management or operational responsibilities in the center, which was organized as a limited liability company (LLC) in Montana. *Id.* The patients were responsible for choosing the location where the surgery would be performed, and the center or hospital billed separately for the use of the facility. *Id.* at * 4, 6. In relevant part, the issue was whether Hardy's income from the center was passive, which would allow the deduction of passive activity loss for the year in which the loss was incurred. *Id.* at * 2. Applying the *Renkemeyer* functional analysis test, the Tax Court repeatedly referenced the fact that the surgeon was a passive investor and found his income from the surgery center was passive because he "received the distributions as a limited partner acting in his capacity as an investor." *Id.* at ** 2, 30-32.

Later that year, the Tax Court again applied the functional analysis test and found that member-managers of a law firm organized as a professional limited liability company (PLLC) under Mississippi law were not limited partners for purposes of the self-employment income exclusion. *See Castigliola v. Commissioner*, 113 T.C.M. (CCH) 1296, ** 3, 14 (Apr. 12, 2017); *see also* 26 U.S.C. 1402(a)(13). Acknowledging that the exact meaning of limited partner may vary slightly by state, the court considered the Uniform Limited Partnership Act (ULPA) of 1916, the Revised Uniform Limited Partnership Act (RULPA) of 1976, and amendments added in 1976 and 1985. *Id.* at 10. Specifically, the Tax Court quoted section 7 of ULPA (1916), as follows: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at * 10. The court

then turned to section 303(a) of RULPA, which it noted that Mississippi had adopted with some modifications, for the proposition that "a limited partner would lose limited liability protection if in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at 10-11 (internal marks and citation omitted). The court also noted in its analysis that, "[b]efore the members organized the PLLC, they operated as a general partnership; and there is no evidence that organizing as a PLLC was accompanied by any change in the way they managed the business," and ultimately concluded that the partners "may not exclude any part of their distributive shares from self-employment income under section 1402(a)(13)." *Id*. at ** 13-14.

In 2023, the Tax Court considered *Soroban*, discussed more fully below, concluding that the *Renkemeyer* functional analysis test likewise applies in determining whether a limited partner in a state law limited partnership is entitled to the limited partner exception under § 1402(a)(13). 161 T.C. at 318-19. Following *Soroban*, the Tax Court reaffirmed its decision in *Denham Capital*, T.C.M. (RIA) 2024-114 (Dec. 23, 2024). In *Denham Capital*, the Tax Court also reiterated the following:

> Our caselaw has continuously reinforced our position that determinations under section 1402(a)(13) require a factual inquiry into how the partnership generated the income in question and the partners' roles and responsibilities in doing so. Petitioner's position that the Partners are eligible for the limited partnership exception merely because the Partners complied with formalities prescribed by state partnership law does not comport with our caselaw.

*Id*. at * 14 (citing *Renkemeyer*, 136 T.C. at 150; *Castigliola*, 113 T.C.M. 1296, at *7-14; *Hardy*, 113 T.C.M. 1070, at **29-32).

Soroban Capital Partners LP was a Delaware limited partnership composed of a general partner and limited partners. *Soroban*, 161 T.C. at 311. For 2016 and 2017, Soroban reported as net earnings from self-employment its guaranteed payments to its limited partners plus the general partner's share of ordinary business income. *Id.* The Commissioner later adjusted Soroban's net earnings from self-employment by increasing it to include the limited partners' share of ordinary business income on the basis that they were limited partners in name only. *Id.*

In discussing the exclusion under section 1402(a)(13), the Tax Court reiterated that, "Congress intended for this limited partner exception to apply to earnings of an investment nature. To determine whether earnings allocated to limited partners are of an investment nature necessarily requires an inquiry into the functions and roles of the limited partners." *Id.* at 312. The Tax Court found that the "limited partner" exception does not apply to a partner who is limited in name only. *Id.* at 320. "If Congress had intended that limited partners be automatically excluded, it could have simply said 'limited partner.' By adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Soroban*, 161 T.C. at 320. The Tax Court also found that:

> Petitioner's reliance on legislative history to overcome the plain meaning of the statute is unavailing. To the extent legislative history might be used to shed light on the meaning of the phrase "limited partner, as such," it confirms our conclusion. Congress enacted section 1402(a)(13) to exclude earnings from a mere investment. It intended for the phrase "limited partners, as such" used in section 1402(a)(13) to refer to passive investors.

*Id.*

Consistent with all of the cases cited above, the Tax Court said that it must engage in an analysis of "the functions and roles of the limited partners

in the partnership to determine whether their shares of earnings are excluded from net earnings from self-employment." *Id.* at 322-25. The Tax Court also found that such a determination is more appropriate at the partnership level than at the partner level. *Id.* at 323-24 (citing Treas. Reg. § 301.6231(a)(3)-1(b) and 26 U.S.C. § 6221). Thus, the Tax Court had jurisdiction.

Sirius asserts here that the Tax Court erred by interpreting "limited partner, as such" in *Soroban* to mean a partner functioning as a passive investor, and by not interpreting it as meaning a state-law limited partner. Sirius also argues that the Tax Court's interpretation of "as such" somehow renders "the carve-out for 'guaranteed payments' meaningless." Sirius asserts that "limited partner" is commonly defined as a partner in a state-law limited partnership with limited liability, and both the IRS and Social Security Administration have issued contemporaneous guidance defining it as such. Sirius cites various dictionaries for what it asserts is the common or ordinary meaning of "limited partner," as does the majority. However, much of this argument misses the mark.

Sirius offers only select portions of various definitions to form an oversimplified definition of "limited partner" to support its result. But those portions must be considered in context. For example, the Webster's Third New International Dictionary definitions for "limited partner" from 1971 and 1981 state only that liability "is *usu[ally]* limited" and then add a second limitation: "providing he has not held himself out to the public as a general partner and has complied with other requirements of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1971) and (1981) (emphasis added). The Black's Law Dictionary definition for "limited partnership" also states "limited partners who contribute capital and share in profits but who *take no part* in running business and incur no liability with respect to partnership obligations beyond contribution." BLACK'S LAW DICTIONARY (5th ed. 1979) (emphasis added). The 1968 version likewise

uses language clearly describing a passive investor for "special partners" under the "limited partnership" paragraph of "partnership," as opposed to general or ordinary partners "by whom the business is conducted." BLACK'S LAW DICTIONARY (4th ed. rev. 1968). BLACK'S LAW DICTIONARY (4th ed. 1968)

The majority acknowledges that the Black's Law Dictionaries from 1968 and 1979 "are not outliers," and goes on to cite various other sources in its purported quest to determine the "ordinary meaning" of "limited partner." In doing so, the majority cites the ULPA, RULPA, various law review articles, and "[c]ontemporaneous treatises," all of which effectively state that a limited partner must be only a passive investor. Despite all of that authority, the majority concludes that, "in 1977, the ordinary public meaning of 'limited partner' included a partner who did not play a significant role in managing or running the business." The majority further concludes that, "[i]n adopting this reading, we reject the Tax Court's *Soroban* decision." I disagree for the reasons discussed below.

The majority cites *Plasteel Products Corporation v. Helman*, 271 F.2d 354, 356 (1st Cir. 1959), and states:

> The *Plasteel* court recognized that if a partner controlled partnership affairs, the partner was no longer functioning as a limited partner. *Ibid*. But it suggested a limited partner could have lesser involvement. *Ibid*. For example, it noted that a limited partner could sign the partnership agreement as a general partner without losing his limited-partner status. Ibid. (citing *Rathke v. Griffith*, 218 P.2d 757, 757 (Wash. 1950)). While *Plasteel* turned on state law, not federal tax law, it nonetheless formed part of the backdrop against which Congress enacted § 1402(a)(13) in 1977. And that backdrop suggests some participation is allowed, so long as the partners do not exercise control over the business. *Contra post*, at 23 (arguing that Plasteel does not allow for such a distinction).

However, the majority's statements regarding *Plasteel* are unsupported. *Plasteel* was an action under state law, as the majority acknowledges, to recover a $6,555.29 for merchandise sold and delivered to the partnership. *Id.* at 355. Various defendants, including both general and limited partners, moved for summary judgment. *Id.* The district court granted the motions, in relevant part, and the plaintiff appealed. That case involved a limited partnership agreement between a general partner, who contributed services but no cash, and limited partners, who were described as trustees of three trusts. *Id.* Further, the agreement named the father of the beneficiaries of the first trust as the general sales manager. The First Circuit said that the question was whether the appellees/limited partners were "liable as general partners as a result of their execution of the December 1955 agreement," which named a general sales manager. The First Circuit specified that, "the only conduct relied on to charge appellees as general partners is the signing of the limited partnership agreement." *Id.* at 356. The court then concluded that the limited partners took no part in the control of the business under the Massachusetts ULPA, which said: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at 355-56 (citing Mass. Gen. Laws Ann. c. 109, § 7). The *Plasteel* court said nothing to indicate that some amount of control of the business could be permissible, as the majority suggests.[10]

Moreover, "federal courts," including this circuit, have long used "passive investor" in evaluating limited partners in a variety of cases. *See*

[10] The majority likewise misconstrues my disagreement with its characterization of *Plasteel*. I simply disagree with the majority that what is unsaid in *Plasteel*, an out-of-circuit case dealing with state law, somehow overcomes *all* of the acknowledged authority here and supports reversing the Tax Court.

*Masel v. Villarreal*, 924 F.3d 734, 744-46 (5th Cir. 2019); *Nunez v. Robin*, 415 F. App'x 586, 587 at n. 2, 591 (5th Cir. 2011); *Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 145, 155 (3d Cir. 1997); *Marin TV Servs. Partners, Ltd. v. F.C.C.*, 993 F.2d 261, 262 (D.C. 1993); *Maritan v. Birmingham Prop.*, 875 F.2d 1451, 1452, 1459 (10th Cir. 1989); *Levin v. C.I.R.*, 832 F.2d 403,406-08 (7th Cir. 1987) (citing 87 T.C. 698, 725-26 (1986)); *Frazier v. Manson*, 651 F.2d 1078, 1081 (5th Cir. Unit A July 1981); *Goodman v. Epstein*, 582 F.2d 388, 406 n. 51 (7th Cir. 1978).[11] *See also Renkemeyer*, 136 T.C. at 147-48; *Howell v. C.I.R.*, 104 T.C.M. (CCH) 519, *4, 6 (2012).

The majority dismisses these cases, first chiding the Tax Court that "federal courts decide relevant issues of law," and then quoting "*Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506 (5th Cir. 2026), for the following: "And even 'years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text.'" Notwithstanding the majority's failure to identify any portion of the plain text which supports its decision to reverse the tax court, as discussed below, the majority misconstrues *Buenrostro-Mendez*. The selected portion of the statement quoted by the majority was a reference to the government's longstanding practice. In context, this court said: "While that is true, the government's past practice has little to do with the statute's text. The text says what it says, regardless of the decisions of prior Administrations. Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." Unlike the statute in that immigration case, the statute here does not specify what the majority claims, nor does it define limited partner. Moreover, I am

[11] To reiterate, these cases are being cited for their longstanding use of "passive investor" in evaluating limited partners, not for any interpretation of "different statutes" or their corresponding facts, despite the majority's attempted deflection while failing to dispute my point.

not referencing the government's longstanding practice, I am referencing judicial opinions in which "federal courts" across the country have used "passive investor" to analyze limited partners, consistent with the statutory text, common usage, all of the definitions, and other authority.

Regardless, the issue is not simply the definition of "limited partner." Instead, the issue is what constitutes a "limited partner, as such" for purposes of section 1402(a)(13). Sirius acknowledges as much with its additional arguments that the Tax Court misinterpreted the phrase "as such," as discussed herein. The majority likewise acknowledges this but then concludes that the Tax Court erroneously "made no attempt to ground its rule in the original public meaning of 'limited partner' in 1977." The majority fails to establish any basis for such a conclusion or any distinction between "passive investor" and "limited partner, as such."

The majority also states that "the plain text of the statute points towards" a conclusion that "*some* participation is allowed, so long as the partners do not exercise *control* over the business." But the majority fails to identify the portion of the statute's plain text here which "points towards" the conclusion that partners may participate "so long as the partners do not exercise *control* over the business," or so long as the partner "did not play a significant role in managing or running the business."[12] Again, the statute does not define "limited partner." But, even if it did, that would not establish any error in the Tax Court's definition of "limited partner, as such." That is because "federal courts" have long defined a limited partner as a "passive investor," and that is consistent with the functional analysis test, as discussed herein. The parties here filed multiple stipulations of facts

[12] Or any other slight variations the majority may use in its opinion, although differing or contradictory definitions only add unnecessary confusion.

and settled issues—before and after *Soroban*. Those stipulations included a joint Stipulation of Settled Issues filed on December 19, 2023, in which the parties agreed that Sirius' partners are not limited partners if evaluated under a functional analysis test as set out in both *Soroban* and *Renkemeyer*, discussed previously herein and decided in 2011. The majority fails to discuss *Renkemeyer* or the impact of its decision on *Renkemeyer*.

Additionally, the majority's position on a functional analysis is both contradictory and unclear. It does not appear that the majority actually takes issue with the Tax Court's definition of "limited partner, as such." Instead, the majority appears to be improperly attempting to define "passive investor" and taking issue with the application of a functional analysis test, while simultaneously essentially arguing that a functional analysis test allows for some level of participation. But the majority is also unable to point to any evidence that the level of control or participation here was not as significant as the parties stipulated. There is little clarity as to the intended effect of the majority's decision and its "rejection" of *Soroban*. It is clear, however, that the majority has created an indefensible, illogical, and illegal loophole which allows millions of dollars in net earnings from self-employment to go untaxed as earnings even though that is exactly what they are.

Based on my de novo review, and because the majority ignores the various definitions it cites, overlooks applicable cases, misconstrues the plain text of the statute and *Plasteel*, and fails to establish that any authority supports its conclusion, I would affirm the Tax Court. Thus, I respectfully dissent.